UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FILED BY _____ D.C

08 MAR 17 PM 2: 20

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA - MIA

CASE NO.

[ON REMOVAL FROM CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT, IN
AND FOR BROWARD COUNTY, FLORIDA
CASE NO. 0711472]

# 08 - 60368
## CIV - SEITZ
/ McALILEY

CARLOS URQUILLA DIAZ,

      Plaintiff,

v.

KAPLAN UNIVERSITY a/k/a
KAPLAN COLLEGE a/k/a IOWA COLLEGE
ACQUISITION CORP; KAPLAN HIGHER
EDUCATION CORP.; WASHINGTON POST CO.;
ANDY ROSEN; BEN WILCOX; SHERE PACE;
DAVID HARPOOL; CHRIS CAYWOOD,

      Defendants.

_____/

## PETITION FOR REMOVAL

    Defendants, KAPLAN UNIVERSITY a/k/a KAPLAN COLLEGE a/k/a IOWA

COLLEGE ACQUISITION CORP. and KAPLAN HIGHER EDUCATION CORP. (collectively

"Defendants"[1]), through their undersigned counsel and pursuant to 28 U.S.C. §§ 1331, 1367,

1441 and 1446, hereby remove this action currently pending in the Circuit Court of the 17th

Judicial Circuit in and for Broward County, Florida, to the United States District Court for the

Southern District of Florida.  The removal of this action is based upon the following:

    1.    On or about May 21, 2007, Plaintiff filed his complaint in the Circuit Court of the

17th Judicial Circuit in and for Broward County, Florida, entitled Carlos Urquilla Diaz v. Kaplan

---

[1]    This Petition for Removal is filed on behalf of Kaplan University, and Kaplan Higher Education, the only
defendants who have been served  thus far in this matter.

{M2656562;1}

University, et al., Case No. CACE07011472, and filed an Amended Complaint on or about February 22, 2008 (hereinafter referred to as the "State Action"). A true and correct copy of all documents that were filed in the State Action are attached hereto as Composite Exhibit A, and are incorporated herein by reference pursuant to Rule 10(c), Federal Rules of Civil Procedure. No other process, pleadings or orders have been served upon Defendants in this action.

2.     On or about February 25, 2008, a copy of the State Action was served on IOWA COLLEGE ACQUISITION CORP. and KAPLAN HIGHER EDUCATION CORP. This constituted Defendants' first legal notice of the State Action for purposes of removal.

3.     The Amended Complaint seeks damages pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e) ("Title VII"). See Amended Complaint at ¶¶ 67-70 (Count I – National Origin Discrimination); Amended Complaint at ¶¶ 71-74 (Count II – Race Discrimination); Amended Complaint at ¶¶ 75-79 (Count III – Retaliation).

4.     This is a civil action over which the Untied States district courts have original jurisdiction pursuant to 20 U.S.C. § 1331 because this action arises under the Title VII, a law of the United States.

5.     Under federal question jurisdiction, the United States district courts "have original jurisdiction over all civil actions arising under federal law." See 28 U.S.C. § 1331. Any civil case filed in a state court may be removed by a defendant to federal court if the case could have been brought originally in federal court. See Cogdell v. Wyeth, 366 F.3d 1245, 1248 (11th Cir. 2004); Ayers v. Gen. Motors Corp., 234 F.3d 514, 517 (11th Cir. 2000). Furthermore, where a removable claim or cause of action is joined with one or more otherwise non-removable claims for causes of action, "the entire case may be removed and the district court may determine all issues therein." 28 U.S.C. § 1441(c).

6.     Plaintiff's Amended Complaint also alleges claims for unlawful retaliation for complaints of pressure to inflate student grades, See Amended Complaint at ¶¶ 80-83; intentional infliction of emotional distress, See Amended Complaint at ¶¶ 84-89; slander, See Amended

Complaint at ¶¶ 90-92; unlawful retaliation in violation of Florida Statute § 760, See Amended Complaint at ¶¶ 93-109; unlawful retaliation in violation of Florida Whistleblower's Act, See Amended Complaint at ¶¶ 110-112; and conspiracy, See Amended Complaint at ¶¶ 113-115. This Court may exercise supplemental jurisdiction over Plaintiff's pendent state law claims as they arise out of the same facts and circumstances as the Plaintiff's federal claims. See 28 U.S.C. § 1367.

7.      Venue is proper in the Southern District of Florida in that the State Action is pending within the jurisdictional confines of this district.

8.      For the reasons stated above, this action is removable to this Court pursuant to the provisions of 28 U.S.C. § 1441.

9.      This Petition for Removal is timely filed within thirty (30) days after the date on which Defendants first received notice of the State Action. See 28 U.S.C. § 1446(b).

10.     Defendants have, simultaneously with the filing of this Petition, given written notice of the filing of this Petition to Plaintiff as required by 28 U.S.C. § 1446(d).

11.     A copy of this Petition has simultaneously been filed with the Clerk of the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, as required by 28 U.S.C. § 1446(d).

**WHEREFORE**, Defendants, KAPLAN UNIVERSITY a/k/a KAPLAN COLLEGE a/k/a IOWA COLLEGE ACQUISITION CORP and KAPLAN HIGHER EDUCATION CORP. hereby remove this case to the United States District Court for the Southern District of Florida.

Respectfully submitted,

By

Susan N. Eisenberg, Esq. (600393)
Email:  susan.eisenberg@akerman.com
Jennifer Taylor Williams, Esq. (0174203)
Email:  jennifer.williams@akerman.com
Ana L. Olman, Esq. (0029333)
E-mail:  ana.olman@akerman.com
**AKERMAN SENTERFITT**
One Southeast Third Avenue
25th Floor
Miami, FL  33131-1714
Phone:  (305) 374-5600
Fax:  (305) 374-5095
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by U.S. mail to Andrews Law Group, 3220 Henderson Blvd., Tampa, FL  33609 this _17th_ day of March, 2008.

Attorney

# EXHIBIT A

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT OF
THE STATE OF FLORIDA, IN AND FOR BROWARD COUNTY
CIVIL DIVISION

Carlos Urquilla Diaz,

     Plaintiff,

v.                                  Civil Action No.: 0711472

Kaplan University a/k/a
Kaplan College a/k/a/ Iowa
College Acquisition Corporation;
Kaplan Higher Education Corporation,
a division of Kaplan, Inc.,
a wholly owned subsidiary of the
Washington Post Company;
and Andrew S. Rosen a/k/a Andy S. Rosen;
Ben Wilcox; Sheree Pace; David Harpool.
Chris Caywood.

     Defendants.
_____/

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Carlos A. Urquilla Diaz ("Diaz") by and through his undersigned counsel, sues

Defendant, Kaplan University a/k/a Kaplan College a/k/a Iowa College Acquisition Corp.,

Kaplan Higher Education Corporation, a division of Kaplan, Inc., a wholly owned subsidiary of

the Washington Post Company, Andrew S. Rosen a/k/a Andy S. Rosen (individually and as agent

on behalf of Kaplan University), Ben Wilcox (individually and as agent on behalf of Kaplan

University), Sheree Pace (individually and as agent on behalf of Kaplan University), David

Harpool (individually and as agent on behalf of Kaplan University), Chris Caywood (individually

and as agent on behalf of Kaplan University); and states:

## COMMON ALLEGATIONS

1.  This is an action for damages in excess of $15,000.00 (fifteen thousand dollars), and, legal and equitable relief for national origin discrimination, racial discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et.seq.

2.  It is also a claim for slander, libel, negligent and emotional distress, and other causes.

3.  This action is within the jurisdiction of this Court pursuant to 42 U.S.C. Section 2000e-5(e)(f)(3).

4.  Plaintiff has met all conditions precedent by filing a charge with the EEOC, receiving a Notice of Dismissal and Right to Sue, and by filing this action within 90 days of his receipt of his Right to Sue.

5.  Kaplan University a/k/a Kaplan College a/k/a Iowa College Acquisition Corp.'s principal place of business is 6301 Kaplan University, Fort Lauderdale, Fl 33309.

6.  At all times relevant to the allegations in this Complaint, Defendant Kaplan Higher Education Corporation was a foreign corporation doing business in Ft. Lauderdale, Broward County, Florida.

7.  At all times relevant to the allegations in this Complaint, Defendant Kaplan Higher Education Corporation was a subsidiary of The Washington Post Company, a foreign corporation.

8.  At all times relevant to the allegations in this Complaint, Plaintiff Diaz was

employed by Kaplan University a/k/a Kaplan College a/k/a Iowa College Acquisition Corp., and/or Kaplan Higher Education Corporation. (These defendants will be hereinafter collectively referred to as "Kaplan").

9.   At all times relevant to the allegations in this Complaint, Defendants Andrew S. Rosen a/k/a Andy S. Rosen, Ben Wilcox, Sheree Pace, David Harpool, Chris Caywood were agents and supervisors acting on behalf of Kaplan and engaged in activity forming the basis of this complaint in Ft. Lauderdale, Broward County, Florida.

10.  The facts pleaded in this action as being in violation of Title VII were planned and/or executed in Ft. Lauderdale, Broward County, Florida.

11.  Andrew S. Rosen a/k/a Andy Rosen, is an officer and director of Iowa College Acquisition Corp and/or Kaplan Higher Education Corporation.

12.  Andrews S. Rosen is a resident of Ft. Lauderdale, Florida, in Broward County.

13.  Sheree Pace is a resident of Ft. Lauderdale, Florida, in Broward County.

## FACTS

14.  Plaintiff Urquilla Diaz is a law school graduate.

15.  Diaz was hired by Kaplan, in April 2005 as a Director of a new project called, "School Within a School" program.

16.  Plaintiff Urquilla Diaz is of Hispanic descent, originally from El Salvador, and came to the United States in 1984 to escape a civil war in El Salvador after losing many members of his family in the war.

17.  Diaz requested a job change around July of 2005, after he received orders from

the United States Army, directing him to report for active duty Iraq within thirty days. Diaz was formerly an infantry officer in the U.S. Army before joining Kaplan.

18.  David Clinefelter, Kaplan's Provost, transferred Diaz into the Paralegal Studies department under the Dean of Paralegal Studies at the time, Ben Wilcox (hereinafter referred to as Wilcox).

19.  On September 1, 2005, Plaintiff Urquilla Diaz was transferred as a professor to the Paralegal Studies Department .

20.  After being transferred, Diaz raised concerns regarding students not earning their grades and asked many tough questions about Kaplan's actions.

21.  The concerns raised were that students were not earning their grades, that they would probably not be able to get a job in the legal field, and that it was not fair for them to have a large student loan with no way to repay it.

22.  Defendant Kaplan's President, Andrew S. Rosen a/k/a Andy S. Rosen, gave orders to fire "the Mexican" [Plaintiff].

23.  President Andrew S. Rosen a/k/a Andy S. Rosen and other upper-level management personnel, then began discriminating against Plaintiff whereby Ben Wilcox, Andrew S. Rosen a/k/a Andy S. Rosen, David Harpool, and other upper-level management personnel concocted an illegal scheme to discriminate against Plaintiff with the intention of ultimately terminating him.

24.  Ben Wilcox, Assistant Dean Sheree Pace, David Harpool, Chris Caywood, and other upper level management staff, in accordance with Andrew S. Rosen a/k/a

Andy S. Rosen's directive to "fire the Mexican", concocted an illegal discrimination scheme against Plaintiff, with the goal of terminating his employment.

25.    As part of the scheme, Plaintiff was given a much heavier academic workload than any other full time professor in a similar position.

26.    As part of the scheme, Defendants designed a way to make Plaintiff's teaching scores appear to be below average.

27.    As part of the scheme, Defendants gave Plaintiff small classes and difficult topics in the hopes that students would complain against Diaz and thus give him a low faculty approval rating on the end of class surveys.

28.    As part of the scheme, Kaplan purposely and actively conducted searches for students who might have any complaints about Diaz.

29.    As part of the scheme, Kaplan's management used "student complaint escalations" as a ruse to accuse Diaz of not meeting his job standards, when management actually knew that Diaz was well within the job standards.

30.    When the time came for Kaplan to meet with the Higher Learning Commission, they refused to allow Diaz to meet with the Commission advisors, due to fears that Diaz would share his complaints with the Higher Learning Commission.

31.    As part of the conspiracy to fire Diaz, on December 2, 2005, Plaintiff received a satisfactory performance appraisal from Randy Shochet. Two other department chairs gave Diaz a rating between "Meets job requirements to Exceeds job requirements."

32.  Diaz held numerous discussion with all three of his direct supervisors about the difficult teaching load he was forced to teach. Most professors in the Paralegal department only had one direct supervisor while Diaz had three. Between October and December of 2005 Diaz constantly complained about the difficult teaching load

33.  On December 9, 2005, Defendant Associate Dean Sheree Pace sent an email informing Plaintiff that his performance was unacceptable.

34.  On December 23, 2005, Defendant Sheree Pace informed Plaintiff that he was fired from his full-time position, but that he had the option of still working for Kaplan on a "part-time" basis.

35.  Plaintiff requested a due process hearing with Human Resources.

36.  Plaintiff also requested to speak to Provost David Clinefelter.

37.  On January 3, 2006, Dean Wilcox notified Diaz that he had been reinstated as a full-time professor.

38.  On January 10, 2006, Wilcox informed Diaz that he would not be allowed to attend the faculty retreat in Florida.

39.  On January 10, 2006, Plaintiff complained that he was the only full-time professor who was excluded from the faculty retreat in Ft. Lauderdale, and felt he was being discriminated against because of his race.

40.  After his complaints, Plaintiff was allowed to attend the retreat in Ft. Lauderdale with conditions not imposed on others attending the faculty retreat.

41.  During the three - day faculty retreat, Plaintiff complained to Defendant Caywood

and to Andy Carpenter, Javier Demarco, and Allen Lowery that Defendants

Sheree Pace and Ben Wilcox were pressuring him to inflate grades and subjecting

him to racial and national origin discrimination.

42. In order to attend the faculty retreat, Defendants required Plaintiff to stay twenty

to thirty minutes away at another hotel and pay for his trip expenses out of his

personal funds.

43. Defendants represented to Plaintiff that he would be reimbursed in a timely

manner, as every other faculty member would be reimbursed.

44. Plaintiff was not reimbursed in a timely manner, and it took him repeated requests

and complaints about racial and national origin discrimination in order to get his

expenses reimbursed.

45. On February 6, 2006, Plaintiff's faculty survey comments from one of his direct

supervisors, Mr. Martin Connor, were "Great Job Carlos!!!!  The Comments

show you doing terrific work."

46. On February 10, 2006, Plaintiff received a "written warning for poor

performance" from Defendant Sheree Pace, under the direction of Wilcox in

furtherance of the scheme to terminate Plaintiff.

47. On February 13, 2006, Plaintiff sent Javier Demarco, Christopher Caywood and

Wilcox a reminder that he wanted to file a formal discrimination complaint

against Wilcox.

48. That same day, Plaintiff informed David Clinefelter (KU's Provost) of the racial

and national origin discrimination that he was suffering, and the pressure he was

getting to inflate the students' grades.

49.     On February 17, 2006, Plaintiff complained to Melissa Martin of the Human
        Resources department about the racial and national origin discrimination he was
        experiencing.

50.     On February 23, 2006, Defendants unfairly attacked Diaz in a so-called "student
        complaint escalation." It was an attempt to give Kaplan a reason to fire Diaz.
        Kaplan did, in fact, know that Diaz had not treated the student unfairly, as was
        alleged in the complaint.

51.     On March 3, 2006, Diaz sent a letter to Kaplan's CEO, Andrew S. Rosen a/k/a
        Andy S. Rosen, in which Diaz again complained that he was a victim of racial
        discrimination.

52.     On March 7, 2006, Diaz was questioned about his allegations of racial
        discrimination by a senior Kaplan attorney, Harold Levy. Diaz once again
        conveyed to Kaplan officials that he was the victim of racial discrimination.

53.     On March 22, 2006, Diaz's thirty-sixth birthday, Defendant Kaplan fired Plaintiff
        as a full-time professor in the Paralegal Studies program and demoted him to a
        "curriculum developer" position, which was non-existent in Kaplan's list of
        positions. He was fired as a result of his continued racial discrimination
        complaints.

54.     The "curriculum developer" position was designed for failure, as there was no
        criteria against which one could measure performance in this position. The new
        job was merely used as a ruse to ultimately terminate Diaz in order to punish him

for his complaints about the racial discrimination.

55.   Plaintiff informed Defendant Kaplan that he did not feel qualified for the position.

56.   On April 24, 2006 Melissa Martin sent Diaz an email to inform him that she had
conducted "a full investigation" and that she did not find any racial discrimination
against Diaz.  This was Melissa Martin's second contact with Diaz.

57.   From early April through August of 2006, Defendant Kaplan continued to put
pressure on Plaintiff to quit, through Defendant's employee, Karen Evans and
others.

58.   On July 5, 2006, Plaintiff filed a charge of discrimination with the EEOC.

59.   On July 31, 2006, Defendant's employee, Karen Evans provided a performance
improvement plan to Plaintiff which Plaintiff believed was untrue and made false
accusations against Diaz.

60.   Diaz wrote back to Evans, explaining that he felt the so-called "improvement
plan" was nothing but a pretext made up of lies and false accusations in order to
fire him for his continued efforts to show that he was a target of discrimination by
Kaplan's officials.

61.   On August 4, 2006, Defendant David Harpool fired Plaintiff, citing
insubordination to Defendant's employee, Karen Evans and poor job performance.

62.   During the time of Plaintiff's employment, various employees in the Ft.
Lauderdale and Chicago offices kept Mexican jumping beans on their desks, and
made racial and ethnic slurs about Plaintiff to each other; Diaz became aware of
their actions.

Page 9 of 19

63. During the time of Plaintiff's employment, various employees, including Defendants Harpool and Wilcox, would make harassing phone calls to Plaintiff with disparaging remarks about Plaintiff's race and national origin.  When Plaintiff did not answer his phone, they would leave these comments on his voicemail.

64. Upper management manipulated various numbers and scores to indicate that Diaz's performance was well below average, when in fact, his scores were comparable to those of other professors who were considered to have adequate performance ratings.

65. Other non-Hispanic professors whose teaching scores/student surveys were lower than Plaintiff's were not terminated for poor job performance.

66. Diaz received his Right to Sue letter from the EEOC.

**COUNT I**
**VIOLATION OF TITLE VII - NATIONAL ORIGIN DISCRIMINATION**

67. Plaintiff realleges paragraphs 1 - 65 as if fully realleged herein.

68. By terminating Plaintiff because he was of Hispanic origin, Defendants violated Title VII by discriminating against him because of his national origin in the terms, conditions and privileges of his employment.

69. Defendants  acted with malice and reckless disregard for Plaintiff's federally protected civil rights.

70. Plaintiff is suffering and will continue to suffer irreparable injury as a result of Defendants' discriminatory practices.

Page 10 of  19

**WHEREFORE** Plaintiff requests that this Court:

a.    Issue a declaratory judgment that Defendants' acts, policies, and procedures violated Title VII of the Civil Rights Act.

b.    Permanently enjoin Defendant, its officers, agents, successors, employees, attorneys, and those acting in concert with them, from engaging in any employment policy or practice which discriminates and harasses any employee or applicant for employment on the basis of national origin;

c.    Award him under Title VII, all pay and benefits he has lost as a result of Defendants 'unlawful discrimination;

d.    Award him under Title VII compensatory and punitive damages;

e.    Award him under Title VII  reasonable attorney fees and costs of this action;

f.    Award him all other relief to which he is entitled under the law.

Plaintiff demands trial by jury.

## COUNT II

## VIOLATION OF TITLE VII - RACIAL DISCRIMINATION

71.    Plaintiff realleges paragraphs 1 - 69 as if fully realleged herein.

72.    By terminating Plaintiff because he was of Hispanic race, Defendants violated Title VII by discriminating against him because of his race in the terms, conditions and privileges of his employment.

73. Defendants acts were with malice and reckless disregard for Plaintiff's federally protected civil rights.

74. Plaintiff is suffering and will continue to suffer irreparable injury as a result of Defendants' discriminatory practices.

**WHEREFORE** Plaintiff requests that this Court:

    a. Issue a declaratory judgment that Defendants' acts, policies, and procedures violated Title VII of the Civil Rights Act.

    b. Permanently enjoin Defendant, its officers, agents, successors, employees, attorneys, and those acting in concert with them, from engaging in any employment policy or practice which discriminates and harasses any employee or applicant for employment on the basis of race;

    c. Award him under Title VII, all pay and benefits he has lost as a result of Defendants 'unlawful discrimination;

    d. Award him under Title VII compensatory and punitive damages;

    e. Award him under Title VII reasonable attorney fees and costs of this action;

    f. Award him all other relief to which he is entitled under the law.

Plaintiff demands trial by jury.

## COUNT III
## VIOLATION OF TITLE VII - RETALIATION

75. Plaintiff realleges paragraphs 1 - 73 as if fully realleged here.

76. Defendants intentionally retaliated against Plaintiff when he complained of discrimination in violation of Title VII and after he filed an EEOC Charge of

Discrimination.

77.   As a result of Defendants' acts of retaliation, Plaintiff suffered damages.

78.   Defendants' acts of retaliation were performed with malice and reckless

indifference to Plaintiff's protected civil rights.

79.   **WHEREFORE** Plaintiff requests that this Court:

a.   Issue a declaratory judgment that Defendants' acts, policies, and

procedures violated Title VII of the Civil Rights Act.

b.   Permanently enjoin Defendant, its officers, agents, successors,

employees, attorneys, and those acting in concert with them, from

engaging in any employment policy or practice which retaliates any

employee on the basis of complaining of illegal discrimination.

c.   Award him under Title VII, all pay and benefits he has lost as a result of

Defendants 'unlawful discrimination;

d.   Award him under Title VII compensatory and punitive damages;

e.   Award him under Title VII  reasonable attorney fees and costs of this

action;

f.   Award him all other relief to which he is entitled under the law.

Plaintiff demands trial by jury.

**COUNT IV**
**UNLAWFUL RETALIATION FOR COMPLAINTS OF**
**PRESSURE TO INFLATE STUDENT GRADES**

80.   Diaz realleges and incorporates paragraphs 1 through 77 of this Complaint.

81.   Defendants retaliated against Diaz by removing him from his teaching position

Page 13 of  19

and eventually fired him due to his complaints that he made in good faith.

82. As a result of Defendants' acts of retaliation, Plaintiff suffered damages.

83. Defendants' acts of retaliation were performed with malice and reckless indifference to Plaintiff's protected civil rights.

**WHEREFORE** Plaintiff requests that this Court award damages for lost wages, pain and suffering, humiliation, mental anguish, general and compensatory damages, front and back pay, pre-judgment interest, punitive damages, reasonable attorney's fees, and other damages that the Court deems just and fair. Plaintiff demands a jury trial.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

84. Diaz realleges and incorporates paragraphs 1 through 81 of this Complaint.

85. This is an action for intentional inflection of mental distress.

86. Defendants Kaplan's conduct, as well as the conduct of Andrew S. Rosen individually, Sheree Pace indivdually, and Chris Caywood individually was intentional, reckless, and outrageous.

87. Because Diaz objected to and refused to participate in Kaplan's activity, Kaplan set out to destroy Diaz and his mental health.

88. The actions of Kaplan and Andrew S. Rosen individually, Sheree Pace indivdually, and Chris Caywood individually are shocking to the conscience and should not be tolerated in an organized society.

89. As a result of said conduct Plaintiff experienced pain and suffering, severe mental anguish, loss of capacity for the enjoyment of life, loss of earnings, loss

of ability to earn money and aggravation of a previously existing condition. The losses are either permanent or continuing, and Plaintiff(s) will suffer the losses in the future. Plaintiff also requests punitive damages.

**WHEREFORE** Plaintiff requests that this Court award damages for lost wages, pain and suffering, humiliation, mental anguish, general and compensatory damages, front and back pay, pre-judgment interest, punitive damages, reasonable attorney's fees, and other damages that the Court deems just and fair. Plaintiff demands a jury trial.

**COUNT VI - SLANDER**

90.    Diaz realleges and incorporates paragraphs 1 through 87 of this Complaint.

91.    Kaplan, by and through its employees, including Andrew S. Rosen a/k/a Andy S. Rosen, Ben Wilcox, David Harpool and other Kaplan employees, slandered Diaz by using racially discriminatory and vulgar remarks which were completely without merit.

92.    As a result of said conduct Plaintiff suffered pain and suffering, mental anguish, loss of capacity for the enjoyment of life, loss of earnings, loss of ability to earn money and aggravation of a previously existing condition. The losses are either permanent or continuing and Plaintiff(s) will suffer the losses in the future. Plaintiff asks for punitive damages.

**WHEREFORE** Plaintiff requests that this Court award damages for lost wages, pain and suffering, humiliation, mental anguish, general and compensatory damages, front and back pay, pre-judgment interest, punitive damages, reasonable attorney's fees, and other damages that the Court deems just and fair. Plaintiff demands a jury trial.

Page 15 of 19

## COUNT VII
## UNLAWFUL RETALIATION
## VIOLATION OF FLORIDA STATUTE 760. et sea.

93.    Diaz realleges and incorporates paragraphs 1 through 90 of this Complaint.

94.    This is an action for damages as a result of the Defendant's retaliatory treatment
       of Plaintiff in violation of the Florida Civil Rights Act of 1993, Fla. Stat. §760.

95.    By and through its agents, supervisors, and employees, Defendant engaged in
       and otherwise permitted retaliation to occur by: refusing to redress Plaintiff's
       legitimate and bonafide complaints of discrimination; by retaliating against
       Plaintiff by demoting and disciplining him, and by terminating his employment.

96.    Plaintiff Diaz was engaged in protected activity when he reported and/or made
       complaints of unlawful activity.

97.    Diaz's complaints constitute protected activity under 42 U.S.C. §2000e-3(a).

98.    Diaz suffered adverse action by the Defendant in that he was disciplined and/or
       terminated.

99.    Diaz's complaints and opposition to the discrimination are causally related to the
       Defendant's retaliatory treatment against him.

100.   As a result of the aforementioned conduct as alleged in this Count, Defendant
       has violated the FCRA.

101.   The Defendant violated Florida Statute § 760.10 by retaliating against Plaintiff
       Diaz for his legitimate and bonafide complaints of discrimination.

102.   As a result of the Defendant's aforementioned conduct and treatment of the
       Plaintiff, Plaintiff has sustained a loss of employment and other damages.

103. As result of the aforementioned actions of the Defendant, Plaintiff has suffered severe emotional distress.

104. Defendant has failed to comply with their statutory duty to take all reasonable and necessary steps to eliminate discrimination from the workplace and to prevent it from occurring.

105. Plaintiff believes and based thereon alleges that in addition to the practices enumerated herein, Defendant has engaged in other discriminatory practices against Plaintiff which are not yet fully known. At such time that the discrimination becomes known, Plaintiff will seek leave of court to amend this complaint in that regard.

106. Plaintiff has exhausted all of his administrative remedies.

107. As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination, Plaintiff has suffered and will continue to suffer pain and suffering, extreme and severe emotional distress, and mental anguish.

108. Plaintiff has suffered and will continue to suffer a loss of earnings and employment related benefits and job opportunities. As a result, Plaintiff is therefore entitled to general, compensatory damages and punitive damages in an amount to be proven at trial.

109. As a further direct and proximate result of the Defendant's violation as herein described, Plaintiff has been compelled to retain the services of the undersigned law firm. Plaintiff will incur and continue to incur reasonable attorney's fees and costs. Plaintiff requests that his attorney's fees be awarded pursuant to Fla

Statute §760.11(5).

**WHEREFORE,** Plaintiff Diaz prays that judgment be entered in his favor against the

Defendant as follows: That Plaintiff be awarded general and compensatory damages,

reinstatement, or front pay, back pay, prejudgment interest; that Plaintiff be awarded punitive

damages, reasonable attorney's fees and costs pursuant to the FCRA; that Plaintiff be awarded

such other relief as the Court deems just and proper. Plaintiff further demands trial by jury.

## COUNT VIII
## UNLAWFUL RETALIATION
## VIOLATION OF FLORIDA WHISTLEBLOWER'S ACT F.S.§§448.101-448.105

110.    Diaz realleges and incorporates paragraphs 1 through 109 of this Complaint.

111.    This is an action under Florida Statute § 448.101, et. seq.

112.    Because Diaz objected to and refused to participate in Kaplan's activity and thus

Kaplan retaliated against him.

**WHEREFORE,** Plaintiff Diaz prays that judgment be entered in his favor

against the Defendant as follows: that Plaintiff be awarded general and compensatory damages,

reinstatement, or front pay, back pay, prejudgment interest; that Plaintiff, reasonable attorney's

fees and costs pursuant to the §448.101 ; that Plaintiff be awarded such relief as the Court

deems just and proper. Plaintiff further demands trial by jury.

## COUNT IX
## INDEPENDENT TORT OF CONSPIRACY

113.    Diaz realleges and incorporates paragraphs 1 through 66 of this Complaint.

114.    Defendants Kaplan University and Andrew S. Rosen individually, Sheree Pace

indivdually, maliciously, wantonly, and wilfully conspired and confederated

with each other to commit the above wrongful acts for the sole purpose of

depriving Plaintiff of employment and to damage his professional reputation.

115.    As a result of the concerted nature of defendants' actions, Plaintiff Diaz has

suffered past and future income, and damage to his personal and profession

reputation. Diaz has suffered such damages in the past and will continue to

suffer such damages in the future.

**WHEREFORE** Plaintiff requests that this Court award damages for lost wages, pain

and suffering, humiliation, mental anguish, general and compensatory damages, front and back

pay, pre-judgment interest, punitive damages, reasonable attorney's fees, and other damages

that the Court deems just and fair. Plaintiff demands a jury trial.

_____

**John W. Andrews, Esq.**
FBN: 178531;  SPN: 013131
**ANDREWS LAW GROUP**
3220 Henderson Blvd.
Tampa, FL 33609
Ph. (813) 877-1867; Fx. (813) 872-8298
Attorneys for Plaintiff.

# IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT OF THE STATE OF FLORIDA, IN AND FOR BROWARD COUNTY
## CIVIL DIVISION

Carlos Urquilla Diaz,

      Plaintiff,

v.

                Civil Action No.:   **0711472**

Kaplan University a/k/a
Kaplan College a/k/a/ Iowa
College Acquisition Corporation;
Kaplan Higher Education Corporation,
a division of Kaplan, Inc.,
a wholly owned subsidiary of the
Washington Post Company,
and Andy Rosen, Ben Wilcox,
Sheree Pace, David Harpool,
Chris Caywood as agents on
behalf of Kaplan.

      Defendants.

_____/

*(stamp: FILED FOR RECORDS / CLERK OF CIRCUIT COURT / BROWARD COUNTY, FLORIDA / 2007 MAY 21 PM 4:45 / CIRCUIT CIVIL)*

## COMPLAINT AND DEMAND FOR JURY TRIAL

    Plaintiff, Carlos Urquilla Diaz ("Diaz") by and through his undersigned counsel, sues

Defendant, **KAPLAN UNIVERSITY** a/k/a, **KAPLAN COLLEGE** a/k/a **IOWA COLLEGE**

**ACQUISITION CORP.,** ("Kaplan"), Kaplan Higher Education Corporation, a division of

Kaplan, Inc., a wholly owned subsidiary of the Washington Post Company, Andy Rosen, Ben

Wilcox, Sheree Pace, David Harpool, Chris Caywood; and states:

## NATURE OF CLAIMS, VENUE AND JURISDICTION

1.    This is an action for damages in excess of $15,000.00 (fifteen thousand dollars), and,

legal and equitable relief for national origin discrimination, racial discrimination and

retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et.seq.

2.      This action is within the jurisdiction of this Court pursuant to 42 U.S.C. Section 2000e-5(e)(f)(3).

3.      Plaintiff has met all conditions precedent by filing a charge with the EEOC, receiving a Notice of Dismissal and Right to Sue, and by filing this action within 90 days of his receipt of his  Right to Sue.

4.      At all times relevant to the allegations in this Complaint, Defendant Kaplan was a foreign corporation doing business in Ft. Lauderdale, Broward County, Florida . At all times relevant to the allegations in this Complaint, Defendants Andy Rosen, Ben Wilcox, Sheree Pace, David Harpool, Chris Caywood were agents and supervisors acting on behalf of Kaplan and engaged in activity forming the basis of this complaint in Ft. Lauderdale, Broward County, Florida.

5.      The facts pleaded in this action as being in violation of Title VII were planned and/or executed in Ft. Lauderdale, Broward County, Florida.

### FACTS

6.      Plaintiff Urquilla Diaz is a law school graduate.

7.      Plaintiff Urquilla Diaz is of Hispanic descent.

8.      Plaintiff Urquilla Diaz was employed by Kaplan in April 2005 as a Director of the School Within a School program, and,  eventually as a professor for Kaplan's School of Paralegal Studies.

9.      On September 1, 2005, Plaintiff Urquilla Diaz was transferred as a professor to the

2

Paralegal Studies Department after raising concerns regarding students not earning their grades and asking many tough questions about Kaplan's actions not being fair to students.

10.     President Andy Rosen and other upper-level management personnel, then began discriminating against Plaintiff whereby Ben Wilcox, Andy Rosen, David Harpool, and other upper-level management personnel concocted a scheme to discriminate against Plaintiff with the intention of ultimately terminating him.

11.     Plaintiff was transferred as a professor and given a much heavier academic workload than any other full time professor in a similar position.

12.     Defendants designed a scheme to make Plaintiff's teaching scores appear to be below average.

13.     Defendants gave Plaintiff small classes and difficult topics.

14.     On December 2, 2005, Plaintiff received a satisfactory performance appraisal from Randy Shochet.  Two other department chairs gave Diaz a rating between "Meets job requirements to Exceeds job requirements."

15.     At approximately this same time, Defendant Andy Rosen, the President, gave orders to fire "the Mexican" [Plaintiff}.

16.     On December 9, 2005, Defendant Sheree Pace sent an email informing Plaintiff that he was not performing well as a professor because his student survey responses were low.

17.     On December 23, 2005, Defendant Sheree Pace informed Plaintiff that he was fired, but he had the option of still working for Kaplan on a part-time basis.

18.     Plaintiff requested a due process hearing with Human Resources.

19.     On January 3, 2006, Ben Wilcox notified Diaz that he had been reinstated as a full-time

3

professor.

20.    On January 10, 2006, Plaintiff complained that he was the only professor who was excluded from the faculty retreat in Ft. Lauderdale, and felt he was being discriminated against because of his race.

21.    After his complaints, Plaintiff was allowed to attend the retreat in Ft. Lauderdale with conditions not imposed on others attending the faculty retreat.

22.    During the 3 day faculty retreat, Plaintiff complained to Defendant Caywood and to Andy Carpenter, Javier Demarco, and Allen Lowery that Defendants Sheree Pace and Ben Wilcox were pressuring him to inflate grades and subjecting him to racial and national origin discrimination.

23.    In order to attend the faculty retreat, Defendants required Plaintiff to stay twenty to thirty minutes away at another hotel and pay for his trip expenses out of his personal funds.

24.    Defendants represented to Plaintiff that he would be reimbursed in a timely manner, as every other faculty member would be reimbursed.

25.    Plaintiff was not reimbursed in a timely manner, and it took him repeated requests and complaints about racial and national origin discrimination in order to get his expenses reimbursed.

26.    On February 6, 2006, Plaintiff's faculty survey comments from Mr. Martin Connor were "Great Job Carlos!!!!  The Comments show you doing terrific work."

27.    On February 10, 2006, Plaintiff received a "written warning for poor performance" from Defendants Sheree Pace and Ben Wilcox.

28.    On February 13, 2006, Plaintiff sent Javier Demarco, Christopher Caywood and Ben Wilcox a reminder that he wanted to file a formal discrimination complaint against Ben Wilcox.

4

29. That same day, Plaintiff informed David Clinefelter (KU's provost) of the racial and national origin discrimination that he was suffering, and the pressure he was getting to inflate the student's grades.

30. On February 17, 2006, Plaintiff complained to Melissa Martin about the racial and national origin discrimination he was experiencing.

31. On February 21, 2006, Plaintiff informed Andy Rosen that there was a need for a union at Kaplan.

32. On February 23, 2006, Defendant Kaplan fired Plaintiff as a full-time professor in the Paralegal Studies program. and demoted him to a curriculum developer position ,which was a non-existent position in Kaplan's list of positions.

33. Plaintiff informed Defendant Kaplan that he did not feel qualified for the position.

34. Defendant Kaplan continued to put pressure on Plaintiff to quit, through Defendant Karen Evans.

35. On July 5, 2006, Plaintiff filed a charge of discrimination with the EEOC.

36. On July 31, 2006, Defendant Karen Evans provided a performance improvement plan to Plaintiff which Plaintiff believed was untrue and made false accusations.

37. On August 4, 2006, Defendant David Harpool fired Plaintiff claiming insubordination to Defendant Karen Evans and poor job performance.

38. During the time of Plaintiff's employment, various employees in the Ft Lauderdale and Chicago offices kept Mexican jumping beans on their desks, and made racial and ethnic slurs about Plaintiff to each other.

39. During the time of Plaintiff's employment, various employees, including Defendants

Harpool and Wilcox, would make harassing phone calls to Plaintiff with disparaging remarks about Plaintiff's race and national origin. When Plaintiff did not answer his phone, they would leave these comments on his voicemail.

40.     Other non-Hispanic professors whose teaching scores/student surveys were lower than Plaintiffs were not terminated for poor job performance as teachers.

### COUNT I
### VIOLATION OF TITLE VII - NATIONAL ORIGIN DISCRIMINATION

41.     Plaintiff realleges paragraphs 1 - 39 as if fully realleged herein.

42.     By terminating Plaintiff because he was of Hispanic origin, Defendants violated Title VII by discriminating against him because of his national origin in the terms, conditions and privileges of his employment.

43.     Defendants' acts were with malice and reckless disregard for Plaintiff's federally protected civil rights.

44.     Plaintiff is suffering and will continue to suffer irreparable injury as a result of Defendants' discriminatory practices.

**WHEREFORE** Plaintiff requests that this Court:

(a)     Issue a declaratory judgment that Defendants' acts, policies, and procedures violated Title VII of the Civil Rights Act.

(b)     Permanently enjoin Defendant, its officers, agents, successors, employees, attorneys, and those acting in concert with them, from engaging in any employment policy or practice which discriminates and harasses any employee or applicant for employment

6

on the basis of national origin;

    (c)    Award him under Title VII, all pay and benefits he has lost as a result of Defendants 'unlawful discrimination;

    (d)    Award him under Title VII compensatory and punitive damages;

    (e)    Award him under Title VII  reasonable attorney fees and costs of this action;

    (f)    Award him all other relief to which he is entitled under the law.

Plaintiff demands trial by jury.

## COUNT II
## VIOLATION OF TITLE VII - RACIAL DISCRIMINATION

45.    Plaintiff realleges paragraphs 1 - 39 as if fully realleged herein.

46.    By terminating Plaintiff because he was of Hispanic race, Defendants violated Title VII by discriminating against him because of his race in the terms, conditions and privileges of his employment.

47.    Defendants acts were with malice and reckless disregard for Plaintiff's federally brotected civil rights.

48.    Plaintiff is suffering and will continue to suffer irreparable injury as a result of Defendants' discriminatory practices.

**WHEREFORE** Plaintiff requests that this Court:

    (a)    Issue a declaratory judgment that Defendants' acts, policies, and procedures violated Title VII of the Civil Rights Act.

    (b)    Permanently enjoin Defendant, its officers, agents, successors,

7

employees, attorneys, and those acting in concert with them,

from engaging in any employment policy or practice which

discriminates and harasses any employee or applicant for employment

on the basis of race;

(c)    Award him under Title VII, all pay and benefits he has lost as a result of

Defendants 'unlawful discrimination;

(d)    Award him under Title VII compensatory and punitive damages;

(e)    Award him under Title VII  reasonable attorney fees and costs of this

action;

(f)    Award him all other relief to which he is entitled under the law.

Plaintiff demands trial by jury.

## COUNT III

## VIOLATION OF TITLE VII -  RETALIATION

49.    Plaintiff realleges paragraphs 1 - 39 as if fully realleged here.

50.    Defendants intentionally retaliated against Plaintiff when he complained of

discrimination in violation of Title VII and after he filed an EEOC Charge of Discrimination.

51.    As a result of Defendants' acts of retaliation, Plaintiff suffered damages.

52.    Defendants' acts of retaliation were performed with malice and reckless indifference

to Plaintiff's protected civil rights.

**WHEREFORE** Plaintiff requests that this Court:

(a)    Issue a declaratory judgment that Defendants' acts, policies, and

procedures violated Title VII of the Civil Rights Act.

8

(b)     Permanently enjoin Defendant, its officers, agents, successors, employees, attorneys, and those acting in concert with them, from engaging in any employment policy or practice which retaliates any employee on the basis of complaining of illegal discrimination.

(c)     Award him under Title VII, all pay and benefits he has lost as a result of Defendants 'unlawful discrimination;

(d)     Award him under Title VII compensatory and punitive damages;

(e)     Award him under Title VII  reasonable attorney fees and costs of this action;

(f)     Award him all other relief to which he is entitled under the law.

Plaintiff demands trial by jury.

**John W. Andrews, Esq.**
FBN: 178531;  SPN: 013131
**ANDREWS LAW GROUP**
3220 Henderson Blvd.
Tampa, FL 33609
Ph. (813) 877-1867; Fx. (813) 872-8298

Law Office of Bonita M. Riggens
669 1st Avenue North
St. Petersburg, FL 33701
Phone:          813-989-1401
Fax:             813-898-1312
FBN# 400424

Attorneys for  Plaintiff

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE SIDE OF THE FORM.)

**I(a) PLAINTIFF**

CARLOS URQUILLA DIAZ, an individual,

**DEFENDANT** 08 - 60368

KAPLAN UNIVERSITY a/k/a KAPLAN COLLEGE a/k/a IOWA COLLEGE ACQUISITION CORP.; KAPLAN HIGHER EDUCATION CORP.; WASHINGTON POST CO.; ANDY ROSEN; BENN WILCOX; SHERE PACE; DAVID HARPOOL; and CHRIS CAYWOOD,

CIV - SEITZ
McALILEY

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

John W. Andrews, Esquire
jwa@lx.netcom.com
Andrews Law Group
3220 Henderson Blvd.
Tampa, FL 33609
Telephone: 813-877-1867

**ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Susan N. Eisenberg, Esquire
susan.eisenberg@akerman.com
Jennifer M. Taylor, Esquire
jennifer.taylor@akerman.com
Ana L. Olman, Esquire
ana.olman@akerman.com
Akerman Senterfitt
One S.E. Third Avenue, 25th Floor
Miami, FL 33131
Telephone: 305-374-5600

FTL-08-60308-CV-SEITZ-MCAULEY

**(d) CIRCLE COUNTY WHERE ACTION AROSE:** BROWARD

**II. BASIS OF JURISDICTION**

(PLACE AN X ONE BOX ONLY)

1. ☐ U.S. Government Plaintiff
2. ☐ U.S. Government Defendant
3. ☒ Federal Question (U.S. Government Not a Party)
4. ☐ Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**
(PLACE AN X IN ONE BOX FOR PLAINTIFF AND
(For Diversity Case Only)     ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] | [ ] | Incorporated and Principal Place of Business in This State | [ ] | [ ] |
| Citizen of Another State | [ ] | [ ] | Incorporated and Principal Place of Business in Another State | [ ] | [ ] |
| Citizen or Subject of a Foreign Country | [ ] | [ ] | Foreign Nation | [ ] | [ ] |

**IV. CAUSE OF ACTION**

National Origin Discrimination, Racel Discrimination, and Retaliation pursuant to Title VII, 42 U.S.C. § 2000e, as well as related state law claims.

**IVa.** ___ days estimated (for both sides) to try entire case

**V. NATURE OF SUIT** (PLACE AN X IN ONE BOX ONLY)

| A CONTRACT | A TORTS | B FORFEITURE PENALTY | A BANKRUPTCY | A OTHER STATUS |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 States Reappointment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 362 Personal Injury-Med Malpractice |  | ☐ 450 Commerce/ICC Rates/etc. B |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 365 Personal Injury-Product Liability | **A PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personnel Injury | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) B | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits B | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholder's Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending |  | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | **B SOCIAL SECURITY** |  |
| ☐ 195 Contract Product Liability |  | ☐ 385 Property Damage Product Liability | ☐ 861 HIA (1395f) | ☐ 891 Agricultural Acts |
|  |  |  | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
|  |  | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
|  |  | **A LABOR** | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
|  |  | ☐ 710 Fair Labor Standards Act | ☐ RSI (405(g)) | ☐ 895 Freedom of Information Act |
|  |  | ☐ 720 Labor Management Relations B |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **B PRISONER PETITIONS** | ☐ 730 Labor Management Reporting & Disclosure Act |  |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | ☐ 950 Constitutionality of State Statutes |
| ☐ 220 Foreclosure B | ☒ 442 Employment | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 890 Other Statutory Actions* * A or B |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 535 Death Penalty | ☐ 791 Employee Ret. Inc. Security Act B |  |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus and Other* | **A FEDERAL TAX SUITS** |  |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights * A or B | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |  |
| ☐ 290 All Other Real Property |  |  | ☐ 871 IRS-Third Party 26 USC 7609 |  |

**VI. ORIGIN** (PLACE AN X IN ONE BOX ONLY)

☐ Original Proceeding   ☒ Removed from State Court   ☐ Remanded from Appellate Court   ☐ Refiled   ☐ Transferred from another district (specify)   ☐ 6. Multidistrict Litigation   ☐ Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT**

CHECK IF THIS IS A
☐ CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND $ _____

☐ Check YES only if demanded in complaint
**JURY DEMAND:**   ☒ yes   ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See Instructions

JUDGE _____   JUDGE _____

DATE March 17 2008

SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT

FOR OFFICE USE ONLY: Receipt No. 976974   Amount $350.00

M/ifp:

03/17/08