UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 08-60368-CIV-SEITZ/O'SULLIVAN

CARLOS URQUILLA DIAZ,

    Plaintiff,

v.

KAPLAN UNIVERSITY a/k/a KAPLAN
COLLEGE a/k/a IOWA COLLEGE ACQUISITION
CORP., KAPLAN HIGHER EDUCATION CORP.,
WASHINGTON POST CO., ANDY ROSEN, BEN
WILCOX, SHERE PACE, DAVID HARPOOL,
CHRIS CAYWOOD,

    Defendants.
_____/

## ORDER (1) DENYING MOTIONS TO REMAND; (2) DENYING MOTIONS TO STRIKE; AND (3) DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION AS TO COUNT VI

THIS MATTER came before the Court for hearing on July 1, 2008, on Defendant Ben Wilcox's Motion to Remand to State Court [DE-6] and Plaintiff's Motion to Remand to State Court [DE-11] based on lack of unanimity of consent among Defendants.[1] Defendant Kaplan University ("KU") and Defendant Kaplan Higher Education Corp. ("KHEC") (jointly, the "Corporate Defendants")[2] oppose remand, arguing that Defendant Wilcox was fraudulently joined to prevent removal and thus his consent is not required. Having considered the Motions to Remand, the parties' statements and counsel's arguments at the July 1, 2008 hearing, the record evidence, and the unique circumstances of this case, the Court will deny the motions to remand as to the claims against Corporate Defendants and decline to exercise supplemental jurisdiction over Count VI (Slander).

---

    [1] Corporate Defendants have filed two Motions to Strike [DE-45 and DE-52], which this Order also addresses.

    [2] In addition to the Corporate Defendants and Defendant Wilcox, the Amended Complaint names the Washington Post Co. and several current and former Kaplan employees, discussed below. Plaintiff stated that Defendant Washington Post Co. was simply named in the Complaint as the parent company of Kaplan and has not been served.

I.   **PROCEDURAL AND FACTUAL BACKGROUND**[3]

**Nature of the Amended Complaint**

Plaintiff's nine-count Amended Complaint[4] seeks damages for alleged racial and national origin discrimination during his tenure as an on-line professor for Defendant KU from October 3, 2005, until August 4, 2006. In addition to these counts, the Amended Complaint also contains claims of intentional infliction of emotional distress, slander, and conspiracy, and two claims of retaliation: one for reporting the discrimination and one for complaining regarding pressure to inflate student grades. In addition to the Corporate Defendants, the Amended Complaint names five individual defendants: Ben Wilcox (Defendant KU's former Dean of Law and Legal Studies); Andy Rosen (Corporate Defendants' current President); Chris Caywood (a current Kaplan employee); David Harpool (Corporate Defendants' former Chief Operating Officer); and Shere Pace (Corporate Defendants' Associate Dean of Paralegal Studies). Of the five individual defendants, Defendant Wilcox is the only one to have been served.[5]

While Plaintiff does not specify which Defendants he accuses in each count, six of Plaintiff's nine counts are claims for which only the Corporate Defendants, as Plaintiff's employer, can be held liable. (Specifically, Counts I, II, III, IV, VII, and VIII.) Plaintiff names the following defendants in the remaining counts: Count V (Intentional Infliction of Emotional Distress) - Defendants Rosen,

---

[3] These facts, taken in the light most favorable to Plaintiff, are based on the record, as cited, and from statements made at the July 1, 2008 hearing.

[4] Plaintiff's nine-count Amended Complaint alleges: (1) Violation of Title VII - National Origin Discrimination; (2) Violation of Title VII - Racial Discrimination; (3) Violation of Title VII - Retaliation; (4) Unlawful Retaliation for Complaints of Pressure to Inflate Student Grades; (5) Intentional Infliction of Emotional Distress; (6) Slander; (7) Unlawful Retaliation - Violation of Fla. Stat. 760 *et. sec.* (Florida Civil Rights Act); (8) Unlawful Retaliation - Violation of Florida Whistleblower's Act Fla. Stat. §§448.101-448.105; and (9) Independent Tort of Conspiracy.

[5] The residences of the individual defendants are as follows: Defendant Wilcox - Oklahoma City, Oklahoma; Andy Rosen - Ft. Lauderdale, Florida; Chris Caywood - Evanston, Illinois; David Harpool - Chicago, Illinois; and Shere Pace - Ft. Lauderdale, Florida.

Pace, and Caywood, in addition to the Corporate Defendants; Count VI (Slander) - Defendants Rosen, Harpool, and Wilcox; Count IX ("Independent Tort of Conspiracy") - Defendants Rosen and Pace, in addition to the Corporate Defendants.  Thus, as discussed in more detail below, the only claim brought against Defendant Wilcox is Count VI (Slander).

**Plaintiff's Employment with Corporate Defendants and his EEOC Complaint**

In April 2005, Plaintiff, who is originally from El Salvador, began working for the Corporate Defendants as the Director of a new program entitled the "School Within a School." [DE-1 ("Pl.'s Am. Compl.") ¶ 16.]  As the Director, Plaintiff was to be a "bridge" between Defendant KHEC a series of traditional, brick-and-mortar schools across the United States, and KU, an on-line college created in 2000.  At the end of September 2005, Plaintiff decided to resign in order to fight a military recall and move to Kansas for family reasons.  When Corporate Defendants' Provost learned of Plaintiff's intent to leave, he offered Plaintiff the opportunity to work from home in Kansas as an on-line professor and maintain his current salary rather than the lower on-line professor salary.  Plaintiff accepted this offer and began working as an on-line professor in KU's Law and Legal Studies Department when the semester began on October 3, 2005.

Defendant Wilcox became the Dean of the Law and Legal Studies earlier in the summer of 2005 and was still the head when Plaintiff joined the Department.  [*See* DE-14-4; Wilcox's June 10, 2008 Aff. ¶ 2.[6]]  Plaintiff alleges that, as the only full-time Hispanic on-line professor, he had difficulty in the all-white department from the moment he joined.  Plaintiff states that around January 19, 2006, he made a complaint against Defendant Wilcox and Defendant Shere Pace[7] to the Corporate Defendants' Human Resources Department in Ft. Lauderdale, Florida.  (*See also* Pl.'s May 19, 2008

---

[6] "Wilcox's June 10, 2008 Aff." refers to the Affidavit of Ben Wilcox, dated June 10, 2008, which was filed in the *qui tam* action. [DE-54, p. 41.]

[7] Plaintiff alleges that these two defendants were "pressuring him to inflate grades and subjecting him to racial and national origin discrimination."  (Am. Compl. ¶ 41.)

Aff. ¶ 32.)[8]  Plaintiff alleges that no one spoke to him about his complaint until nearly one month later, around February 17, 2006, and that, based on that one conversation, it was determined that no action would be taken.

Around March 7, 2006, Plaintiff reported to Defendant Caywood two conversations he had with a student whom he had failed for cheating regarding negative remarks Defendant Wilcox allegedly had made about Plaintiff's teaching performance.  (Pl.'s June 30, 2008 Aff. ¶¶ 4-6.)[9]  Plaintiff reports that, after speaking to Defendant Caywood, he took his complaint to Defendant Harpool, and then to Defendant Andy Rosen, Corporate Defendants' current President.  Not satisfied with the responses he received, on or about March 3, 2006,[10] Plaintiff wrote a letter to all three of these defendants.[11]  (Pl.'s May 19, 2008 Aff. ¶ 40.)  According to Plaintiff, Corporate Defendants' only response was to appoint Defendant Wilcox to oversee the investigation of Plaintiff's complaints and demote Plaintiff from full-time professor to a Curriculum Developer.  (*See also Id.* ¶ 41.)  Approximately two months later, on May 10, 2006, Defendant Wilcox's employment with Corporate Defendants ended.[12]  (Wilcox's June 10, 2008 Aff. ¶ 7.)

---

[8]  "Pl.'s May 19, 2008 Aff." refers to the Affidavit of Plaintiff Diaz, dated May 19, 2008 [DE-39].

[9]  "Pl.'s June 30, 2008 Aff." refers to the Affidavit of Plaintiff Diaz, dated June 30, 2008 [DE-54, pp. 25-7].

[10]  The Court takes these dates from Plaintiff's affidavits, while recognizing that they imply that the letter addressing the lack of response to Plaintiff's complaint was written before he allegedly reported his complaint.  No copy of the letter has been filed, so for the purposes of this Order, it is sufficient to assume these events took place in early March 2006.

[11]  At the July 1, 2008 hearing, Plaintiff stated that he did *not* mention his conversations with the student, a Ms. Dufrane, in his letter.  Plaintiff explained that he did not mention them because he was "frustrated" at that time.  The first revelation in the record of Plaintiff's conversations with Ms. Dufrane is in his June 2008 affidavit, which he provided in response to the Court's June 27, 2008 Order requiring factual support for Plaintiff's slander claim in preparation for the hearing on the motions to remand.

[12]  It is not clear from the record whether Defendant Wilcox was fired or voluntarily left.

On June 13, 2006, Plaintiff filed a charge of discrimination with Equal Employment Opportunity Commission (the "EEOC") against the Corporate Defendants in which he named Defendants Wilcox and Pace as the employees responsible for his discriminatory treatment. (June 13, 2006 Questionnaire.)[13] The EEOC notified Corporate Defendants of Plaintiff's charge of discrimination on June 26, 2006. (Notice of Charge of Discrimination.)[14] On August 4, 2006, Defendant Harpool fired Plaintiff, citing insubordination and poor job performance. (Pl.'s Am. Compl. ¶ 61 [DE-1]; Pl.'s May 19, 2008 Aff. ¶ 44.) Approximately two months later, on September 27, 2006, Plaintiff amended his charge to include a claim of retaliatory discharge. (Amended Charge of Discrimination.)[15] On February 20, 2007, the EEOC dismissed the charge and sent Plaintiff a Right to Sue letter. (EEOC Dismissal and Notice of Rights [DE-54. p. 19].) Pursuant to the Notice, Plaintiff Diaz had ninety days after receipt of the Notice (or until May 21, 2007) to file suit against the Corporate Defendants. (*Id.*)

**Three Lawsuits: Plaintiff's Two Suits Against the Corporate Defendants and One Criminal Suit Against Defendant Wilcox**

On March 17, 2007, Plaintiff first met Attorney John Andrews[16] of the Andrews Law Group in Tampa, FL. Over the next month, Plaintiff and Defendant Wilcox, who are both law school graduates, met with Attorney Andrews to discuss filing a *qui tam* lawsuit against Corporate Defendants. (*See* Pl.'s June 19, 2008 Aff., ¶ 5; Wilcox's June 10, 2008 Aff. ¶ 41.) In affidavits filed in the *qui tam* action, Plaintiff and Defendant Wilcox maintain that they met separately with Attorney

---

[13] "June 13, 2006 Questionnaire" refers to the EEOC Questionnaire, dated June 13, 2006 [DE-54, pp. 13-5].

[14] "Notice of Charge of Discrimination" refers to the EEOC Notice, dated June 26, 2006 [DE-54, p. 18].

[15] "Amended Charge of Discrimination" refers to the EEOC Charge form, dated September 27, 2006 [DE-54, p. 12].

[16] John Andrews ("Attorney Andrews") appeared on behalf of Plaintiff Diaz at the July 1, 2008 hearing on the Motions to Remand.

Andrews, who explained to each of them the potential conflict of interest between them, "as required under Florida Rule of Professional Conduct 4-1.7." (Pl.'s June 19, 2008 Aff., ¶ 4; Wilcox's June 10, 2008 Aff. ¶¶ 18-19, 35-36.) Both maintain that they gave their informed consent to waive any conflict of interest in the *qui tam* action. (Pl.'s June 19, 2008 Aff., ¶ 6 (stating he waived "any potential conflict of interest"); Wilcox's June 10, 2008 Aff. ¶¶ 36, 41 (stating he waived "any conflict of interest whatsoever".) On April 18, 2007, Plaintiff and Defendant Wilcox filed a *qui tam* action against Corporate Defendants in the Middle District of Florida alleging - as in the instant case - grade inflation and pressure to admit unqualified students (the "*qui tam* action"). (Docket in 07-CIV-00669-Merryday, M.D. Fla. [DE-51-8]; First Amended Complaint in the *qui tam* action [DE-51-9].)

On May 21, 2007 (the last day of the ninety-day period in the Right to Sue Notice), Attorney Andrews, in conjunction with another firm, filed in the State Court a Title VII Complaint based on Plaintiff's EEOC charges (the "Original Complaint" in "the instant action"). [DE-54. pp. 3-11]. The Original Complaint named all of the current Defendants but alleged only three causes of action: National Origin Discrimination in violation of Title VII; Racial Discrimination in violation of Title VII; and Retaliation. [*Id.*] Between the filing of the Original Complaint and February 22, 2008, Plaintiff sought three extensions of time to perfect service but did not serve any of the Defendants. (*See* State Court docket [DE-51-2].)

No other action was taken in the instant action until February 22, 2008, when Plaintiff filed an Amended Complaint in the State Court. [DE-51-2, p. 3.] The Amended Complaint added the state civil rights claims, the Whistleblower claim, the claim for intentional infliction of emotional distress, and the "tort of conspiracy" claim. It also added a slander claim against Defendants Wilcox, Rosen, and Harpool. The slander claim is the only claim made against Defendant Wilcox individually; the other claims either name other individual defendants or are claims for which only the Corporate Defendants could be held liable. The slander claim alleges: "Kaplan, by and through its employees,

6

including Andrew S. Rosen[ ], Ben Wilcox, David Harpool, and other Kaplan employees, slandered Diaz by using racially discriminatory and vulgar remarks which were completely without merit."[17] (Pl.'s Am. Compl. at DE-1, p. 20, ¶ 91.)  This is the only description in the Amended Complaint of the statements that are the subject of this count.[18]

Over the next month, activity took place in the instant action, the *qui tam* action, and in a federal criminal case against Defendant Wilcox.  In the instant action, on February 25, 2008, Plaintiff served Corporate Defendants and, four days later, filed a return of service. [DE-51-2.]  On February 29, 2008, Plaintiff faxed the Amended Complaint to Defendant Wilcox, who agreed to accept service by this means.[19]  [DE-30, ¶¶ 4-5.]  Plaintiff did not file a Return of Service as to Defendant Wilcox in the State Court.  On March 14, 2008, Defendant Wilcox, acting *pro se,* filed an Answer.  [DE-51-2.]  Three days later, on March 17, 2008, Corporate Defendants removed the instant case to this Court based on federal question jurisdiction. [DE-1.]  On March 25, 2008, Judge Merryday unsealed the *qui tam* action.  [DE-51-8.]  Two days later, on March 27, 2008, a six-count federal indictment was returned against Defendant Wilcox in the Northern District of Illinois charging him with misuse of

---

[17]  Plaintiff clarified at the July 1, 2008 hearing that he is naming the individual defendants, not Corporate Defendants, in this count.

[18]  Because the slander claim, on its face, does not allege a cause of action for defamation, on June 27, 2008, the Court ordered Plaintiff to file an affidavit setting forth facts to support this claim. [DE-50.]  In response, Plaintiff filed an affidavit stating that, on February 23, 2006, Jodi Dufrane, the student Plaintiff failed for cheating, told him that Defendant Wilcox told her that Plaintiff was a "no good instructor," that "people like that Mexican should not be teaching at Kaplan," and that her grade would be changed to an "A."  (*See* Pl.'s June 30, 2008 Aff. ¶ 4.)  On February 28, 2006, Ms. Dufrane again told Plaintiff that she had spoken to Defendant Wilcox, who said Plaintiff was "basically an 'idiot and stupid and did not know how to do [his] job'" and that Ms. Dufrane would be moved to another class where she would earn an A.  (*Id.*, ¶ 5.)  Plaintiff states that Ms. Dufrane claims that a third person whom she will not identify was also on the phone call with Defendant Wilcox. (*Id.*)  The affidavit does not mention any defamatory actions by Defendants Rosen or Harpool or any other Kaplan employee.

[19]  Defendant Wilcox states that he "was contacted by Mr. Andrews' office to see where he should serve [Defendant Wilcox]." [DE-30, ¶ 3.] Defendant Wilcox states that he did not want to be "chased around by a process server," so waived formal service. [*Id.* ¶ 4.]

Defendant KU's computer server and making threats against users via email. (Wilcox Indictment [DE-51-5].)[20]

On April 8, 2008, Defendant Wilcox moved to remand the instant case on the grounds that he did not consent to removal. [DE-6]. On April 14, 2008, Plaintiff also moved to remand on the basis of lack of unanimity. [DE-11]. Corporate Defendants opposed the motions to remand on the grounds that Defendant Wilcox was fraudulently joined to prevent removal and, in support of this contention, filed information regarding Plaintiff's relationship with Defendant Wilcox, as evidenced by emails exchanged during the EEOC's investigation[21] and by their co-plaintiff relationship in the *qui tam* action, which was filed by Plaintiff's counsel in this case.

The Court originally set a hearing on the motions to remand for May 23, 2008. [DE-26]. On May 20, 2008, Defendant Wilcox filed a Motion to Continue the hearing stating he had difficulty finding an affordable plane ticket from Oklahoma City, Oklahoma to Miami, Florida. [DE-29]. On May 21, 2008, the Court denied that motion but allowed Defendant Wilcox to appear at the hearing via videoconference. [DE-33]. Later that same day, Plaintiff filed a motion nearly identical to Defendant Wilcox's requesting to continue the hearing. [DE-37].[22] To accommodate the parties' schedules, the Court reset the hearing to July 1, 2008.

---

[20] While the docket from the Northern District of Illinois suggests that Defendant Wilcox entered a plea of guilty [DE-51-6 ("Illinois Criminal Docket"), DE-5]. At the July 1, 2008 hearing, Defendant Wilcox and Attorney Andrews maintained that Defendant Wilcox entered a "not guilty" plea.

[21] In their Response to the Motions to Remand, Corporate Defendants provided several e-mail exchanges between Plaintiff and Defendant Wilcox that Corporate Defendants obtained pursuant to the Freedom of Information Act ("the email exchanges"). [DE-14, p. 8.]

[22] The similarities between the two motions – from the extra space in the caption between "The Hearing" and "Presently Set for May 23, 2008," to the misspelling of Corporate Defendants' counsel's name ("Anna Olman" instead of "Ana Olman," as it appears in the docket) – suggest that they were prepared by the same person or using one as a template for the other.

**Plaintiff's Relationship with Defendant Wilcox and Plaintiff's Goals in this Lawsuit**

As set forth below, Plaintiff and Defendant Wilcox do not have a traditional adversarial relationship. Defendant Wilcox states that he "became very depressed" when he returned to Texas in 2006 and began to reflect on his actions toward Plaintiff. (Wilcox's June 10, 2008 Aff. ¶ 8.) At the July 1, 2008 hearing, Defendant Wilcox stated that he is a recovering alcoholic and does not clearly recall some of the months relevant to this action. Defendant Wilcox also stated that he is currently destitute. Defendant Wilcox states that, at some point around June 2006, he had a profound moral conversion and, sometime between June 13, 2006 (when Plaintiff filed his EEOC charge) and July 31, 2006,[23] Defendant Wilcox contacted Plaintiff to apologize for the way he treated him. (*Id.* ¶ 9.) Around the time of Defendant Wilcox's apology, Plaintiff and Defendant Wilcox communicated through email about Plaintiff's EEOC complaint and how Defendant Wilcox could assist Plaintiff. For example, on August 18, 2006, two weeks after Plaintiff was fired, Defendant Wilcox wrote, "Sorry about your job . . . [s]ue the hell out of them and I will help you! . . . Just be sure and [h]ave whoever deposes me ask me the questions I sent you last week! Very important as these are the slow pitch questions that will open the door for me to tell all." [DE-14-3.] In a reply to Plaintiff's email of August 25, 2006, Defendant Wilcox wrote, "Lay low with KU right now and let's gear up for a massive offensive after Oct. 1. . . . [W]hen I get a subpoena and can turn over the documents I have . . . they are going down for all the [c]riminal actitivity [*sic*] they are covering up." [*Id.*] Later that day, Defendant Wilcox wrote, ". . . don't ever let on that you know [another Kaplan employee] is no longer with KU . . . . Im [*sic*] afraid it might tip off a link between me and you and I don't want to ever compromise that." [*Id.*]

---

[23] The earliest of the email exchanges before the Court is dated July 31, 2006 and the latest exchange is dated September 6, 2006. [DE-14-3.]

From Plaintiff's perspective, Defendant Wilcox was an important witness in the EEOC investigation; on December 15, 2006, Plaintiff wrote to the EEOC Investigator concerning Corporate Defendants' "lack of cooperation" and noting that "[Defendant] Wilcox is the key to the truth." (Dec. 15, 2006 Letter from Plaintiff to EEOC Investigator Wells [DE-54. p. 17].) Plaintiff maintains that the Corporate Defendants were trying to "hide" Defendant Wilcox. Defendant Wilcox stated at the July 1, 2008 hearing that he reached Investigator Wells and asked her to contact him by email. Defendant Wilcox and Plaintiff maintain that the apology and their reconciliation took place before either of them met Attorney Andrews. (*See also* Pl.'s June 19, 2008 Aff. ¶ 3; Wilcox's June 10, 2008 Aff. ¶ 19.)

At the July 1, 2008 hearing, Plaintiff repeatedly expressed appreciation for Defendant Wilcox's apology and a desire not to hurt Defendant Wilcox. Plaintiff also acknowledged that Defendant Wilcox is in debt, has a federal indictment pending against him,[24] and is homeless, living with his brother in Texas, a girlfriend in Illinois, or out of his car.[25] Although Defendant Wilcox admits all of the allegations against him, neither Plaintiff nor Defendant Wilcox would agree to the entry of a judgment against Defendant Wilcox. Defendant Wilcox maintains that he wants to defend his good name and beat the charges, while Plaintiff states that he "dreams of the day when all of the defendants named in [his] suit are seated together at the defense table," implying that he wants Defendant Wilcox to be part of that group. At the July 1, 2008 hearing, Defendant Wilcox stated that he moved to remand the case because he wants to file cross-claims against Corporate Defendants, including claims of sexual assault of his girlfriend, conspiracy, and other claims related to prostitution and "other vices available in Miami" in which he states he and other Corporate Defendant employees were involved.

---

[24] At the July 1, 2008 hearing, Defendant Wilcox stated that he owes nearly $15,000 to the private attorney he retained to represent him in the criminal case

[25] Defendant Wilcox did not explain his connection to the Oklahoma address listed in his pleadings. *E.g.,* DE-29.

## II.   LEGAL STANDARD

There are two statutory grounds for remanding a removed case: (1) lack of subject matter jurisdiction; or (2) procedural defect in removal of the case. 28 U.S.C. §1447(c). Plaintiff and Defendant Wilcox argue that the lack of unanimity among defendants to remove this case is a procedural defect and grounds for remand to the state court. [*See* DE-6 and 11.] The rule of unanimity in removal requires that in cases involving multiple defendants, all defendants who have been served must join or assent in the removal petition. *Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1287 (11th Cir. 1998). However, the consent of fraudulently joined or nominal parties is not required; their lack of consent does not defeat removal. *Id.; see also, Henderson v. Washington Nat'l Ins. Co.,* 454 F.3d 1278, 1281 (11th Cir. 2006).[26]

Determinations of joinder must be based on plaintiff's pleadings, supplemented by any affidavits and deposition transcripts submitted by the parties, *at the time of removal*.[27] *See Legg v. Wyeth,* 428 F.3d 1317, 1322 (11th Cir. 2005) (reversing fees awarded for improvident removal and noting that the district court erred in failing to consider undisputed affidavits defendants attached as exhibits to their notice of removal in deciding a motion to remand). Though disputed issues of fact are resolved in favor of the nonremoving party, there must exist some question of fact before a matter can be resolved in favor of the plaintiff. *Id.* at 1323. For there to be a question of fact to be resolved, the plaintiff must dispute the removing party's allegations and submit evidence of contradictory facts; the plaintiff cannot rely solely on unsupported allegations in the plaintiff's complaint. *Id.*

---

[26] The fraudulent joinder doctrine "tries to strike a reasonable balance among not rewarding abusive pleading by the plaintiff, the plaintiff's tactical prerogative to select the forum, and the defendant's statutory right to remove." 14B Wright & Miller, *Federal Practice and Procedure* § 3723.

[27] In their Motions to Strike [DE-45 and DE-52], Corporate Defendants seek to strike Plaintiff's Reply to the Motions for Remand as untimely and many of Plaintiff's exhibits for containing inadmissible evidence. To ensure that it was fully informed as to the facts in this and other legal proceedings involving the parties in this action, the Court has considered all filings that contain admissible evidence, matters undisputed by the parties, and statements made at the July 1, 2008 hearing. Therefore, the Motions to Strike are denied as moot.

To establish fraudulent joinder in cases of federal question jurisdiction,[28] the removing party must prove one of two options: (1) there is no possibility the plaintiff can establish a cause of action against the non-consenting defendant; *or* that (2) plaintiff colluded with the non-consenting defendant to defeat removal. *See e.g., Hauck v. Borg Warner, Corp.,* 2006 WL 2927559, *5 (M.D. Fla. 2006) (discussing application of fraudulent joinder doctrine to federal question cases and granting the motion to remand where consenting defendants did not present evidence of collusion); *In re Pharm. Indus. Average Wholesale Price Litig.,* 431 F.Supp.2d 109, 118 (D.Mass. 2006); *Simpson v. Union Pacific R. Co.,* 282 F.Supp.2d 1151, 1156 (N.D. Cal. 2003) (discussing the application of fraudulent joinder principles to removal based on federal question). To establish the first option, removing defendants must prove by "clear and convincing evidence" that there is *no possibility* that plaintiff can establish a cause of action against the non-consenting defendant.[29] *Henderson,* 454 F.3d at 1283. In this context, "fraudulent joinder" is a legal term of art that focuses on the viability of the cause of action

---

[28] Because orders granting remand are not appealable, the body of caselaw addressing the fraudulent joinder issue is limited. Furthermore, cases addressing the issue of fraudulent joinder usually do so in the context of diversity jurisdiction. Though it appears the Eleventh Circuit has not conclusively ruled on the issue, courts have held that the rationale for the doctrine of fraudulent joinder applies with equal force in the context of removal based on federal question jurisdiction. *See e.g., Hauck v. Borg Warner, Corp.,* 2006 WL 2927559, *5 (M.D. Fla. 2006); *In re Pharm. Indus. Average Wholesale Price Litig.,* 431 F.Supp.2d 109, 118 (D.Mass. 2006); *see also, Hernandez v. Seminole County,* 334 F.3d 1233 (11th Cir. 2003) (describing, but finding unreviewable, district court's decision to remand federal question case to state court based on conclusion that non-consenting defendant was not a "nominal" party).

[29] In determining whether a plaintiff can establish a cause of action, the court need not reach the merits of the plaintiff's claim; the court need only determine whether the plaintiff has an "arguable" claim under state law. *Crowe v. Coleman,* 113 F.3d 1536, 1538 (11th Cir. 1997) (reversing a denial of a motion to remand where the verified complaint and accompanying affidavits set forth an arguable cause of action) (citation omitted). "If there is even a possibility that a state court would find that the complaint states a cause of action against [the non-consenting defendant], the federal court must find that joinder was proper and remand the case to state court." *Id.* (citation omitted). After the district court "[draws] all reasonable inferences from the record in plaintiff's favor and then [resolves] all contested issues of fact in favor of the plaintiff, there need only be 'a reasonable basis for predicting that the state law *might* impose liability on the facts involved.'" *Id.* at 1542 (citation omitted).

against the defendant in question, not on the integrity of the parties in bringing the action. *See e.g., Parks v. N.Y. Times Co.,* 308 F.2d 474, 478 (5th Cir. 1962).[30]

The second option under the fraudulent joinder test, collusion, arises in federal question cases when removing defendants allege that the non-consenting defendant, in collusion with the plaintiff, agreed to refuse to consent to removal and thus affected the choice of forum. *Hauck,* 2006 WL 2927559 at *6 (citation omitted). To prevail on an allegation of collusion, removing defendants must provide "clear and convincing" evidence of collusion to counter the non-consenting defendant's reasons for wanting to remain in state court. *Id.* Removing defendants can meet this burden by showing plaintiff has no real good faith intention to prosecute the non-consenting defendant or seek a joint judgment. *In re Pharm.,* 431 F.Supp.2d at 118 (citation omitted).

Where "common sense" leads the court to "strongly doubt" that plaintiff has a real intention in good faith to seek a judgment against the non-consenting defendants, joinder of those non-consenting defendants is fraudulent. *In Re Diet Drugs,* 220 F.Supp.2d 414, 422 (E.D. Pa. 2002). In determining whether joinder is fraudulent, courts can consider "significant circumstantial evidence," such as the failure of corporate defendants to consent to removal in jurisdictions known for their high verdicts against corporate defendants and despite a favorable ruling from the MDL panel. *Id.;*[31] *see also Hornbuckle v. State Farm Lloyds,* 385 F.3d 538, 542 (5th Cir. 2004) (reversing award of attorney's fees for improper removal on grounds that removing defendants had reasonable grounds to

---

[30] The Eleventh Circuit has adopted as binding precedent all prior decisions of the former Fifth Circuit issued prior to the close of business on September 30, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981).

[31] The court in *In Re Diet Drugs* did not ultimately have to rely solely on circumstantial evidence. There, the removing defendant produced an affidavit from class counsel stating that counsel for non-consenting phentermine defendants (the "phen" of "fen-phen" diet drug litigation) told him of an "agreement or understanding" with plaintiffs under which the phentermine defendants would refuse to consent to removal in exchange for later being dismissed from suit. 220 F.Supp.2d at 421. The court noted the lack of evidence of detrimental effects of phentermine, the universal lack of prosecution of phentermine defendants, and held that the joinder of non-consenting phentermine defendants was fraudulent. *Id.*

believe removal was proper where plaintiff "gave no meaningful answers" to specifically state what the non-consenting defendant did to warrant being personally sued and the record contained no summary judgment type evidence to support a finding that the non-consenting defendant violated a duty to plaintiff).

### III.  DISCUSSION

The undisputed evidence before the Court shows that Plaintiff has joined Defendant Wilcox to ensure that his case remain in state court and not to obtain a judgment against him.  Because the evidence satisfies the second option under the fraudulent joinder test, the Court need not determine whether Plaintiff can establish a slander cause of action against Defendant Wilcox.  The evidence that shows, even when viewed in the light most favorable to Plaintiff, that Plaintiff does not intend to seek a judgment against Defendant Wilcox is as follows:

**Email Exchanges Evidence Collusion Between Plaintiff and Defendant Wilcox**

First, the unrebutted email exchanges between Plaintiff and Defendant Wilcox demonstrate the two are acting in concert.  In August 2006, as Plaintiff pursued his EEOC Complaint, Defendant Wilcox told him, "[s]ue the hell out of them and I will help you!" and suggested they "[l]ay low" to later "gear up for a massive offensive [against Defendant KU.]"  Such emails conclusively prove the parties not only do not have a traditional adversarial relationship but also that their interests are aligned to oppose Corporate Defendants to whatever extent they are able.  These emails, along with Defendant Wilcox's statement at the July 1, 2008 hearing that he seeks to remand the case to State Court so that he can file cross-claims against the Corporate Defendants for alleged participation in unsavory activities and assault of his girlfriend confirm that Plaintiff and Defendant Wilcox are committed in a joint effort to prevail over the Corporate Defendants.

**Plaintiff and Defendant Wilcox Jointly Filed the *Qui Tam* Action Before Plaintiff Filed the Instant Suit and are Represented by the Same Attorney Representing Plaintiff**

Second, there is the fact that Plaintiff and Defendant Wilcox are co-plaintiffs in the *qui tam* action against Corporate Defendants in the instant action. That *qui tam* action, filed April 18, 2007, involves factual allegations similar to the instant case - namely grade inflation and pressure to admit unqualified students. Furthermore, Attorney Andrews represents both Plaintiff and Defendant Wilcox in the *qui tam* action. Plaintiff and Defendant Wilcox maintain that Attorney Andrews only represents Plaintiff in this action while Defendant Wilcox is proceeding *pro se.* Even putting aside the similarities in their pleadings, the similarities of their interests provide further evidence that Plaintiff does not have a good faith intent to seek a judgment against Defendant Wilcox.

**Lack of Legitimate Reason or Desire to Maintain Suit Against Defendant Wilcox**

Third, there is the common sense issue of what Plaintiff gains by maintaining a lawsuit against Defendant Wilcox. At the July 1, 2008 hearing, Plaintiff stated that he appreciates Defendant Wilcox's apology and "wants to forgive" Defendant Wilcox, yet he also wants a court judgment to vindicate the discrimination he allegedly endured (and to see Defendants seated together at the defense table). However, Plaintiff recognizes that, due to Defendant Wilcox's indigent status, any judgment obtained would be in name only.

Given the fact that Defendant Wilcox's affidavit admits that he wronged Plaintiff, at the July 1, 2008 hearing, this Court asked Plaintiff and Defendant Wilcox what controversy existed between them that required litigation rather than an entry of an agreed judgment. Plaintiff could not articulate a legally legitimate reason to continue litigating against Defendant Wilcox on the one slander claim. Defendant Wilcox's only reply was that he wanted to "defend his good name," "beat the charges," and to file cross-claims against the Corporate Defendants. Before the Court can consider a claim, there must be an existing controversy that requires litigation.

15

**In Fifteen Months, Defendant Wilcox is the Only Individual Defendant Served**

Fourth, there is the fact that after initiating this case on May 21, 2007, the only individual defendant Plaintiff has served is Defendant Wilcox. On February 29, 2008, less than one week after Plaintiff filed the Amended Complaint, Defendant Wilcox agreed to accept service via fax from Plaintiff's counsel. The record reflects that the interests of Plaintiff and Defendant Wilcox had been aligned for several months prior to Defendant Wilcox's accepting service. Despite the fact Plaintiff filed his Original Complaint over fifteen months ago and moved to perfect service multiple times, no other individual defendants have been served. Thus, the fact that Plaintiff served only the one individual defendant with whom he is inextricably allied, coupled with the fact that this individual defendant immediately sought to block the Corporate Defendants' right to remove, constitutes further evidence that this individual defendant's joinder was for fraudulent purposes.

**Eleventh-Hour Addition of the Slander Claim**[32]

Lastly, Plaintiff never mentioned any acts of slander in his 2006 letter to Corporate Defendants, his EEOC Complaint, or the instant action until February 2008, when he amended his Complaint and added the slander count against three individual defendants. Of the three, Plaintiff only served Defendant Wilcox, an Oklahoma resident, rather than the defendants who live within the state court venue. Furthermore, that unverified Amended Complaint, on its face, does not state a cause of action of slander against any of the individual defendants. The allegation, "using racially discriminatory and vulgar remarks," while a conclusory description of inappropriate statements in a work environment, does not constitute slander. (Am. Compl. ¶ 91.) Only when the Court ordered Plaintiff to submit an affidavit prior to the rescheduled hearing on the motions to remand did Plaintiff provide detail as to

---

[32] Because the Corporate Defendants have satisfied the second option of the fraudulent joinder test through evidence of collusion between Plaintiff and Defendant Wilcox, the Court need not determine whether Plaintiff can establish this cause of action against Defendant Wilcox. However, there are procedural aspects of this case that further underscore the lack of good faith intention to seek a judgment against Defendant Wilcox.

16

the incidents involving defamatory remarks, which allegedly took place one year and 364 days[33] prior to the filing of his Amended Complaint and which now involves only Defendant Wilcox, Plaintiff's co-plaintiff in the *qui tam* action, not the other named individual defendants. Based on common sense, this claim has all the appearances of an "add-on" in light of the thrust of other claims against the Corporate Defendants.[34]

Based on the foregoing clear and convincing evidence of collusion between Plaintiff and Defendant Wilcox, the Court finds that joinder of Defendant Wilcox was fraudulent. Thus, Defendant Wilcox's lack of consent does not defeat removal by Corporate Defendants. Having found fraudulent joinder based on collusion, the Court need not reach the merits of the slander claim, which is not related to the rest of Plaintiff's claims. However, in the interest of judicial efficiency, the Court will exercise its discretion under Federal Rule of Civil Procedure 21 to sever the one claim against Defendant Wilcox (Count VI: Slander) and remand it to the State Court.[35] Accordingly, it is hereby

---

[33] Florida law imposes a two-year statute of limitations for actions of libel or slander. Fla. Stat. § 95.11(4)(g). Plaintiff states that he learned of his slander cause of action on February 23, 2006, during his conversation with Ms. Dufrene. Plaintiff's Amended Complaint, which added this cause of action, was filed one day before the statute of limitations expired.

[34] Additionally, the trial strategy of keeping Defendant Wilcox in the case is questionable. While different attorneys can have different trial strategies, common sense raises questions as to what benefit Plaintiff would gain by having Defendant Wilcox as a defendant at trial. Corporate Defendants would elicit testimony from Defendant Wilcox regarding his close relationship with Plaintiff and Plaintiff's counsel that would suggest to the jury that Plaintiff is attempting to manipulate the legal process and undermine Plaintiff's credibility.

[35] Fed. R. Civ. P. 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party," including parties joined for the purpose of preventing removal to federal court. *See e.g., Turpeau v. Fidelity Financial Servs., Inc.,* 936 F.Supp. 975, 978-80 (N.D.Ga. 1996), *aff'd* 112 F.3d 1173 (11th Cir. 1997) (noting that "misjoinder will have the same effect as fraudulent joinder" and severing claims based on misjoinder where claims involved credit transactions between different plaintiffs and different defendants) (citation omitted); *Covington v. Indemnity Ins. Co.,* 251 F.2d 930, 933-34 (5th Cir. 1958) (upholding the district court's decision to drop a nondiverse defendant and deny a motion to remand where the fact plaintiff's amended complaint added a new defendant and claim "inescapably show[ed]" that the attempted joinder of the new defendant was for the purpose of defeating jurisdiction of the federal court); *see also Gonzalez v. J.C. Penney Corp., Inc.,* 2005 WL 5304795, *3 (S.D. Fla. 2005) (refusing to sever under Rule 21 where there was no showing of fraudulent joinder).

As discussed above, Plaintiff added his slander claim against Defendant Wilcox for the purpose of defeating federal jurisdiction. The slander claim against Defendant Wilcox is separate from the claims

ORDERED THAT:

(1) Defendant Ben Wilcox's Motion to Remand to State Court [DE-6] and Plaintiff's Motion to Remand to State Court [DE-11] are DENIED.  This action (except for Count VI) will proceed in this Court;

(2) Corporate Defendants' Motions to Strike [DE-45 and DE-52] are DENIED; and

(3) Count VI (Slander) is SEVERED pursuant to Fed. R. Civ. P. 21 and REMANDED to the State Court.

DONE AND ORDERED in Miami, Florida, this 31st day of July, 2008.

_____
PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: All counsel of record/*pro se* parties
(John W. Andrews *via mail* (Clerk of Court) *and fax* (Chambers))

---

against Corporate Defendants and is not one for which Plaintiff seeks a joint judgment against the Defendants.  If Plaintiff is genuine in his expressed desire not to harm Defendant Wilcox, it is anticipated he will not pursue the slander claim.  However, if he chooses to do so, he may proceed in State Court, which is his and Defendant Wilcox's expressly preferred forum.