UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-60368-CIV-SEITZ/McALILEY

CARLOS URQUILLA DIAZ,

      Plaintiff,

v.

KAPLAN UNIVERSITY a/k/a IOWA
COLLEGE ACQUISITION CORP.,
KAPLAN HIGHER EDUCATION
CORP., and ANDREW S. ROSEN,
      Defendants.
_____/

## SECOND AMENDED COMPLAINT

CARLOS URQUILLA DIAZ, by his attorneys sues the Defendants and for his Second Amended Complaint alleges:

### PARTIES

1. Plaintiff CARLOS URQUILLA DIAZ (herein "URQUILLA DIAZ") is an individual presently residing in Knoxville, Tennessee. Plaintiff is a native of El Salvador, and of Hispanic descent and origin.

2. Defendant KAPLAN UNIVERSITY (herein "KAPLAN") is a registered trade name of the Iowa College Acquisition Corp which is a Delaware corporation licensed and authorized to do business in Florida. KAPLAN is an "employer" within the meaning of both the Civil Rights Act of 1991 and the Florida Civil Rights Act of 1992.

3. Defendant KAPLAN HIGHER EDUCATION CORP.("KHE") is a Delaware corporation licensed and authorized to do business in Florida. KHE is an "employer" within the meaning of both the Civil Rights Act of 1991 and the Florida Civil Rights Act of 1992.

4. Defendant ANDREW S. ROSEN ("ROSEN") is an individual who committed torts in Florida and serves as President of KAPLAN.

**JURISDICTION AND VENUE**

5. Jurisdiction is based upon the provisions of Title 28 United States Code, 6.§1331 and §1343 in that the cause arises under the provisions of the Civil Rights Act of 1866, 42 U.S.C. §1981, and the Civil Rights Act of 1991, 42 U.S.C. §2000e *et seq*.

6. Venue is appropriate in the Southern District of Florida in material events occurred in the Southern District of Florida.

**CONDITIONS PRECEDENT**

7. Plaintiff filed a timely Charge of Discrimination (Ex "A") with the United States Equal Employment Opportunity Commission. Plaintiff originally filed this action within 90 days of receipt of a Right to Sue (Ex "B") from the EEOC.

**GENERAL ALLEGATIONS**

8. URQUILLA DIAZ, a law school graduate and reserve infantry officer in the United States Army was originally hired by KAPLAN, in April 2005 in Chicago, IL as a Director of a new project called, "School Within a School" program.

9. KAPLAN is an accrediated university which operates distance and online academic learning programs throughout the United States.

10. KHE operates "brick and morter" institutions throughout the United States. Its web site describes itself as follows:

> *Kaplan Higher Education is a group of institutions that offer career-oriented certificate and degree programs designed to provide students with the skills necessary to qualify them for employment in the fields of criminal justice, health care, business, education, financial planning, information technology, legal studies, fashion, design, and several others.*

11. Shortly after his hire by KAPLAN URQUILLA DIAZ transferred to the Paralegal Studies Department.

12. As a result of his transfer and his promotion to the academic rank of professor in September, 2005, URQUILLA DIAZ was supervised by the programs dean, Ben Wilcox.

13. Shortly after Wilcox assumed became URQUILLA DIAZ's boss Wilcox received orders from ROSEN to fire "the Mexican."

14. Plaintiff came to the United States as a refuge from the war in El Salvador, served as an officer for many years in the U.S. Army, and is not of Mexican heritage.

15. ROSEN apparently believed that all Hispanics were Mexican, and WILCOX readily participated in ROSEN's scheme to create false assessments and false accusations regarding Plaintiff's performance. So wrapped up in ROSEN's racist scheme WILCOX would even leave racist voicemail on Plaintiff's phone.

16. ROSEN and Wilcox and others schemed to terminate URQUILLA DIAZ on account of his race while pretending Plaintiff performance was substandard by engaging in the following tactics, among others:

    (a) Plaintiff was given a much heavier academic workload than any other full time professor in a similar position.

    (b) ROSEN and Wilcox designed a way to make Plaintiff's teaching scores appear to be below average.

    (c) ROSEN and Wilcox gave Plaintiff small classes and difficult topics in the hopes that students would complain against URQUILLA DIAZ and thus give him a low faculty approval rating on the end of class surveys.

    (d) Wilcox acting on ROSEN's directions purposely and actively conducted searched for students who might have any complaints about URQUILLA DIAZ.

    (e) KAPLAN's management used "student complaint escalations" as a ruse to accuse URQUILLA DIAZ of not meeting his job standards, knowing that was false.

17. On December 9, 2005 Plaintiff was notified that KAPLAN considered his performance unacceptable.

18. On December 23, 2005, Plaintiff was terminated as a full-time employee but given the option of working part-time.

19. Plaintiff requested a due process hearing and on January 3, 2006, was reinstated.

20. Despite his reinstatement Plaintiff was excluded from faculty events and otherwise discriminated against on the basis of his race and national origin.

21. As a result URQUILLA DIAZ filed a complaint of racial discrimination with Human Resources on February 17, 2006. Afterwards Plaintiff got a voice mail from Wilcox:

> *"You filthy, fucking stupid Mexican. You are not going to cause me trouble. You think this is over...it ain't over. I am going to fire your ass! You think for one damn second I'm gonna let you cause trouble for this company. Corporate is never going to let you get away with this! Gonna fire your ass! You call me when you get into the office."*

22. On March 3, 2006 URQUILLA DIAZ wrote directly to ROSEN regarding race discrimination he was experiencing, and on March 7 he was interviewed by a corporate attorney.

23. On March 22, 2006 Plaintiff was removed from his position as professor and reassigned a "curriculum developer", a position for which he had no experience or training. As such he began to work jointly for KAPLAN and KHE.

24. On July 5, 2006 Plaintiff filed the attached Charge of Discrimination (Ex "A").

25. On July 31, 2006 Plaintiff was put on a "performance improvement plan" by Karen Evans, his new supervisor.

26. URQUILLA DIAZ wrote to Evans contending that the "improvement plan" was part of a continued pattern of harassment and race discrimination.

27. Plaintiff was fired on August 4, 2006 allegedly for "insubordination".

28. In fact Plaintiff was fired as a part of a well-orchestrated but overt plan to terminate him both because of his race and because of engaging in protected activity, such activity including the filing of a charge of discrimination, the making of oral and written complaints about discrimination.

## COUNT I-§1981and Title VII
## (DISCRIMINATION)

29. Plaintiff re-alleges paragraphs 1-28..

30. The Defendants KAPLAN, ROSEN and KHE discriminated against Plaintiff on account of his race-Hispanic- in violation of 42 U.S.C. §1981 and Title VII by treating him differently than non-Hispanics, calling him racial epithets, interfering with his job duties, terminating him because of his race, and deprivation or attempted deprivation of his rights under such provisions.

31. As a direct and proximate result of Defendants' actions, and the Defendants' discriminatory animus, Plaintiff has suffered and will continue to suffer severe emotional distress and severe economic damage.

   WHEREFORE, Plaintiff requests the following relief:

- Entry of judgment for compensatory and punitive damages against the Defendants;

- An award of back pay;

- An award of front pay if reinstatement is not feasible;

6

- Any equitable or injunctive relief, including reinstatement, deemed appropriate by the Court; and
- An award of costs, interest and attorneys' fees.

### COUNT I-§1981and Title VII
### (RETALIATION)

32. Plaintiff re-alleges paragraphs 1-28.

33. The Defendants KAPLAN, ROSEN and KHE retaliated against Plaintiff for engaging in protected activity namely objection to the Defendant's racist treatment of him. on account of his race-Hispanic- in violation of 42 U.S.C. §1981 and Title VII.

34. As a direct and proximate result of Defendants' actions, and the Defendants' discriminatory animus, Plaintiff has suffered and will continue to suffer severe emotional distress and severe economic damage.

WHEREFORE, Plaintiff requests the following relief:

- Entry of judgment for compensatory and punitive damages against the Defendants;
- An award of back pay;
- An award of front pay if reinstatement is not feasible;
- Any equitable or injunctive relief, including reinstatement, deemed appropriate by the Court; and
- An award of costs, interest and attorneys' fees.

### DEMAND FOR TRIAL BY JURY

Jury trial is demanded for all issue triable as a matter of right.

7

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via CM/ECF Administrative Procedures to the parties named on the attached Service List this 5th day of September, 2008.

                                                                    CORNELL & ASSOCIATES, P.A.
                                                                        Co-counsel for the Plaintiff
1792 Bell Tower Lane
Weston, FL 33326
Telephone:  (954)524-2703
Facsimile:  (954) 524-2706

BY:   */s/*   *G. WARE CORNELL, JR.*
G. WARE CORNELL, JR.
Florida Bar No. 203920
warecornell@gmail.com

**SERVICE LIST**

**John W. Andrews, Esq.**
Email: jwa@1x.netcom.com
Lead Counsel for Plaintiff
Andrews Law Group
3220 Henderson Boulevard
Tampa, FL 33609
813-877-1867
Fax: 813-872-8298

**Ana Laura Olman**, **Esq.**
Email: ana.olman@akerman.com
**Jennifer T. Williams, Esq.**
Email: Jennifer.taylor@akerman.com
**Susan Nadler Eisenberg, Esq.**
Email: susan.eisenberg#akerman.com
Counsel for Kaplan/Iowa College
Akerman Senterfitt
Suntrust International Center
1 SE 3rd Avenue
25th Floor
Miami, FL 33131-1714
305-374-5600
Fax: 305-374-5095