```
                UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF FLORIDA
                    MIAMI DIVISION
             Case No. 08-60368-CV-SEITZ
                      09-20756-CV-SEITZ
```

CARLOS URQUILLA-DIAZ                 MIAMI, FLORIDA

                                     April 23, 2009
        Versus                       VOLUME I

KAPLAN UNIVERSITY, ET AL.            PAGE 1 TO 53


                   HEARING ON CONSOLIDATION
            BEFORE THE HON. PATRICIA A. SEITZ, J.
                 UNITED STATES DISTRICT JUDGE


APPEARANCES:



FOR CO-RELATORS DIAZ AND WILCOX:

                        G. WARE CORNELL, JR.
                        Cornell & Associates
                        2645 Executive Park Drive
                        Weston, FL  33331

FOR GILLESPIE:

                        KIMBERLY L. BOLDT, ESQ.
                        BETH TYLER VOGELSANG, ESQ.
                        Alters, Boldt, Brown, Rash & Culmo, P.A.
                        4141 Northeast 2nd Avenue - Suite 201
                        Miami, FL  33137



REPORTED BY:            DAVID S. EHRLICH, RPR
                        Official Court Reporter
                        Wilkie D. Ferguson, Jr.
                        U. S. Courthouse
                        400 N. Miami, Room 11-4
                        Miami, Florida 33128-1810
                        (305) 523-5537

```
APPEARANCES:   (Continued)


FOR THE GOVERNMENT:

                         CARLOS J. RAURELL, ESQ.
                         United States Attorney's Office
                         99 NE 4th Street
                         Miami, FL  33132


FOR KAPLAN:

                         SUSAN N. EISENBERG, ESQ.
                         Akerman & Senterfit
                         SunTrust International Center
                         One SE 3rd Avenue - 25th Floor
                         Miami, FL  33131-1714

                         TIMOTHY J. HATCH, ESQ.
                         Gibson, Dunn & Crutcher
                         333 S. Grand Avenue - Suite 4600
                         Los Angeles, CA  90071-3197

                         JANICE BLOCK, ESQ.
                         (General Counsel for Kaplan)
```

```
 1              (Court convened at 10:02 a.m.)

 2         MS. WEBB:  Case number 08-60368 Civil, and 09-20756 Civil,

 3  Carlos Diaz versus Kaplan University.

 4         Counsel, please state your appearances.

 5         MR. CORNELL:  Ware Cornell on behalf of Carlos Diaz in the

 6  earlier case, and I filed a notice of appearance yesterday on behalf

 7  of Carlos Urquilla-Diaz and Ben Wilcox in the Qui tam case.

 8         THE COURT:  Mr. Cornell, good to see you.

 9         You are functioning as local counsel or cocounsel?

10         MR. CORNELL:  Your Honor, it is my understanding that

11  Mr. Andrews' son Troy is here, both he and Troy are taking the

12  examination on Friday, and I expect them to be admitted within the

13  next couple of weeks.  So I will probably just be local counsel.

14         THE COURT:  Well, you know, Mr. Cornell, since you have had

15  a long history with the Court, that this Court does not see local

16  counsel as merely a mail drop.

17         MR. CORNELL:  I understand.

18         THE COURT:  And Mr. Andrews, Sr., has had difficulties

19  complying with our local rules.  So I am going to hold you

20  responsible for him in the future.  And if he does not, I will look

21  to you and you will bear the brunt of that.

22         MR. CORNELL:  Yes, Your Honor.

23         Your Honor, I specifically did not adopt what had been

24  previously filed because it would be out of time, and plus I had not

25  had the opportunity to confer with counsel.  But I would seek leave
```

1 to resubmit Mr. Andrews' objection once I have had an opportunity to

2 confer with counsel on it.

3          THE COURT:  I'm just looking to you, Mr. Cornell.  I am

4 relying on you, and I know you won't disappoint me.

5          MR. CORNELL:  I won't let you down, Judge.

6          THE COURT:  Thank you.  Okay.

7          And on behalf of the defendants?

8          MS. BOLDT:  Your Honor, before we leave the plaintiffs.

9          THE COURT:  The plaintiffs?

10          MS. BOLDT:  I'm sorry.  The relators.  In the Qui tam case,

11 Your Honor, Kimberly Boldt and Beth Vogelsang here for Judge

12 Gillespie.  You may recall there are three relators in the Qui tam

13 action, and we represent Mr. Gillespie.

14          THE COURT:  And you are Miss Boldt.

15          And Miss Vogelsang.  Long time no see, Miss Vogelsang.

16          And you have filed your notice, Mr. Cornell, on behalf of

17 Mr. Andrews' clients, Messrs. Andrews' clients.

18          MR. CORNELL:  Yes.  And not Mr. Gillespie.  We do not

19 represent Mr. Gillespie.

20          THE COURT:  Right.  Miss Vogelsang and Miss Boldt

21 represents Mr. Gillespie.

22          Is there a third relator in the Qui tam case?

23          MR. CORNELL:  Wilcox.

24          THE COURT:  Is anyone representing Mr. Wilcox?

25          MR. CORNELL:  I entered the notice of appearance on behalf

1  of Diaz and Wilcox yesterday.

2          THE COURT:  Okay.  Thank you.  Sort of like who's on first.

3          MR. CORNELL:  Right.

4          THE COURT:  Anyone else?

5          MR. RAURELL:  Your Honor, this is Carlos Raurell on behalf

6  of the United States government.  The United States made a decision

7  on intervention and decided against it.  However, we continue to

8  observe the case.

9          THE COURT:  Thank you very much, Mr. Raurell.

10         And for the defendants.

11         MS. EISENBERG:  Yes, Your Honor Susan Eisenberg with

12 Akerman, Senterfitt on behalf of the defendants in both Mr. Diaz's

13 individual discrimination claim and the Qui tam.  And then with me

14 is Mr. Tim Hatch, who has been admitted pro hac vice as my cocounsel

15 in the Qui tam.

16         THE COURT:  He is the gentleman standing next to you with

17 the tie.  Okay.

18         MS. EISENBERG:  Yes.

19         And all the way to my left is Janice Block who is general

20 counsel for Kaplan, the defendant.

21         THE COURT:  J A N --

22         MS. EISENBERG:  J-a-n-i-c-e.  Janice Block.

23         THE COURT:  Thank you very much.  Please have a seat.  I

24 sort of feel like this is Bar meeting with the number of lawyers.

25         The reason why we had this status conference is I need to

1  be brought up to date on the Qui tam action since you all have been

2  much more involved in it than I.

3        Mr. Ware and Messrs. Andrews have been very quiet in the

4  employment case.  In fact, it seemed I haven't heard anything.  And

5  so I presume that I was getting ready to hear any dispositive

6  motions and the case would be ready to go to trial in September.

7  What's happening?

8        MR. CORNELL:  As the Court knows, there was a motion filed

9  yesterday by Ms. Eisenberg's partner Miss Jennifer Taylor-Williams

10 to exceed by ten pages the dispositive motions limit that was

11 without objection.  So I would say we are finished.  All discovery

12 is done and we are ready to respond to the motion and try the case

13 in September.

14       THE COURT:  I wanted to talk to you all about that motion

15 for the additional pages to see whether or not it is really

16 necessary since under our local rules you can file a separate

17 statement of facts that are not in dispute.  And I'm always hard

18 pressed at how the issues in this case can take more than 20 pages

19 to address if you don't have to put your statement of material facts

20 in the memorandum, so if somebody could shed light, because my

21 initial reaction is the page limit is there to help encourage

22 lawyers to be -- and sometimes it means you have to redraft -- but

23 to be more succinct and focused understanding that by the time the

24 motion is fully ripe I have a minimum of 50 pages just in text that

25 does not take into consideration all of the cases that are cited,

1 all of the references to the record, and hopefully the parties are

2 being very fastidious about pinpointing and double-checking the

3 accuracy of the citations to the record.  We look at everything but

4 it really helps us if the lawyers will do pin cites and make sure we

5 have copies of it.

6          MS. EISENBERG:  Yes, Your Honor.  Susan Eisenberg.  I can

7 address that issue since I'm the one drafting the summary judgment.

8          We are at the point where it is obviously due in about a

9 week.  So we have a pretty good idea of where we are within the

10 pages.

11          The reason we feel it's necessary -- And our hope is not to

12 go to 30 pages and to keep it 25.  But in an abundance of caution

13 since we are not final yet.  And the reason, Your Honor, is that we

14 have two separate defendants here and the arguments are a little bit

15 different.

16          There are two claims.  Both address race discrimination,

17 but one is under Title VII of the 1964 Civil Rights Act, and that

18 only addresses the company.

19          The other claim is under Section 1981, which is also

20 addresses the race discrimination.  But they have named an

21 individual defendant, Andy Rosen, who was the President of Kaplan

22 University at the time, and we need to address the arguments with

23 regard to the second defendant, and I think that is why we are

24 struggling a little bit to get it within the 20 pages and we are

25 making every effort.

8

1          THE COURT:  So what you are telling me is that you are

2    actually saving me pages because you are filing one motion on behalf

3    of two defendants?

4          MS. EISENBERG:  We are filing one motion on behalf of two

5    defendants.

6          THE COURT:  It is all in how you present your case.

7    Instead of asking for an extension, you need to tell me that you are

8    actually saving me pages.  Okay.

9          MR. CORNELL:  I should say, Your Honor, they made that

10   argument to me when asking if they could have 30 pages.

11         MS. EISENBERG:  Obviously some of it is going to be

12   repetitive, and we certainly don't want to burden the Court with two

13   separate motions, and that is why we feel it is necessary.

14         THE COURT:  Okay.  Then I will grant the motion.  But I

15   appreciate that very much.

16          Let us go back to helping me understand the Qui tam case.

17   The government has decided not to intervene.  The defendant filed an

18   initial motion to dismiss and then there was a supplemental motion

19   to dismiss because apparently there are two other, possibly three

20   other Qui tam actions around the country?  Maybe Mr. Raurell can

21   tell me better as to that since he is a neutral.  But he is

22   ultimately the beneficiary on behalf of the people of the United

23   States.

24         MR. RAURELL:  Your Honor, indeed the United States --

25         THE COURT:  You don't have to stand, you can sit, or you

1  can come to the podium.  As long as you are near the microphone

2  because the acoustics are not good so my Court Reporter --

3         MR. RAURELL:  I wish to say as little as possible so I will

4  stay standing here nearest to my seat.

5         The government is aware that there are four similar and

6  related Qui tam actions around the country, three of which I think

7  service has been affected on the defendant Kaplan.  And there is

8  currently pending in one of the actions with the relators named

9  Torres a motion to transfer to the MDL panel, and there has not been

10 a ruling on that as of yet.  I think that --

11        THE COURT:  Would it need to go to the MDL panel if the

12 first one filed sort of takes precedence and everybody else goes

13 there?

14        MR. RAURELL:  The government has elected not to take a

15 position on whether or not the actions should be transferred.

16        And I have to be candid with the Court.  I don't know since

17 the case was just recently transferred and assigned to me, I don't

18 know personally the merits of the arguments concerning the

19 first-filed Qui tam complaint and whether indeed it does supersede

20 and overcome for lack of a better term the subsequent Qui tam

21 filings.

22        THE COURT:  Then maybe I should ask Miss Boldt and Miss

23 Vogelsang to educate me.

24        MS. BOLDT:  Your Honor, we are aware of a total of four

25 cases against Kaplan including ours.  There is what we call the

1  Florida case, this case; there is an Illinois case, a Pennsylvania

2  case, and now just recently a Nevada action was unsealed.

3          If you are looking at purely the date of filing, the Nevada

4  action was filed first.  But that is new information because of the

5  case just being unsealed.  So until the Nevada case was unsealed it

6  appeared as though the Pennsylvania case was the first-filed case.

7  That is the case in which Kaplan has not raised the defense of first

8  to file and it should be dismissed, etc. We now do not know whether

9  their position is going to change on that now that the Nevada action

10 has been unsealed.  It was the Illinois action in which the lawyers

11 filed the MDL motion and got us going down that track.

12         Just for purposes of giving the Court information, our

13 response to the MDL motion is due on Monday.  We haven't formulated

14 a final position yet, but we may be asking the MDL panel -- we may

15 be agreeing to consolidation in the MDL and asking the MDL panel to

16 send the case here.  We are still --

17         THE COURT:  The argument for sending it here?

18         MS. BOLDT:  The argument for sending it here would be the

19 location of Kaplan; for many of the reasons the case was transferred

20 from the Middle District to Your Honor.

21         So our position is -- again, we are still in the process of

22 formulating it, but that is sort of where we are thinking at the

23 moment.

24         But one of our positions and the reason why we filed a

25 motion to extend our response time to the supplemental motion to

1  dismiss is because we do believe that it is appropriate for MDL,

2  which the MDL panel will decide, but for the reason THAT you've got

3  all of these cases claiming -- obviously there is only case that is

4  literally first filed.  I mean, that is just looking at the dates

5  the complaints were filed.  But then you have the legal arguments

6  that flow from that.  You have public disclosure issues, you have

7  original source issues, and things of that nature.  And we think

8  that one judge should be deciding that.  Otherwise you have problems

9  of possibly conflicting decisions.

10         So that is where we are at this point in time.  And I think

11  that once a decision is made by the MDL panel about their assessment

12  of that then we'll know a lot more about how to proceed.

13         THE COURT:  And when you do think that they will be making

14  a decision?

15         How long ago was the request to the MDL made?

16         MS. BOLDT:  The MDL request must have been made

17  approximately two or three weeks ago given our due date for our

18  response, which is Monday.  We have heard, although this is just

19  sort of anecdotal, that their next oral argument time is in May.  I

20  don't know if we -- we may make that next oral argument schedule.

21  And so we could have a decision sometime in the next month or two.

22         THE COURT:  Okay.

23         I do not see any relationship between -- other than the

24  parties -- between the employment case and the Qui tam case.  And I

25  presume everybody agrees with me on that.  Anybody in disagreement?

```
 1          MR. CORNELL:  I am in complete agreement, Your Honor.

 2          MS. BOLDT:  We are in agreement as well, Judge.

 3          THE COURT:  Then what I would like to do, since the

 4   employment case is on track moving towards either resolution on the

 5   motion or resolution at trial, I would like for you all to educate

 6   me on the Qui tam case.

 7          As I sort of look at it it is -- and trying to figure out

 8   what the issues are going to be, I gather that the defendant's

 9   position is is that even if you take everything you say, the

10   plaintiff as true, it is really not a violation of Title 4 of the

11   Education Act.  Do I have it --

12          It is probably overly simplistic, but do I have it?

13          MS. BOLDT:  Yes, Judge.  We think that's the nut of it.

14          THE COURT:  And that it is the representations of the

15   school -- the argument -- the allegations are that the school made

16   material misrepresentations to come within the scope of being

17   eligible for student loans.

18          MS. BOLDT:  Correct.  And based on as you go through the

19   complaint there are different allegations of material

20   misrepresentations.  A series of them.

21          THE COURT:  Maybe I should wait until I see whether or not

22   I have to cross this bridge, but if it all comes down to me,

23   structurally how should we be handling this case?  Each one of the

24   realtors I am sure would want to have their own counsel.  Or have

25   you all been talking to the realtors' counsel in the other actions?
```

1      MS. BOLDT:  We have been speaking to, or have been trying

2  to speak to, the relators in the Pennsylvania case, and we have

3  spoken to the relators in the Illinois case.  I think that given the

4  fact that some of these issues are certainly jurisdictional and

5  govern the scope of the Court's jurisdiction, I think that our

6  thought would be that those could be handled first and some of them

7  are -- well, all of them, really, are highly factual in nature.  And

8  so we would have to come up with a way in which to handle that if it

9  were all brought here so that the Court could determine who is not

10 just first to file but who is the original source and etc. so that

11 we could proceed that way, because certainly someone is.  And that's

12 really I think going to be the issue to tackle initially.

13     THE COURT:  When you say the original source, make sure

14 that I am understanding what you are saying.

15     MS. BOLDT:  The original source of the information.

16     THE COURT:  Ah.  Okay.

17     MS. BOLDT:  Once you have the first-to-file issue, you then

18 -- if there is competing people we then look to who is the original

19 course source of the information.

20     And then it begs the question -- It's is a very technical

21 thing.  It begs the question the original source of what

22 information.  So there is different allegations of fraud.  So our

23 position may ultimately be that there is different original sources

24 for some of the different allegations.

25     THE COURT:  Just a point of clarification since I have had

1    one or two Qui tam cases before, entirely different.  The ones

2    before have all been related to alleged frauds that are very local

3    without any connection beyond the borders.  Does the United

4    States -- does the U. S. Attorney's here as it's looking at it sort

5    of do an e-mail to the other U.S. Attorney's Offices to find out if

6    they have anything pending?  Did you all coordinate at all?

7            MR. RAURELL:  There is a national approach to these cases.

8    The cases are being monitored and handled to a large degree out of

9    Washington.  So we are aware of them all.

10           This particular action, however, was initially handled by

11   the Middle District, and I believe that they made their assessment

12   and their determination on intervention strictly with respect to the

13   allegations presented in the amended Qui tam complaint in this

14   action.

15           THE COURT:  And once the U. S. Attorney's Office in Tampa

16   decided not to get involved then that is when the case was unsealed

17   and --

18           Who is the Judge that had it in the Middle District?

19           MS. BOLDT:  Judge Covington.

20           MS. EISENBERG:  It was first with Judge Merryday, and then

21   it got transferred sua sponte to judge Covington and it was Judge

22   Covington who entered the transfer order.

23           THE COURT:  Down here.  Okay.  I can understand.  But I

24   must admit my first thought was I would send mine up to her but I

25   didn't see any jurisdictional connection up there, and I anticipated

1 that pretty soon I would see this.

2          MR. RAURELL:  I would like to add, Your Honor, if you will

3 permit me, the government has made the same decision in all the

4 cases that have been unsealed, which is not to intervene.

5          THE COURT:  Okay.  Unfortunately you can't tell me if there

6 are any other cases if it is not yet unsealed.  So we will wait.

7          MR. HATCH:  Your Honor, if I can address some of the issues

8 that you asked about and have been addressed.

9          From Kaplan's perspective with regard to the motion to

10 transfer to the MDL, with regard to the motion to stay the

11 proceedings here, we would point out that we do have two motions to

12 dismiss that are on file and have been briefed.  The first motion

13 has been on file now for almost one year, and the second motion for

14 almost six months.  For obvious reasons we are anxious to have those

15 motions decided.

16          The first motion involves a legal issue regarding whether

17 or not the Complaint properly states a cause of action under the

18 False Claims Act.  And I think that is essentially a legal question.

19          And the second ground raised in our first motion is whether

20 the Complaint adequately alleges the particularity required by Rule

21 9(b).

22          Now, we have made similar motions in the Illinois action

23 and in the Pennsylvania action.  And one of the reasons that we will

24 cite in our papers to the MDL in opposition to the transfer is that

25 the 9(b) issues are unique to each Complaint, to each action, and

1 have to be evaluated that way.  There is no efficiency gained by

2 consolidating those and having a single Court look at those.

3        The second motion, and we filed that six months later, is

4 the first-to-file motion that you have asked about.  And the reason

5 again for filing that separately is at the time we filed our first

6 motion we were not aware of the prior-filed case.  Within a matter

7 of a couple of weeks of learning that we filed our supplemental

8 motion to dismiss raising the first-to-file.

9        I would also like to point out, and I hope this isn't

10 getting too much into some of the details here, the public

11 disclosure, the original source issues, are not raised in any way in

12 any of our motions and are not before this Court, would not be

13 before the MDL Court.  It is an entirely separate issue.

14        Under the False Claims Act there are two jurisdictional

15 prerequisites that relators must meet in order to be able to sustain

16 and bring an action.  The first is what is called the public

17 disclosure bar.  And what that says, Your Honor, is that they cannot

18 bring an action based on something they read about in the newspaper

19 or they heard -- or there was a subject of a Congressional hearing

20 or of an OIG report.  They actually have to be a whistle blower not

21 just repeating what they have heard.

22        And the public disclosure bar has a second element that

23 says if there was a public disclosure then the relator can still

24 bring the action if the relator was the original source of the

25 information that was publicly disclosed.  That is jurisdictional bar

1  number one.  That is not an issue that we have raised in any of our

2  motions to dismiss.

3          There is a second --

4          THE COURT:  And why not?

5          MR. HATCH:  Because we are not aware of a public disclosure

6  of the allegations that have been raised in any of the Complaints.

7  It is an issue we have on our punch list to pursue if and when this

8  case would get to discovery.  There is some discovery we would

9  undoubtedly pursue to see if there was something that we are not

10  aware of in that regard, but it is certainly not an issue that we

11  felt we were in a position to raise here at the motion to dismiss

12  phase.

13          THE COURT:  So right now the motion to dismiss is primarily

14  focusing on the sufficiency of the allegations as to 9(b) and --

15          Refresh my recollection again as to the other grounds.

16          MR. HATCH:  One issue is 9(b).  The second issue is a legal

17  issue as to whether or not the Complaints adequately states a cause

18  of action under the False Claims Act.  Our view is that it does not.

19  Our view is that the Complaint -- the alleged violation of the

20  Higher Education Act provision, is not a condition of payment.  And

21  we believe that the courts require that the Complaint allege more

22  than just a regulatory violation.  That is not the purpose of the

23  False Claims Act to remedy any and all routine regulatory

24  violations.  It is to prevent fraud against the government.  And the

25  way the courts make that distinction is to require that the

1  plaintiffs allege properly a condition of payment that was violated

2  or ignored by the defendants.  And --

3          THE COURT:  And what do you mean by a condition of payment?

4          MR. HATCH:  A condition of payment is something that is

5  critical to the funding decision, the decision by the government to

6  provide monies.  And the distinction we make in our papers as you

7  will see is a distinction between a condition of participation in a

8  government program and something that is a condition of payment.

9          Now, that is a legal issue that there has been a number of

10 courts that have ruled on that.  That is an area where we and the

11 government, the Department of Justice, disagree.  But that is an

12 issue that I believe is -- well, it has been raised in our motion,

13 and I believe it is appropriate to be raised here.

14         And then the third issue, the one in the supplemental

15 motion, is the first-to-file issue.  And that's the second

16 jurisdictional bar separate from public disclosure.  What the False

17 Claims Act says in addition is that because all False Claims Acts,

18 whether the DOJ intervenes or not, are brought and prosecuted on

19 behalf of the government.  The government is the real party in

20 interest.

21         So what the False Claims Act says is if there is already a

22 pending action that raises similar claims, related facts, that one

23 can't go forward.  The purpose is to put the government on notice as

24 to the issue.  So the government can decide whether it's interests

25 have been protected and what action it should take in order to

1  protect its interest.

2          And so the first-to-file bar says if there is already a

3  pending action that raises similar claims, involves similar factual

4  allegations, subsequently filed actions cannot go forward.  And we

5  have raised that issue here, we raised that issue in Chicago.

6          MS. BOLDT:  And, Your Honor, may I respond just briefly?

7          THE COURT:  Yes.

8          MS. BOLDT:  They can frame the issues in their motions to

9  dismiss however they see fit, obviously.  And clearly the first

10 motion, which is completely briefed, possibly could be ready for the

11 Court's determination, and there is certainly nothing preventing

12 that from being considered by the Court.  But this issue in the

13 supplemental motion to dismiss is the issue which our response to

14 that will bring up these factual issues of original source.  So that

15 is our response.

16         They may be trying to say, oh, it is just a simple issue.

17 You just look to the first date, the first-filed case.  But it is

18 not that simple.  And our response to it is that we are an original

19 source.  So --

20         THE COURT:  Because you represent people that worked --

21         MS. BOLDT:  Right.  Exactly.  In other words, this is not

22 something that our client learned through any public disclosure.

23 Our client actually worked for the company.  So there are issues --

24 our defense to their position raises issues that are highly factual.

25         And, again, it all goes back to the point I just made about

1  the Nevada case being an earlier-filed case.  Kaplan, before they

2  knew about Nevada, took the position in the Illinois case, like

3  counsel just said, and in our case, that our cases should be

4  dismissed because Pennsylvania was the first to file.  Well, now

5  Pennsylvania is no longer the first to file.  Now it's Nevada.  So

6  clearly that position is going to change.

7          But my point is is that all of the relators in these other

8  three cases are going to have arguments about their ability to

9  nonetheless continue in the case.  And that's what we believe one

10 judge should be able to resolve that issue for all of these cases.

11         THE COURT:  Tell me, the relators in the Pennsylvania,

12 Nevada, and Illinois cases, how did they allegedly come by their

13 information?  Do their Complaints say?

14         MS. BOLDT:  I know that the Pennsylvania relator also

15 worked for Kaplan.  I believe Illinois worked for Kaplan.  I'm not

16 positive about that.  I had only looked initially at the Nevada

17 action.  I was focused primarily on the filing date on that one.  So

18 I don't have the information for Your Honor on Nevada or Illinois.

19 But I am fairly certain that the Pennsylvania relator also worked

20 for Kaplan.

21         MR. HATCH:  Your Honor, all of the relators in all of the

22 actions worked for Kaplan.

23         And I can tell you again, and we can certainly brief this

24 issue if and when appropriate, whether or not a relator was the

25 original source, worked for Kaplan, what have you, is just

1  completely irrelevant to the first-to-file issue.  It is critical to

2  public disclosure --

3           THE COURT:  I think I have your point.

4           MR. HATCH:  Your Honor, there is two other procedural

5  matters I would like to bring to your attention that I think are

6  relevant to the issues you raised.  First, the relators in the

7  Pittsburgh action have already responded to the MDL motion to

8  transfer and they have opposed the transfer.  They responded early

9  on that.

10          The second issue is, in Illinois, in the Chicago action,

11  simultaneous with filing their MDL transfer motion the relators

12  there filed a motion with the Court in Chicago to stay the

13  proceedings.  And the proceedings there were almost identical to the

14  proceedings here.

15          We had a motion to dismiss that had been on file for quite

16  a long time --

17          THE COURT:  Hold on.  You are saying the relators in the

18  Illinois action have moved to stay?

19          MR. HATCH:  They moved to stay simultaneous with moving to

20  transfer to the MDL.  And the Court in Chicago heard and denied

21  their motion to stay and has established a briefing schedule

22  requiring that they respond to the pending motion to dismiss that

23  raises first-to-file issues as well as 9(b) issues.

24          THE COURT:  For me I think that it would be helpful to

25  complete the briefing on the pending motions simply because this

1  case was filed last year in Tampa.  We are now in 2009.  Like any

2  action, you need to get it to trial before people's memories fade,

3  documents are lost.

4          Let me just ask the relators, Miss Boldt.  I am looking at

5  the face of the Complaint now, and I am looking at -- just the 9(b)

6  issues without your even responding.  Does that -- I am sharing with

7  you that I --

8          MR. HATCH:  Your Honor, if I may --

9          THE COURT:  No, you may not.  I am speaking to Miss Boldt

10 right now.  Thank you.

11         MR. HATCH:  Sorry, Your Honor.

12         Help me understand the particularities.  The way the

13 Complaint is framed, it's not -- I'm having difficulty, because I

14 look at it -- I look at it from the defendant's part, but I also

15 look at -- I play the devil's advocate.  But I ultimately look at it

16 from my perspective and that of the jury.  We need to frame what are

17 the specific false statements, who made them, when were they made,

18 so that the jury knows what they are dealing with, because

19 ultimately in any case I need for the lawyers to take the Gone With

20 The Wind, or War And Peace saga, and reduce it to Cliffs Notes in

21 the process to really tee up the issues because the parties are

22 going to spend a year or so on the case, the jury is going to spend

23 two weeks.  And I know that lawyers like to cross the T's and dot

24 the I's, that's what we are supposed to do.  But we get to a point

25 that we have to quit turning over rocks and we have to decide which

1  rocks are going to be in the box that we actually present to the

2  jury.

3          I know it is difficult when you start out and you don't

4  have all of the discovery, but it helps focus the discovery as well.

5  And --

6          MS. BOLDT:  Let me give you a little bit of background

7  about our involvement in the case and then I will directly address

8  your point.

9          THE COURT:  Okay.

10          MS. BOLDT:  Initially, all three of the relators in this

11  action were represented by Mr. Andrews.  Subsequently, at some point

12  in time, and it was after the briefing was done on the first motion

13  to dismiss, Mr. Gillespie decided to retain our law firm and we came

14  in on his behalf.  He is then no longer represented by Mr. Andrews.

15          THE COURT:  When you say the briefing was completed, I was

16  under the impression there was no response to the motion to dismiss.

17          MS. BOLDT:  That was on the original motion.  So we have

18  two motions.  We have an original motion to dismiss which is fully

19  briefed, then we have a supplemental motion to dismiss, and that is

20  the response that has not yet been filed that Your Honor was just

21  commenting on at the briefing.  You would actually prefer that the

22  briefing proceed on that.

23          THE COURT:  Right.  Then I was under the misimpression.  I

24  thought that there were motions for extension of time to respond to

25  the motion to dismiss the First Amended Complaint.

```
 1            MS. BOLDT:  It is to the supplemental motion to dismiss.

 2            THE COURT:  Ah.  Okay.

 3            MS. BOLDT:  So there is one motion to dismiss that has been

 4   fully briefed.

 5            THE COURT:  And when did it become fully briefed?

 6            MS. BOLDT:  Maybe the defense could help me with that.  But

 7   it has been briefed for awhile.  It has been fully briefed for --

 8            THE COURT:  You see, that is why this is helpful since I am

 9   the last one to get on the train here.

10            MR. HATCH:  The relators filed their opposition on June 30,

11   2008.

12            THE COURT:  And when was the reply filed?

13            MR. HATCH:  July 17, 2008.

14            THE COURT:  Do you have the docket entry for me?

15            Let me also introduce the law clerk that is working with me

16   on this case, Cindy Bulan.

17            LAW CLERK:  The reply is docket 47.

18            THE COURT:  Okay.  Good.

19            MS. BOLDT:  So that's the motion that addresses the

20   sufficiency of the allegations, Your Honor.

21            And when we came into the case, after that briefing had

22   been completed and looked -- At those issues at least let me speak

23   for our client Mr. Gillespie, I think the Complaint could be

24   amended.  Let's put it that way.

25            THE COURT:  Would you like to amend the Complaint?
```

1          MS. BOLDT:  Yes, Your Honor.

2          THE COURT:  Why don't I grant the motion to dismiss with

3 leave to amend.

4          MS. BOLDT:  We would appreciate that.

5          MR. CORNELL:  If Your Honor please, with respect to

6 Mr. Diaz and Wilcox, I would gather that the Court is also granting

7 them leave to amend as well?

8          THE COURT:  Right.

9          And what are we going to do now that I have three

10 plaintiffs but I've got two sets of lawyers, because the Wilcox the

11 mighty band of musketeers has split up?  So what am I going to do?

12          MR. CORNELL:  I gather -- I think we'll be able to work

13 together.  But I think what we'll have is two separate amended

14 Complaints:  One on behalf of Diaz and Wilcox and the other on

15 behalf of Mr. Gillespie.  They may say exactly the same thing.

16          MS. BOLDT:  We --

17          THE COURT:  What do I do with this whole thing with this

18 supplemental motion to dismiss as to the first --

19          MR. CORNELL:  Well, my problem with the supplemental is

20 that Your Honor -- and I completely understand why -- has stricken

21 Diaz and Wilcox's response.  So technically there is no response,

22 although I would prefer that there be a response to that.  And I

23 would frankly prefer Mr. Andrews to have enough time to get admitted

24 to it to refile it himself.  But if the Court requires, with your

25 permission I will readopt it.

```
 1            THE COURT:  Let me just ask you.  Is there any law on this
 2  where the parties have a -- I'm looking for the right word -- with a
 3  difference in approach where there are multiple parties and they
 4  decide to approach the lawsuit in a different fashion?  What do I do
 5  as a matter of law, especially when it is a Qui tam action and they
 6  are all, quote, relators that are acting on behalf of the citizens
 7  of the United States?
 8            MS. BOLDT:  We did a little research on that, Your Honor.
 9  We weren't able to find anything that was helpful because, of
10  course, when we had the thought that an amended complaint should be
11  filed, this was the first thing we started asking ourselves
12  logistically how do you do that exactly.
13            I think that we do have a working relationship with
14  Mr. Andrews, we just met Ware, and so we are forging that
15  relationship as well.  And I think that the Court could certainly --
16  and we would have no problem with this -- the Court requiring us to
17  file one document in some fashion where even if we had sections
18  where we laid out facts separately.  But we may be able to create
19  one document that is satisfactory to all three.
20            THE COURT:  I think that's the only way that I can go.  The
21  three, although one decides that he is -- apparently would have
22  different counsel, still is part of the little musketeers, and they
23  have to work together.
24            MS. BOLDT:  We will do that, Judge.
25            THE COURT:  Do you agree with that, the United States --
```

1          MR. RAURELL:  Yes, Your Honor.

2          THE COURT:  -- since they are really here on your behalf?

3          MR. RAURELL:  The government would take the position that

4    that is the most prudent and probably appropriate way to proceed

5    under the rules.

6          THE COURT:  Okay.

7          How much time would you need for filing an amended

8    Complaint?  We are going to address the supplemental issue because

9    that is separate and apart from the face of the Complaint.

10         MS. BOLDT:  I think our main concern would be, although

11   obviously we can work with Mr. Andrews to get the information while

12   he is still going through the process of becoming admitted.  But I

13   think we would need it to be sometime after that date, whatever the

14   expected date of his admission would be.

15         THE COURT:  Mr. Cornell, do you recall what the -- I

16   thought that they can now tell somebody pretty quick almost to the

17   date that you take the exam.  The whole purpose of the exam in the

18   southern and the northern district is just to make sure that the

19   lawyers have read the rules and the test is designed to if you just

20   read the answers to the potential questions then --

21         MR. CORNELL:  My understanding has always been it never

22   took more than a week.  And it may be that they just grade it on the

23   spot.  So I am anticipating a week at the outside.  So he would be

24   admitted ten days from now.

25         THE COURT:  So do you want at least 20 days or more?  I am

1  up for 30 days.

2       MR. CORNELL:  Why don't we just say 30 for the sake of

3  everything?

4       THE COURT:  Okay.

5       That will also take us to May 24.

6       And when is the MDL hearing?

7       MS. BOLDT:  We just heard that it may be in May.  We don't

8  have any specifics on it other than that their next argument session

9  is in May.  Now, whether we get set for that argument session is up

10 in the air.

11      LAW CLERK:  May 24 is a Sunday.

12      THE COURT:  Oh.  Thank you.  I'm looking at the wrong year.

13      It would be May 25.

14      LAW CLERK:  That's Memorial Day.

15      THE COURT:  It would be the 26th.  The 26th.

16      Let us come up with a briefing schedule for the

17 supplemental motion.

18      MS. BOLDT:  One question I have is whether allegations in

19 our Complaint, in this amended Complaint, would affect potentially

20 their argument on this issue because we certainly plan on pleading

21 the facts that we'll need there.

22      THE COURT:  Okay.  Then let's do this.  And the defendant

23 may want to file an amended supplemental motion based upon the

24 amended Complaint.  Is that a possibility?

25      MR. HATCH:  In fact, Your Honor, I think that would be

1   required depending on the details of the amendment if they just try

2   to flesh out allegations that are in the existing Complaint, we will

3   undoubtedly continue to make a first-to-file motion.  If they make

4   new allegations that aren't in the current Complaint, then we'll

5   have to evaluate whether we would have the basis for that motion.

6          Moreover, obviously we'll have to supplement or file a new

7   motion with regard to 9(b) if we continue to believe after the

8   amended Complaint that it is still not sufficient.

9          THE COURT:  I anticipate that Miss Boldt will satisfy the

10  9(b) requirements; I mean, just simply because I think she

11  understands --

12         MS. BOLDT:  Yes.

13         THE COURT:  -- how particular it needs to be.  It needs to

14  be like a newspaper story, you know, the who did it, when, where,

15  how, and what was said.  I mean, they don't have to put on their

16  entire case, but they need to have those kinds of particularities so

17  that the discovery can be focused.

18         MR. HATCH:  I fully expect that, Your Honor.  Where I think

19  they are going to have a challenge -- and I am not giving anything

20  away since this is in our pending motion -- is that much of the

21  conduct alleged in the original Complaint simply isn't -- it doesn't

22  violate any legal requirement, any statute, regulation or other

23  requirement.

24         THE COURT:  That goes to your first basis as opposed to the

25  9(b) basis, right?

1            MR. HATCH:  I think it's got issues implicating both bases.

2   But --

3            THE COURT:  I always found -- and I am no longer practicing

4   law -- it is much easier from a Judge's perspective rather than

5   being in the trenches again, is that if I had a really good motion

6   to dismiss and I had good counsel on the other side, sometimes it

7   was better to just wait until a little discovery had been done and

8   then file my motion for summary judgment, and I had a much more

9   solid case rather than tipping off the other side at the motion to

10  dismiss stage as to what the weaknesses are, because good counsel

11  usually were able to resolve those.

12          I also found that if I had a, you know, dead in the water

13  with a statute of limitations and could show them the smoking gun

14  and I had good counsel on the other side, I would arrange for lunch,

15  we would sit down, we would talk about it and often times the case

16  would be resolved and the case would go away.  I suggest that you

17  may have opposing counsel of that caliber.  And I know that good

18  counsel on both sides can take a look at the case.

19          And I really look at counsel on both sides to remember not

20  only are you advocates, and I suspect all of you are going to be

21  very zealous -- I particularly know how Mr. Cornell is always very

22  zealous.  But as Mr. Cornell knows, I need you all to be officers of

23  the Court.  And, you know, sometimes people say there is a conflict

24  between being an officer of the Court and being a zealous advocate.

25  But I have never found there to be a conflict because if you are

1 really dedicated to your client then you will make sure as an

2 officer of the Court that the system works fairly and honestly.  So

3 that is why it always has to trump, because if the system doesn't

4 work fairly and honestly then your client is ultimately at a

5 disadvantage because the system is corrupted and then your client

6 will not have a chance to have their issues vindicated in a just

7 forum.

8          So to a certain extent I see the lawyers on the civil side

9 have the same kind of responsibility as the lawyers for the

10 government on the criminal side.  Your goal is not just to get a win

11 or a conviction, but your responsibility is to make sure that

12 justice is done.

13          I mean, it is really hard with clients.  And unfortunately

14 the law school never teaches us as to how to deal with the emotional

15 issues that are generated in a lawsuit because everyone becomes very

16 polarized, everyone feels very defensive as to their position, and

17 lawyers have tough jobs in helping that human aspect of the client

18 relationship and helping the client see the case from the other

19 person's perspective.  And if we can all help the human beings that

20 are involved in the litigation process see that, then ultimately it

21 helps people keep focused on the rational side of their brain as

22 opposed to the emotional side.  And the emotional side always

23 interferes with the rational.  But I am telling you what you already

24 know, right?  You have all been there long enough to know those

25 delicate issues.

1          And as one judge once said to me, he loved the practice of

2  law except for clients.

3          MS. BOLDT:  There you go.

4          THE COURT:  But, you know, we all took an oath to not only

5  uphold the Constitution, but to help human beings who are in

6  conflict and crisis.  We provide a service that is very human

7  oriented.  And it is a good way to earn a living because you at the

8  end of the day can actually say hopefully that you made a

9  difference.  And I think that's why most people go to law school,

10 beside the fact that they are smart, they faint at the sight of

11 blood, they're not good at numbers, and they didn't want to dig

12 ditches.

13         So let us do this.  Within 15 days after they file their

14 amended Complaint, or I can make it 20 if it is better for you, or I

15 can make it shorter, ten days -- In fact, I would like to make it

16 shorter if I can.  -- you can take a look at their amended Complaint

17 and notify me whether or not you want to rest on your present papers

18 on the supplemental motion, and if you rest on your present papers

19 for the supplemental motion then I will ask the plaintiffs or the

20 relators to file a response ten days thereafter.  And the ten-day

21 rule, that means you can count -- weekends don't count.  How is that

22 for a plan?  And then we'll tee up that motion.

23         And in the meantime we are percolating on ripening the

24 issues and hopefully the MDL is moving along.  I find that they

25 usually move rather rapidly.  And then we'll be in a position if it

1 is transferred to me to be able to rule expeditiously on these

2 motions. And if it is not transferred to me, at least it will be in

3 a posture to be decided by the incoming judge, or whoever gets it.

4          MS. BOLDT: Your Honor, one other point of reference.

5 Discovery has been stayed in this case. There is an order entered.

6 Do we want to leave that in place until after this briefing

7 schedule, after our amended Complaint and they make their decision

8 about whether they rest on their papers or not and then our response

9 time? I mean, I think it is just something we should talk about.

10          THE COURT: I would un-stay the case simply because I

11 believe the defendant given its position that none of this is

12 illegal might want to tie down some of the relators on some of the

13 facts. It puts it in a better position.

14          I know that, on the other hand, why they want to take

15 discovery so they can tie down people. They may not want to be

16 disclosing everything. But what is the status of discovery in the

17 other cases? What I would like to do is coordinate with the other

18 cases -- until we have a ruling on the MDL the defendant is not

19 having to provide it in four different forums, there can be simply

20 one place.

21          Now, I know the defendant is going to say, "But I want the

22 motion to dismiss decided first."

23          MR. HATCH: Your Honor, there has been no discovery in any

24 of the other cases, and the courts have held discovery until after

25 decisions on the pending motions to dismiss.

1        And as you predicted, Your Honor, that would certainly be

2   our request here, especially, Your Honor, in light of the threshold

3   jurisdictional issue relating to first to file.  We don't think it's

4   fair to put the company to the burden and expense of discovery when

5   we believe there is a very clear jurisdictional problem with the

6   case.

7        THE COURT:  But the first to file only makes a

8   determination that somebody is going to have it.  I mean, the first

9   to file does not close down the case.

10        MR. HATCH:  Correct, Your Honor.

11        THE COURT:  It just makes a decision as to which forum is

12   the one that is going to predominate, assuming your arguments

13   prevail.

14        MR. HATCH:  No, Your Honor.  It would close down the claims

15   brought by these three relators.  Assuming that Pittsburgh is the

16   first filed, then the Pittsburgh relators and the Pittsburgh counsel

17   would prosecute the action.  And what would happen if you open

18   discovery now is we would be subjected to discovery from these

19   relators and counsel.  If you then subsequently find or if the MDL

20   panel subsequently finds that this was not the first filed action

21   all of that would have been for nothing and then we would then

22   subsequently potentially be subject to discovery from the Pittsburgh

23   relators and the Pittsburgh counsel.

24        THE COURT:  Aren't the allegations in each one of the --

25   Oh, no.  You told me there are different allegations in each one of

1  the Complaints.

2       Am I right, Miss Boldt?

3       MS. BOLDT:  There are some similarities between the

4  allegations.  But I would not say that they are all completely

5  identical.  But there are certainly some similarities and some

6  overlap.

7       THE COURT:  If the defendant prevails on the first to file

8  and one group proceeds, what happens to the other realtors?  The

9  actions are just dead and they have no involvement, even factually

10 the team that is prosecuting the remaining action it doesn't go and

11 get information from the other relators?

12      Ms. BOLDT:  Oh, I am sure they will.  They will all be

13 witnesses, they will be subpoenaed, there is no question about that,

14 because they are going to have information that is relevant to the

15 issues in the case.  So I have no doubt that whatever group is

16 determined to be the group that is allowed to proceed that they will

17 be looking to these other former employees to be witnesses in their

18 action.

19      THE COURT:  So there would be some benefit to protect the

20 plaintiffs then in the interim until we sort of find out which forum

21 we are proceeding in so that the realtors would not later be

22 subjected to two depositions or -- (pause)

23      If you have the amended Complaint done by the 26th, I have

24 the distinct impression I am going to see a motion to dismiss,

25 although I -- I won't prejudge it, but usually motions to dismiss

1  are disfavored.  I just throw that out.  I'm not prejudging

2  anything.

3          Well, it is probably better to see the Complaint before we

4  start discovery because we do need to tee up what the issues are.  I

5  think that probably is more efficient.

6          MS. BOLDT:  So we can just address it.  Maybe if it is all

7  right with Your Honor if we believe that there is a time that is

8  appropriate that it should get started, maybe just file a motion

9  with the Court and lay out our position and then it would give

10 everyone a time to respond and --

11         THE COURT:  Let's do this.  Ordinarily I send out a

12 scheduling order.  I saw that there was a scheduling order that was

13 sent out in the case before it was sent down here.  That is sort of

14 moot now.  I can send out my standard scheduling order and the

15 purpose of the scheduling order is twofold.  One, the scheduling

16 report you give me actually helps me and my paired Magistrate Judge

17 have one piece of paper that we can go to come to understand what

18 are the claims, what are the legal elements of the claims and the

19 defenses, because it helps us when we have any discovery disputes we

20 can just go to one document and refresh our recollection very

21 quickly as to what the case is about and it helps define if there

22 are scope issues.

23         The other thing that the whole scheduling report process

24 does is that I attach a worksheet and encourage the parties to sit

25 down and really think through all of the things that one needs to do

37

1   in light of what are the elements that have to be proven and your

2   Rule 26 disclosures to formulate a real workable schedule for

3   pretrial so that it works for your schedule.  Because I recognize I

4   am not the only judge and this is not your only case.  So you need

5   to look at, especially when you have this many lawyers and how many

6   parties and what issues, what works for you.

7            I ask that you keep in mind that my commitment to you is on

8   any motion for summary judgment that I have ruled on that motion a

9   month before the pretrial stip is due.  That is why you will see in

10  there in bold letters that the time between the filing of the

11  motions and the pretrial stip I ask you to give me 15 weeks.

12           Both sides have a little cushion in there in that because

13  invariably something happens and one of the parties asks for a

14  couple of days for an extension of time to file a response or a

15  reply and we have time in there.  But I still have time to take your

16  opus magnuses and read through the cases and the record and come up

17  with a decision.

18           I usually don't set them down for oral argument unless

19  there is an issue that I really need further clarification on.  And

20  then what I'll do is set a hearing and I will identify what are the

21  issues that I need the parties to address so you have some focus.

22           And so I will just get out a scheduling order.  And you all

23  tell me when you think the scheduling report should be due.  If you

24  tell me that now, I can put that in the order.

25           And maybe you need to talk to each other and considering --

1        I would see it sometime after the -- I often schedule a
2   hearing -- I am planning in the contingency here, they do file the
3   motion to dismiss.  I may be able to handle it on the papers, but
4   often what I have been doing is having an oral argument on motions
5   to dismiss and just ruling from the bench or ruling shortly -- I
6   mean, telling you how I am leaning and then the order comes out so I
7   have read all of the papers.

8        I think that it may be helpful to have the scheduling --
9   ordinarily I get the scheduling report and that tells me that I have
10  a pending motion.  We have a couple of fail-safe systems, belts and
11  suspenders to try to signal that we have things pending.

12          MR. HATCH:  Your Honor, again, unless there is something
13  dramatically new or different in the amended Complaint I do envision
14  that we will be raising the first-to-file issue and the legal issue
15  I referred to.  Hopefully we'll have no need to renew the 9(b).

16          So given those issues perhaps we can schedule the
17  scheduling report a certain number of days after the Court's
18  decision on the motion to dismiss; 15, 20 days after the Court's
19  decision?

20          THE COURT:  Okay.

21          MS. BOLDT:  That's acceptable, Judge.

22          THE COURT:  Let me ask you this.  Would it be more
23  efficient for me that you take a look at your first-to-file motion,
24  figure out how you can cut it down, and we'll just -- rather than
25  you deciding whether or not you can going to rely on that, if you

39

1  are going to file a motion to dismiss do you want to join issues in

2  the same piece of paper?

3       MR. HATCH:  I assume, Your Honor, that in response to their

4  amended Complaint we will want to file a new motion that cuts what

5  we can cut and that tweaks the arguments that remain.  I think it

6  would be highly unlikely that we would be able to just tell you we

7  stand on our current papers, and that would obviously be convenient

8  to you as well and that you would have a single motion raising all

9  of the issues that we might have.

10       THE COURT:  Oh, God bless you.  Then I can say that the

11  supplemental motion is withdrawn at this time pending the filing of

12  the new amended Complaint.

13       MR. HATCH:  Certainly, Your Honor.

14       THE COURT:  And that takes care of it for me on my docket

15  and you get gold stars.

16       Let me just share with you, if you can understand what goes

17  on in chamber I think it will help you understand what makes us go

18  crazy.  We get in 1,000 pieces of paper a day.  That is just the

19  motions.  That is not any of the attachments to any of the motions.

20  We don't want to waste the paper printing out the attachments.  We

21  are have to process 1,000 pieces of paper a day.  We put out between

22  40 and 60 orders a day.  So while we are having this nice little

23  discussion out here, back in chambers it is a little emergency room.

24       We try and move the cases because I get a report card every

25  six months that says do you have any cases more than three years

1   pending you have to explain that, do you have any decisions haven't

2   ruled upon in six months you have to explain that.  And it is a

3   national report card, so everybody sees.  And you want your little

4   report card have zeros after your name.

5          So if you ever wonder why you suddenly get decisions on

6   long-pending motions in the month of March or the month of

7   September, you now know why.

8          MR. HATCH:  Your Honor, in light of this change might it be

9   advisable to actually try to set a briefing schedule with regard to

10  the motion to dismiss?  The amended Complaint is due on May 26.  We

11  could commit to have our motion to dismiss filed within 20 days, if

12  that is acceptable.

13         THE COURT:  So that would be the 15th of June.

14         The one thing that I ask you all to keep in mind, due to

15  other responsibilities that I and Miss Bulan have in July, we

16  probably won't be able to rule on this in the month of July.  It

17  will be closer to August.

18         But if you file yours on June 15, they have time to

19  respond.  How much time would you like to respond to that?

20         MR. CORNELL:  Judge, the rule would be 10 days as computed,

21  which would include intervening weekends and plus we get three days

22  additional tagged on.

23         THE COURT:  Even though you serve it with the NEF?

24         MR. CORNELL:  I don't know who made that rule, but, yes.

25  So that is basically 17 days after June 15, which would be July 2, I

1 believe, which is right before the holiday.  And I don't know what

2 day of the week that would be.

3           THE COURT:  That is a Thursday.

4           MR. CORNELL:  That would be fine.

5           THE COURT:  Is that fine with you, Miss Boldt?

6           MS. BOLDT:  Yes, Your Honor.

7           THE COURT:  So both of you say that is fine.

8           And then the response, the reply, would be -- What is 17

9 days after that, not including --

10          MR. CORNELL:  Plus one because there is a holiday in there.

11 So 18 days later.  So it would July 20.  July 4 is still the

12 holiday.

13          THE COURT:  So it's July 20.

14          MR. CORNELL:  Yes, Your Honor.

15          THE COURT:  Oh, that will work out real well, Miss Bulan.

16          You are very good at computing things, Mr. Cornell.

17          MR. CORNELL:  Actually, Your Honor, I just realized they

18 are limited to five days on the response.  But I don't have a

19 problem with that given the complexity of this case.

20          THE COURT:  Okay.  So we have a briefing schedule.

21 Anything else?

22          MS. BOLDT:  Would you give me the date, Your Honor, one

23 more time for our --

24          THE COURT:  July 20.

25          LAW CLERK:  No.  July 2.

```
 1            THE COURT:  July 2.

 2            MS. BOLDT:  Okay.  Thank you.

 3            THE COURT:  If the defendant can remember, the reply is

 4  supposed to be like rebuttal, it is not a repeat of the original

 5  motion; it is to just respond to what the plaintiffs raise.

 6            Do the plaintiffs need more time to respond to the motion

 7  to dismiss?

 8            MR. CORNELL:  Not having seen it I think we'll be okay.

 9  Obviously the Court's July schedule will be a little --

10            THE COURT:  We have some flexibility.  If you all have

11  problems we will entertain the motion and give you all additional

12  time, okay?

13            MS. BOLDT:  Okay.

14            MR. RAURELL:  May I ask a question, Your Honor?

15            THE COURT:  Certainly.

16            MR. RAURELL:  Although it has not been the practice of the

17  U.S. Attorney's Office for this district, my colleagues who were

18  handling the case in the Middle District, even after declining to

19  intervene, even after the government declined to intervene, took a

20  position, albeit brief, on the first motion to dismiss, and then

21  Kaplan's lawyers can correct me if I am incorrect, would Your Honor

22  welcome such involvement or would Your Honor prefer that the

23  relator's counsel present all of the plaintiffs' arguments?  I don't

24  know for a fact that the government will have any further need to

25  involve itself, but --
```

1        THE COURT:  Why don't you just look at what has been filed

2  and if you -- You have two courses of action.  You can counsel with

3  plaintiff's counsel, and they might run things by you before they

4  ultimately file it, unless you think that that is improper.  But I

5  can't see how that would be improper.

6        MR. RAURELL:  I don't think that that is improper.  I just

7  wanted to know if the Court had a strong preference against

8  receiving multiple filings in support of one party's agenda.

9        THE COURT:  If you can all remember this:  The less is more

10 philosophy, save trees, I would appreciate it.

11       But, on the other hand, since we have two sets of counsel,

12 although I anticipate that counsel will be able to work well

13 together, if the United States believes that there is some issue

14 that they have elected not to raise that you think is appropriate

15 you can file it.

16       MR. RAURELL:  Thank you, Your Honor.

17       THE COURT:  Keeping in mind less is more, please.

18       MR. RAURELL:  Of course.

19       THE COURT:  In the meantime then we should have heard

20 something by the MDL.

21       And then I anticipate I will have a ruling out sometime in

22 -- depending on -- since I haven't seen it, I don't know.  But we

23 will make sure that we have probably a hearing sometime in August on

24 the motion to dismiss.  Okay?

25       Is there anything else?

1          MR. HATCH:  No, Your Honor.

2          MS. BOLDT:  No, Judge.

3          THE COURT:  I really look forward to working with you all.

4          MS. BOLDT:  Thank you very much.

5          THE COURT:  And good luck, Mr. Andrews, on the exam.

6          MR. ANDREWS:  Thank you, Your Honor.

7          THE COURT:  As Mr. Cornell can probably tell you, if you

8    just referred the answer book -- although I think somebody told me

9    one of the answers needs to be corrected because the wrong with a

10   change in the rules.

11          This is off the record Mr. Ehrlich.

12          (Off-the-record discussion.)

13          THE COURT:  Okay.  Thank you all very very much.  Look

14   forward to working with you all.

15          We are in recess.

16          (Court recessed at 11:22 a.m.)

17

18                         **CERTIFICATION**

19

20   I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD

21   OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

22   June 7, 2012                    S/DAVID S. EHRLICH
                                     Official Court Reporter
23

24

25

**0**

**08-60368** [1] - 3:2
**08-60368-CV-SEITZ**
[1] - 1:2
**09-20756** [1] - 3:2
**09-20756-CV-SEITZ**
[1] - 1:3

**1**

**1** [1] - 1:6
**1,000** [2] - 39:18,
39:21
**10** [1] - 40:20
**10:02** [1] - 3:1
**11-4** [1] - 1:24
**11:22** [1] - 44:16
**15** [5] - 32:13, 37:11,
38:18, 40:18, 40:25
**15th** [1] - 40:13
**17** [3] - 24:13, 40:25,
41:8
**18** [1] - 41:11
**1964** [1] - 7:17
**1981** [1] - 7:19

**2**

**2** [3] - 40:25, 41:25,
42:1
**20** [9] - 6:18, 7:24,
27:25, 32:14, 38:18,
40:11, 41:11, 41:13,
41:24
**2008** [2] - 24:11,
24:13
**2009** [2] - 1:5, 22:1
**201** [1] - 1:19
**23** [1] - 1:5
**24** [2] - 28:5, 28:11
**25** [2] - 7:12, 28:13
**25th** [1] - 2:9
**26** [2] - 37:2, 40:10
**2645** [1] - 1:15
**26th** [1] - 28:15,
35:23
**2nd** [1] - 1:19

**3**

**30** [5] - 7:12, 8:10,
24:10, 28:1, 28:2
**305** [1] - 1:25
**33128-1810** [1] - 1:24
**33131-1714** [1] - 2:9
**33132** [1] - 2:5

**33137** [1] - 1:19
**333** [1] - 2:11
**33331** [1] - 1:15
**3rd** [1] - 2:9

**4**

**4** [2] - 12:10, 41:11
**40** [1] - 39:22
**400** [1] - 1:24
**4141** [1] - 1:19
**4600** [1] - 2:11
**47** [1] - 24:17
**4th** [1] - 2:4

**5**

**50** [1] - 6:24
**523-5537** [1] - 1:25

**6**

**60** [1] - 39:22

**9**

**9(b** [7] - 15:25,
17:14, 21:23, 22:5,
29:7, 29:10, 29:25
**9(b)** [3] - 15:21,
17:16, 38:15
**90071-3197** [1] - 2:12
**99** [1] - 2:4

**A**

**a.m** [2] - 3:1, 44:16
**ability** [1] - 20:8
**able** [11] - 16:15,
20:10, 25:12, 26:9,
26:18, 30:11, 33:1,
38:3, 39:6, 40:16,
43:12
**ABOVE** [1] - 44:21
**ABOVE-ENTITLED**
[1] - 44:21
**abundance** [1] - 7:12
**acceptable** [2] -
38:21, 40:12
**accuracy** [1] - 7:3
**acoustics** [1] - 9:2
**Act** [9] - 7:17, 12:11,
15:18, 16:14, 17:18,
17:20, 17:23, 18:17,
18:21
**acting** [1] - 26:6

**action** [31] - 4:13,
6:1, 10:2, 10:4, 10:9,
10:10, 14:10, 14:14,
15:17, 15:22, 15:23,
15:25, 16:16, 16:18,
16:24, 17:18, 18:22,
18:25, 19:3, 20:17,
21:7, 21:10, 21:18,
22:2, 23:11, 26:5,
34:17, 34:20, 35:10,
35:18, 43:2
**actions** [8] - 8:20,
9:6, 9:8, 9:15, 12:25,
19:4, 20:22, 35:9
**Acts** [1] - 18:17
**add** [1] - 15:2
**addition** [1] - 18:17
**additional** [4] - 6:15,
40:22, 42:11
**address** [9] - 6:19,
7:7, 7:16, 7:22, 15:7,
23:7, 27:8, 36:6,
37:21
**addressed** [1] - 15:8
**addresses** [3] - 7:18,
7:20, 24:19
**adequately** [2] -
15:20, 17:17
**admission** [1] -
27:14
**admit** [1] - 14:24
**admitted** [5] - 3:12,
5:14, 25:23, 27:12,
27:24
**adopt** [1] - 3:23
**advisable** [1] - 40:9
**advocate** [2] - 22:15,
30:24
**advocates** [1] -
30:20
**affect** [1] - 28:19
**affected** [1] - 9:7
**agenda** [1] - 43:8
**ago** [2] - 11:15,
11:17
**agree** [1] - 26:25
**agreeing** [1] - 10:15
**agreement** [2] - 12:1,
12:2
**agrees** [1] - 11:25
**air** [1] - 28:10
**Akerman** [2] - 2:8,
5:12
**AL** [1] - 1:6
**albeit** [1] - 42:20
**allegations** [15] -
12:15, 12:19, 13:22,
13:24, 14:13, 17:6,
17:14, 19:4, 24:20,
28:18, 29:2, 29:4,

34:24, 34:25, 35:4
**allege** [2] - 17:21,
18:1
**alleged** [3] - 14:2,
17:19, 29:21
**allegedly** [1] - 20:12
**alleges** [1] - 15:20
**allowed** [4] - 35:16
**almost** [5] - 15:13,
15:14, 21:13, 27:16
**Alters** [1] - 1:18
**amend** [3] - 24:25,
25:3, 25:7
**amended** [17] -
14:13, 24:24, 25:13,
26:10, 27:7, 28:19,
28:23, 28:24, 29:8,
32:14, 32:16, 33:7,
35:23, 38:13, 39:4,
39:12, 40:10
**Amended** [1] - 23:25
**amendment** [1] -
29:1
**AND** [1] - 1:13
**Andrews** [8] - 3:18,
6:3, 23:11, 23:14,
25:23, 26:14, 27:11,
44:5
**ANDREWS** [1] - 44:6
**Andrews'** [4] - 3:11,
4:1, 4:17
**Andy** [1] - 7:21
**anecdotal** [1] - 11:19
**Angeles** [1] - 2:12
**answer** [1] - 44:8
**answers** [2] - 27:20,
44:9
**anticipate** [3] - 29:9,
43:12, 43:21
**anticipated** [1] -
14:25
**anticipating** [1] -
27:23
**anxious** [1] - 15:14
**apart** [1] - 27:9
**appearance** [2] - 3:6,
4:25
**APPEARANCES** [2] -
1:11, 2:1
**appearances** [1] -
3:4
**appeared** [1] - 10:6
**appreciate** [3] - 8:15,
25:4, 43:10
**approach** [3] - 14:7,
26:3, 26:4
**appropriate** [6] -
11:1, 18:13, 20:24,
27:4, 36:8, 43:14
**April** [1] - 1:5

**area** [1] - 18:10
**argument** [11] - 8:10,
10:17, 10:18, 11:19,
11:20, 12:15, 28:8,
28:9, 28:20, 37:18,
38:4
**arguments** [8] -
7:14, 7:22, 9:18, 11:5,
20:8, 34:12, 39:5,
42:23
**arrange** [1] - 30:14
**aspect** [1] - 31:17
**assessment** [2] -
11:11, 14:11
**assigned** [1] - 9:17
**Associates** [1] - 1:14
**assume** [1] - 39:3
**assuming** [2] -
34:12, 34:15
**attach** [1] - 36:24
**attachments** [2] -
39:19, 39:20
**attention** [1] - 21:5
**Attorney's** [5] - 2:4,
14:4, 14:5, 14:15,
42:17
**August** [2] - 40:17,
43:23
**Avenue** [3] - 1:19,
2:9, 2:11
**aware** [6] - 9:5, 9:24,
14:9, 16:6, 17:5,
17:10
**awhile** [1] - 24:7

**B**

**background** [1] -
23:6
**band** [1] - 25:11
**Bar** [1] - 5:24
**bar** [5] - 16:17,
16:22, 16:25, 18:16,
19:2
**based** [3] - 12:18,
16:18, 28:23
**bases** [1] - 30:1
**basis** [3] - 29:5,
29:24, 29:25
**bear** [1] - 3:21
**become** [1] - 24:5
**becomes** [1] - 31:15
**becoming** [1] - 27:12
**BEFORE** [1] - 1:9
**begs** [2] - 13:20,
13:21
**behalf** [16] - 3:5, 3:6,
4:7, 4:16, 4:25, 5:5,
5:12, 8:2, 8:4, 8:22,

18:19, 23:14, 25:14, 25:15, 26:6, 27:2
**beings** [2] - 31:19, 32:5
**believes** [1] - 43:13
**belts** [1] - 38:10
**Ben** [1] - 3:7
**bench** [1] - 38:5
**beneficiary** [1] - 8:22
**benefit** [1] - 35:19
**beside** [1] - 32:10
**Beth** [1] - 4:11
**BETH** [1] - 1:18
**better** [6] - 8:21, 9:20, 30:7, 32:14, 33:13, 36:3
**between** [7] - 11:23, 11:24, 18:7, 30:24, 35:3, 37:10, 39:21
**beyond** [1] - 14:3
**bit** [3] - 7:14, 7:24, 23:6
**bless** [1] - 39:10
**Block** [2] - 5:19, 5:22
**BLOCK** [1] - 2:13
**blood** [1] - 32:11
**blower** [1] - 16:20
**bold** [1] - 37:10
**Boldt** [10] - 1:18, 4:11, 4:14, 4:20, 9:22, 22:4, 22:9, 29:9, 35:2, 41:5
**BOLDT** [45] - 1:17, 4:8, 4:10, 9:24, 10:18, 11:16, 12:2, 12:13, 12:18, 13:1, 13:15, 13:17, 14:19, 19:6, 19:8, 19:21, 20:14, 23:6, 23:10, 23:17, 24:1, 24:3, 24:6, 24:19, 25:1, 25:4, 25:16, 26:8, 26:24, 27:10, 28:7, 28:18, 29:12, 32:3, 33:4, 35:3, 35:12, 36:6, 38:21, 41:6, 41:22, 42:2, 42:13, 44:2, 44:4
**book** [1] - 44:8
**borders** [1] - 14:3
**box** [1] - 23:1
**brain** [1] - 31:21
**bridge** [1] - 12:22
**brief** [2] - 20:23, 42:20
**briefed** [7] - 15:12, 19:10, 23:19, 24:4, 24:5, 24:7
**briefing** [11] - 21:21, 21:25, 23:12, 23:15,

23:21, 23:22, 24:21, 28:16, 33:6, 40:9, 41:20
**briefly** [1] - 19:6
**bring** [5] - 16:16, 16:18, 16:24, 19:14, 21:5
**brought** [4] - 6:1, 13:9, 18:18, 34:15
**Brown** [1] - 1:18
**brunt** [1] - 3:21
**Bulan** [2] - 24:16, 40:15, 41:15
**burden** [2] - 8:12, 34:4
**BY** [1] - 1:22

# C

**CA** [1] - 2:12
**caliber** [1] - 30:17
**candid** [1] - 9:16
**cannot** [2] - 16:17, 19:4
**card** [3] - 39:24, 40:3, 40:4
**care** [1] - 39:14
**CARLOS** [2] - 1:4, 2:3
**Carlos** [4] - 3:3, 3:5, 3:7, 5:5
**Case** [1] - 1:2
**case** [63] - 3:2, 3:6, 3:7, 4:10, 4:22, 5:8, 6:4, 6:6, 6:12, 6:18, 8:6, 8:16, 9:17, 10:1, 10:2, 10:5, 10:6, 10:7, 10:16, 10:19, 11:3, 11:24, 12:4, 12:6, 12:23, 13:2, 13:3, 14:16, 16:6, 17:8, 19:17, 20:1, 20:2, 20:3, 20:9, 22:1, 22:19, 22:22, 23:7, 24:16, 24:21, 29:16, 30:9, 30:15, 30:16, 30:18, 31:18, 33:5, 33:10, 34:6, 34:9, 35:15, 36:13, 36:21, 37:4, 41:19, 42:18
**cases** [18] - 6:25, 9:25, 11:3, 14:1, 14:7, 14:8, 15:4, 15:6, 20:3, 20:8, 20:10, 20:12, 33:17, 33:18, 33:24, 37:16, 39:24, 39:25
**caution** [1] - 7:12
**Center** [1] - 2:8
**certain** [3] - 20:19,

31:8, 38:17
**certainly** [12] - 8:12, 13:4, 13:11, 17:10, 19:11, 20:23, 26:15, 28:20, 34:1, 35:5, 39:13, 42:15
**CERTIFICATION** [1] - 44:18
**CERTIFY** [1] - 44:20
**challenge** [1] - 29:19
**chamber** [1] - 39:17
**chambers** [1] - 39:23
**chance** [1] - 31:6
**change** [4] - 10:9, 20:6, 40:8, 44:10
**checking** [1] - 7:2
**Chicago** [4] - 19:5, 21:10, 21:12, 21:20
**Cindy** [1] - 24:16
**citations** [1] - 7:3
**cite** [1] - 15:24
**cited** [1] - 6:25
**cites** [1] - 7:4
**citizens** [1] - 26:6
**civil** [1] - 31:8
**Civil** [3] - 3:2, 7:17
**claim** [2] - 5:13, 7:19
**claiming** [1] - 11:3
**Claims** [7] - 15:18, 16:14, 17:18, 17:23, 18:17, 18:21
**claims** [6] - 7:16, 18:22, 19:3, 34:14, 36:18
**clarification** [2] - 13:25, 37:19
**clear** [1] - 34:5
**clearly** [2] - 19:9, 20:6
**clerk** [1] - 24:15
**CLERK** [4] - 24:17, 28:11, 28:14, 41:25
**client** [8] - 19:22, 19:23, 24:23, 31:1, 31:4, 31:5, 31:17, 31:18
**clients** [4] - 4:17, 31:13, 32:2
**Cliffs** [1] - 22:20
**close** [2] - 34:9, 34:14
**closer** [1] - 40:17
**CO** [1] - 1:13
**CO-RELATORS** [1] - 1:13
**cocounsel** [2] - 3:9, 5:14
**colleagues** [1] - 42:17
**commenting** [1] -

23:21
**commit** [1] - 40:11
**commitment** [1] - 37:7
**company** [3] - 7:18, 19:23, 34:4
**competing** [1] - 13:18
**Complaint** [28] - 15:17, 15:20, 15:25, 17:19, 17:21, 22:5, 22:13, 23:25, 24:23, 24:25, 27:8, 27:9, 28:19, 28:24, 29:2, 29:4, 29:8, 29:21, 32:14, 32:16, 33:7, 35:23, 36:3, 38:13, 39:4, 39:12, 40:10
**complaint** [4] - 9:19, 12:19, 14:13, 26:10
**Complaints** [5] - 17:6, 17:17, 20:13, 25:14, 35:1
**complaints** [1] - 11:5
**complete** [2] - 12:1, 21:25
**completed** [2] - 23:15, 24:22
**completely** [4] - 19:10, 21:1, 25:20, 35:4
**complexity** [1] - 41:19
**complying** [1] - 3:19
**computed** [1] - 40:20
**computing** [1] - 41:16
**concern** [1] - 27:10
**concerning** [1] - 9:18
**condition** [6] - 17:20, 18:1, 18:3, 18:4, 18:7, 18:8
**conduct** [1] - 29:21
**confer** [2] - 3:25, 4:2
**conference** [1] - 5:25
**conflict** [3] - 30:23, 30:25, 32:6
**conflicting** [1] - 11:9
**Congressional** [1] - 16:19
**connection** [2] - 14:3, 14:25
**consideration** [1] - 6:25
**considered** [1] - 19:12
**considering** [1] - 37:25
**consolidating** [1] -

16:2
**CONSOLIDATION** [1] - 1:8
**consolidation** [1] - 10:15
**Constitution** [1] - 32:5
**contingency** [1] - 38:2
**continue** [4] - 5:7, 20:9, 29:3, 29:7
**continued** [1] - 2:1
**convened** [1] - 3:1
**convenient** [1] - 39:7
**conviction** [1] - 31:11
**coordinate** [2] - 14:6, 33:19
**copies** [1] - 7:5
**CORNELL** [25] - 1:14, 3:5, 3:10, 3:17, 3:22, 4:5, 4:18, 4:23, 4:25, 5:3, 6:8, 8:9, 12:1, 25:5, 25:12, 25:19, 27:21, 28:2, 40:20, 40:24, 41:4, 41:10, 41:14, 41:17, 42:8
**Cornell** [11] - 1:14, 3:5, 3:8, 3:14, 4:3, 4:16, 27:15, 30:21, 30:22, 41:16, 44:7
**CORRECT** [1] - 44:20
**correct** [3] - 12:18, 34:10, 42:21
**corrected** [1] - 44:9
**corrupted** [1] - 31:5
**Counsel** [1] - 2:13
**counsel** [25] - 3:4, 3:9, 3:13, 3:16, 3:25, 4:2, 5:20, 12:24, 12:25, 20:3, 26:22, 30:6, 30:10, 30:14, 30:17, 30:18, 30:19, 34:16, 34:19, 34:23, 42:23, 43:2, 43:3, 43:11, 43:12
**count** [2] - 32:21
**country** [2] - 8:20, 9:6
**couple** [4] - 3:13, 16:7, 37:14, 38:10
**course** [3] - 13:19, 26:10, 43:18
**courses** [1] - 43:2
**COURT** [106] - 1:1, 3:8, 3:14, 3:18, 4:3, 4:6, 4:9, 4:14, 4:20, 4:24, 5:2, 5:4, 5:9,

5:16, 5:21, 5:23, 6:14, 8:1, 8:6, 8:14, 8:25, 9:11, 9:22, 10:17, 11:13, 11:22, 12:3, 12:14, 12:21, 13:13, 13:16, 13:25, 14:15, 14:23, 15:5, 17:4, 17:13, 18:3, 19:7, 19:20, 20:11, 21:3, 21:17, 21:24, 22:9, 23:9, 23:15, 23:23, 24:2, 24:5, 24:8, 24:12, 24:14, 24:18, 24:25, 25:2, 25:8, 25:17, 26:1, 26:20, 26:25, 27:2, 27:6, 27:15, 27:25, 28:4, 28:12, 28:15, 28:22, 29:9, 29:13, 29:24, 30:3, 32:4, 33:10, 34:7, 34:11, 34:24, 35:7, 35:19, 36:11, 38:20, 38:22, 39:10, 39:14, 40:13, 40:23, 41:3, 41:5, 41:7, 41:13, 41:15, 41:20, 41:24, 42:1, 42:3, 42:10, 42:15, 43:1, 43:9, 43:17, 43:19, 44:3, 44:5, 44:7, 44:13

**Court** [27] - 1:22, 3:1, 3:15, 6:8, 8:12, 9:2, 9:16, 10:12, 13:9, 16:2, 16:12, 16:13, 19:12, 21:12, 21:20, 25:6, 25:24, 26:15, 26:16, 30:23, 30:24, 31:2, 36:9, 43:7, 44:16, 44:22
**Court's** [5] - 13:5, 19:11, 38:17, 38:18, 42:9
**courthouse** [1] - 1:23
**courts** [4] - 17:21, 17:25, 18:10, 33:24
**Covington** [3] - 14:19, 14:21, 14:22
**crazy** [1] - 39:18
**create** [1] - 26:18
**criminal** [1] - 31:10
**crisis** [1] - 32:6
**critical** [2] - 18:5, 21:1
**cross** - 12:22, 22:23
**Crutcher** [1] - 2:11
**Culmo** [1] - 1:18
**current** [2] - 29:4,

39:7
**cushion** [1] - 37:12
**cut** [2] - 38:24, 39:5
**cuts** [1] - 39:4

## D

**date** [9] - 6:1, 10:3, 11:17, 19:17, 20:17, 27:13, 27:14, 27:17, 41:22
**DATE** [1] - 44:22
**dates** [1] - 11:4
**DAVID** [1] - 1:22
**days** [16] - 27:24, 27:25, 28:1, 32:13, 32:15, 32:20, 37:14, 38:17, 38:18, 40:11, 40:20, 40:21, 40:25, 41:9, 41:11, 41:18
**dead** [2] - 30:12, 35:9
**deal** [1] - 31:14
**dealing** [1] - 22:18
**decide** [4] - 11:2, 18:24, 22:25, 26:4
**decided** [7] - 5:7, 8:17, 14:16, 15:15, 23:13, 33:3, 33:22
**decides** [1] - 26:21
**deciding** [2] - 11:8, 38:25
**decision** [12] - 5:6, 11:11, 11:14, 11:21, 15:3, 18:5, 33:7, 34:11, 37:17, 38:18, 38:19
**decisions** [4] - 11:9, 33:25, 40:1, 40:5
**declined** [1] - 42:19
**declining** [1] - 42:18
**dedicated** [1] - 31:1
**defendant** [11] - 5:20, 7:21, 7:23, 8:17, 9:7, 28:22, 33:11, 33:18, 33:21, 35:7, 42:3
**defendant's** [2] - 12:8, 22:14
**defendants** [7] - 4:7, 5:10, 5:12, 7:14, 8:3, 8:5, 18:2
**defense** [3] - 10:7, 19:24, 24:6
**defenses** [1] - 36:19
**defensive** [1] - 31:16
**define** [1] - 36:21
**degree** [1] - 14:8
**delicate** [1] - 31:25

**denied** [1] - 21:20
**Department** [1] - 18:11
**depositions** [1] - 35:22
**designed** [1] - 27:19
**details** [2] - 16:10, 29:1
**determination** [3] - 14:12, 19:11, 34:8
**determine** [1] - 13:9
**determined** [1] - 35:16
**devil's** [1] - 22:15
**DIAZ** [2] - 1:4, 1:13
**Diaz** [7] - 3:3, 3:5, 3:7, 5:1, 25:6, 25:14, 25:21
**Diaz's** [1] - 5:12
**difference** [2] - 26:3, 32:9
**different** [11] - 7:15, 12:19, 13:22, 13:23, 13:24, 14:1, 26:4, 26:22, 33:19, 34:25, 38:13
**difficult** [1] - 23:3
**difficulties** [1] - 3:18
**difficulty** [1] - 22:13
**dig** [1] - 32:11
**directly** [1] - 23:7
**disadvantage** [1] - 31:5
**disagree** [1] - 18:11
**disagreement** [1] - 11:25
**disappoint** [1] - 4:4
**disclosed** [1] - 16:25
**disclosing** [1] - 33:16
**disclosure** [9] - 11:6, 16:11, 16:17, 16:22, 16:23, 17:5, 18:16, 19:22, 21:2
**disclosures** [1] - 37:2
**discovery** [18] - 6:11, 17:8, 23:4, 29:17, 30:7, 33:5, 33:15, 33:16, 33:23, 33:24, 34:4, 34:18, 34:22, 36:4, 36:19
**discrimination** [3] - 5:13, 7:16, 7:20
**discussion** [2] - 39:23, 44:12
**disfavored** [1] - 36:1
**dismiss** [36] - 8:18, 8:19, 11:1, 15:12, 16:8, 17:2, 17:11,

17:13, 19:9, 19:13, 21:15, 21:22, 23:13, 23:16, 23:18, 23:19, 23:25, 24:1, 24:3, 25:2, 25:18, 30:6, 30:10, 33:22, 33:25, 35:24, 35:25, 38:3, 38:5, 38:18, 39:1, 40:10, 40:11, 42:7, 42:20, 43:24
**dismissed** [2] - 10:8, 20:4
**dispositive** [2] - 6:5, 6:10
**dispute** [1] - 6:17
**disputes** [1] - 36:19
**distinct** [1] - 35:24
**distinction** [3] - 17:25, 18:6, 18:7
**DISTRICT** [3] - 1:1, 1:1, 1:9
**district** [2] - 27:18, 42:17
**District** [4] - 10:20, 14:11, 14:18, 42:18
**ditches** [1] - 32:12
**DIVISION** [1] - 1:2
**docket** [3] - 24:14, 24:17, 39:14
**document** [3] - 26:17, 26:19, 36:20
**documents** [1] - 22:3
**DOJ** [1] - 18:18
**done** [5] - 6:12, 23:12, 30:7, 31:12, 35:23
**dot** [1] - 22:23
**double** [1] - 7:2
**double-checking** [1] - 7:2
**doubt** [1] - 35:15
**down** [13] - 4:5, 10:11, 12:22, 14:23, 30:15, 33:12, 33:15, 34:9, 34:14, 36:13, 36:25, 37:18, 38:24
**drafting** [1] - 7:7
**dramatically** [1] - 38:13
**Drive** [1] - 1:15
**drop** [1] - 3:16
**due** [7] - 7:8, 10:13, 11:17, 37:9, 37:23, 40:10, 40:14
**Dunn** [1] - 2:11

## E

**e-mail** [1] - 14:5

**earlier-filed** [1] - 20:1
**early** [1] - 21:8
**earn** [1] - 32:7
**easier** [1] - 30:4
**educate** [2] - 9:23, 12:5
**Education** [2] - 12:11, 17:20
**efficiency** [1] - 16:1
**efficient** [2] - 36:5, 38:23
**effort** [1] - 7:25
**EHRLICH** [1] - 1:22, 44:22
**Ehrlich** [1] - 44:11
**Eisenberg** [2] - 5:11, 7:6
**EISENBERG** [8] - 2:7, 5:11, 5:18, 5:22, 7:6, 8:4, 8:11, 14:20
**Eisenberg's** [1] - 6:9
**either** [1] - 12:4
**elected** [2] - 9:14, 43:14
**element** [1] - 16:22
**elements** [2] - 36:18, 37:1
**eligible** [1] - 12:17
**emergency** [1] - 39:23
**emotional** [3] - 31:14, 31:22
**employees** [1] - 35:17
**employment** [3] - 6:4, 11:24, 12:4
**encourage** [2] - 6:21, 36:24
**end** [1] - 32:8
**entered** [3] - 4:25, 14:22, 33:5
**entertain** [1] - 42:11
**entire** [1] - 29:16
**entirely** [2] - 14:1, 16:13
**ENTITLED** [1] - 44:21
**entry** [1] - 24:14
**envision** [1] - 38:13
**especially** [3] - 26:5, 34:2, 37:5
**ESQ** [6] - 1:17, 1:18, 2:3, 2:7, 2:10, 2:13
**essentially** [1] - 15:18
**established** [1] - 21:21
**ET** [1] - 1:6
**etc** [2] - 10:8, 13:10

evaluate [1] - 29:5
evaluated [1] - 16:1
exactly [3] - 19:21, 25:15, 26:12
exam [3] - 27:17, 44:5
examination [1] - 3:12
exceed [1] - 6:10
except [1] - 32:2
Executive [1] - 1:15
existing [1] - 29:2
expect [2] - 3:12, 29:18
expected [1] - 27:14
expeditiously [1] - 33:1
expense [1] - 34:4
explain [2] - 40:1, 40:2
extend [1] - 10:25
extension [3] - 8:7, 23:24, 37:14
extent [1] - 31:8

## F

face [2] - 22:5, 27:9
fact [6] - 6:4, 13:4, 28:25, 32:10, 32:15, 42:24
facts [6] - 6:17, 6:19, 18:22, 26:18, 28:21, 33:13
factual [4] - 13:7, 19:3, 19:14, 19:24
factually [1] - 35:9
fade [1] - 22:2
fail [1] - 38:10
fail-safe [1] - 38:10
faint [1] - 32:10
fair [1] - 34:4
fairly [3] - 20:19, 31:2, 31:4
False [7] - 15:18, 16:14, 17:18, 17:23, 18:16, 18:17, 18:21
false [1] - 22:17
fashion [2] - 26:4, 26:17
fastidious [1] - 7:2
felt [1] - 17:11
Ferguson [1] - 1:23
figure [2] - 12:7, 38:24
file [36] - 6:16, 10:8, 13:10, 13:17, 15:12, 15:13, 16:4, 16:8, 18:15, 19:2, 20:4,

20:5, 21:1, 21:15, 21:23, 26:17, 28:23, 29:3, 29:6, 30:8, 32:13, 32:20, 34:3, 34:7, 34:9, 35:7, 36:8, 37:14, 38:2, 38:14, 38:23, 39:1, 39:4, 40:18, 43:4, 43:15
filed [30] - 3:6, 3:24, 4:16, 6:8, 8:17, 9:12, 9:19, 10:4, 10:6, 10:11, 10:24, 11:4, 11:5, 16:3, 16:5, 16:6, 16:7, 19:4, 19:17, 20:1, 21:12, 22:1, 23:20, 24:10, 24:12, 26:11, 34:16, 34:20, 40:11, 43:1
filing [9] - 8:2, 8:4, 10:3, 16:5, 20:17, 21:11, 27:7, 37:10, 39:11
filings [2] - 9:21, 43:8
final [2] - 7:13, 10:14
fine [3] - 41:4, 41:5, 41:7
finished [1] - 6:11
firm [1] - 23:13
first [44] - 5:2, 9:12, 9:19, 10:4, 10:6, 10:7, 11:4, 13:6, 13:10, 13:17, 14:20, 14:24, 15:12, 15:16, 15:19, 16:4, 16:5, 16:8, 16:16, 18:15, 19:2, 19:9, 19:17, 20:4, 20:5, 21:1, 21:6, 21:23, 23:12, 25:18, 26:11, 29:3, 29:24, 33:22, 34:3, 34:7, 34:8, 34:16, 34:20, 35:7, 38:14, 38:23, 42:20
First [1] - 23:25
first-filed [3] - 9:19, 10:6, 19:17
first-to-file [10] - 13:17, 16:4, 16:8, 18:15, 19:2, 21:1, 21:23, 29:3, 38:14, 38:23
fit [1] - 19:9
five [1] - 41:18
FL [1] - 1:15, 1:19, 2:5, 2:9
flesh [1] - 29:2
flexibility [1] - 42:10
Floor [1] - 2:9
FLORIDA [2] - 1:1,

1:4
Florida [2] - 1:24, 10:1
flow [1] - 11:6
focus [2] - 23:4, 37:21
focused [4] - 6:23, 20:17, 29:17, 31:21
focusing [1] - 17:14
FOR [4] - 1:13, 1:16, 2:2, 2:6
FOREGOING [1] - 44:20
forging [1] - 26:14
former [1] - 35:17
formulate [1] - 37:2
formulated [1] - 10:13
formulating [1] - 10:22
forum [3] - 31:7, 34:11, 35:20
forums [1] - 33:19
forward [4] - 18:23, 19:4, 44:3, 44:14
four [3] - 9:5, 9:24, 33:19
frame [2] - 19:8, 22:16
framed [1] - 22:13
frankly [1] - 25:23
fraud [2] - 13:22, 17:24
frauds [1] - 14:2
Friday [1] - 3:12
FROM [1] - 44:20
fully [6] - 6:24, 23:18, 24:4, 24:5, 24:7, 29:18
functioning [1] - 3:9
funding [1] - 18:5
future [1] - 3:20

## G

gained [1] - 16:1
gather [1] - 12:8, 25:6, 25:12
general [1] - 5:19
General [1] - 2:13
generated [1] - 31:15
gentleman [1] - 5:16
Gibson [1] - 2:11
Gillespie [8] - 4:12, 4:13, 4:18, 4:19, 4:21, 23:13, 24:23, 25:15
GILLESPIE [1] - 1:16
given [1] - 11:17, 13:3, 33:11, 38:16,

41:19
goal [1] - 31:10
God [1] - 39:10
gold [1] - 39:15
govern [1] - 13:5
GOVERNMENT [1] - 2:2
government [17] - 5:6, 8:17, 9:5, 9:14, 15:3, 17:24, 18:5, 18:8, 18:11, 18:19, 18:23, 18:24, 27:3, 31:10, 42:19, 42:24
grade [1] - 27:22
Grand [1] - 2:11
grant [2] - 8:14, 25:2
granting [1] - 25:6
ground [1] - 15:19
grounds [1] - 17:15
group [3] - 35:8, 35:15, 35:16
gun [1] - 30:13

## H

hac [1] - 5:14
hand [1] - 33:14, 43:11
handle [2] - 13:8, 38:3
handled [1] - 13:6, 14:8, 14:10
handling [2] - 12:23, 42:18
hard [2] - 6:17, 31:13
HATCH [23] - 2:10, 15:7, 17:5, 17:16, 18:4, 20:21, 21:4, 21:19, 22:8, 22:11, 24:10, 24:13, 28:25, 29:18, 30:1, 33:23, 34:10, 34:14, 38:12, 39:3, 39:13, 40:8, 44:1
Hatch [1] - 5:14
hear [1] - 6:5
heard [7] - 6:4, 11:18, 16:19, 16:21, 21:20, 28:7, 43:19
HEARING [1] - 1:8
hearing [5] - 16:19, 28:6, 37:20, 38:2, 43:23
held [1] - 33:24
help [6] - 6:21, 22:12, 24:6, 31:19, 32:5, 39:17
helpful [4] - 21:24, 24:8, 26:9, 38:8

helping [3] - 8:16, 31:17, 31:18
helps [6] - 7:4, 23:4, 31:21, 36:16, 36:19, 36:21
Higher [1] - 17:20
highly [3] - 13:7, 19:24, 39:6
himself [1] - 25:24
history [1] - 3:15
hold [2] - 3:19, 21:17
holiday [3] - 41:1, 41:10, 41:12
HON [1] - 1:9
honestly [2] - 31:2, 31:4
Honor [53] - 3:10, 3:22, 3:23, 4:8, 4:11, 5:5, 5:11, 7:6, 7:13, 8:9, 8:24, 9:24, 10:20, 12:1, 15:2, 15:7, 16:17, 19:6, 20:18, 20:21, 21:4, 22:8, 22:11, 23:20, 24:20, 25:1, 25:5, 25:20, 26:8, 27:1, 28:25, 29:18, 33:4, 33:23, 34:1, 34:2, 34:10, 34:14, 36:7, 38:12, 39:3, 39:13, 40:8, 41:6, 41:14, 41:17, 41:22, 42:14, 42:21, 42:22, 43:16, 44:1, 44:6
hope [2] - 7:11, 16:9
hopefully [4] - 7:1, 32:8, 32:24, 38:15
human [4] - 31:17, 31:19, 32:5, 32:6

## I

I's [1] - 22:24
idea [1] - 7:9
identical [2] - 21:13, 35:5
identify [1] - 37:20
ignored [1] - 18:2
illegal [1] - 33:12
Illinois [10] - 10:1, 10:10, 13:3, 15:22, 20:2, 20:12, 20:15, 20:18, 21:10, 21:18
implicating [1] - 30:1
impression [2] - 23:16, 35:24
improper [3] - 43:4, 43:5, 43:6
IN [1] - 44:21

**include** [1] - 40:21
**including** [2] - 9:25, 41:9
**incoming** [1] - 33:3
**incorrect** [1] - 42:21
**indeed** [2] - 8:24, 9:19
**individual** [2] - 5:13, 7:21
**information** [11] - 10:4, 10:12, 13:15, 13:19, 13:22, 16:25, 20:13, 20:18, 27:11, 35:11, 35:14
**initial** [2] - 6:21, 8:18
**instead** [1] - 8:7
**interest** [2] - 18:20, 19:1
**interests** [1] - 18:24
**interferes** [1] - 31:23
**interim** [1] - 35:20
**International** [1] - 2:8
**intervene** [4] - 8:17, 15:4, 42:19
**intervenes** [1] - 18:18
**intervening** [1] - 40:21
**intervention** [2] - 5:7, 14:12
**introduce** [1] - 24:15
**invariably** [1] - 37:13
**involve** [1] - 42:25
**involved** [3] - 6:2, 14:16, 31:20
**involvement** [3] - 23:7, 35:9, 42:22
**involves** [2] - 15:16, 19:3
**irrelevant** [1] - 21:1
**IS** [1] - 44:20
**issue** [32] - 7:7, 13:12, 13:17, 15:16, 16:13, 17:1, 17:7, 17:10, 17:16, 17:17, 18:9, 18:12, 18:14, 18:15, 18:24, 19:5, 19:12, 19:13, 19:16, 20:10, 20:24, 21:1, 21:10, 27:8, 28:20, 34:3, 37:19, 38:14, 43:13
**issues** [31] - 6:18, 11:6, 11:7, 12:8, 13:4, 15:7, 15:25, 16:11, 19:8, 19:14, 19:23, 19:24, 21:6, 21:23, 22:6, 22:21, 24:22, 30:1, 31:6, 31:15,

31:25, 32:24, 35:15, 36:4, 36:22, 37:6, 37:21, 38:16, 39:1, 39:9
**itself** [1] - 42:25

## J

**J-a-n-i-c-e** [1] - 5:22
**JANICE** [1] - 2:13
**Janice** [2] - 5:19, 5:22
**Jennifer** [1] - 6:9
**jobs** [1] - 31:17
**join** [1] - 39:1
**Jr** [1] - 1:23
**JR** [1] - 1:14
**Judge** [12] - 4:5, 4:11, 12:2, 12:13, 14:18, 14:19, 14:20, 14:21, 26:24, 36:16, 38:21, 44:2
**JUDGE** [1] - 1:9
**judge** [7] - 11:8, 14:21, 20:10, 32:1, 33:3, 37:4, 40:20
**Judge's** [1] - 30:4
**judgment** [2] - 7:7, 30:8, 37:8
**July** [11] - 24:13, 40:15, 40:16, 40:25, 41:11, 41:13, 41:24, 41:25, 42:1, 42:9
**June** [4] - 24:10, 40:13, 40:18, 40:25
**jurisdiction** [1] - 13:5
**jurisdictional** [7] - 13:4, 14:25, 16:14, 16:25, 18:16, 34:3, 34:5
**jury** [4] - 22:16, 22:18, 22:22, 23:2
**justice** [1] - 31:12
**Justice** [1] - 18:11

## K

**Kaplan** [14] - 2:13, 3:3, 5:20, 7:21, 9:7, 9:25, 10:7, 10:19, 20:1, 20:15, 20:20, 20:22, 20:25
**KAPLAN** [1] - 1:6, 2:6
**Kaplan's** [2] - 15:9, 42:21
**keep** [4] - 7:12, 31:21, 37:7, 40:14

**keeping** [1] - 43:17
**Kimberly** [1] - 4:11
**KIMBERLY** [1] - 1:17
**kind** [1] - 31:9
**kinds** [1] - 29:16
**knows** [3] - 6:8, 22:18, 30:22

## L

**lack** [1] - 9:20
**laid** [1] - 26:18
**large** [1] - 14:8
**last** [2] - 22:1, 24:9
**law** [8] - 23:13, 24:15, 26:1, 26:5, 30:4, 31:14, 32:2, 32:9
**LAW** [4] - 24:17, 28:11, 28:14, 41:25
**lawsuit** [2] - 26:4, 31:15
**lawyers** [13] - 5:24, 6:22, 7:4, 10:10, 22:19, 22:23, 25:10, 27:19, 31:8, 31:9, 31:17, 37:5, 42:1
**lay** [1] - 36:9
**leaning** [1] - 38:6
**learned** [1] - 19:22
**learning** [1] - 16:7
**least** [1] - 24:22, 27:25, 33:2
**leave** [5] - 3:25, 4:8, 25:3, 25:7, 33:6
**left** [1] - 5:19
**legal** [4] - 11:5, 15:16, 15:18, 17:16, 18:9, 29:22, 36:18, 38:14
**less** [2] - 43:9, 43:17
**letters** [1] - 37:10
**light** [4] - 6:20, 34:2, 37:1, 40:8
**limit** [2] - 6:10, 6:21
**limitations** [1] - 30:13
**limited** [1] - 41:18
**list** [1] - 17:7
**literally** [1] - 11:4
**litigation** [1] - 31:20
**living** [1] - 32:7
**loans** [1] - 12:17
**local** [6] - 3:9, 3:13, 3:15, 3:19, 6:16, 14:2
**location** [1] - 10:19
**logistically** [1] - 26:12
**long-pending** [1] -

40:6
**look** [18] - 3:20, 7:3, 12:7, 13:18, 16:2, 19:17, 22:14, 22:15, 30:18, 30:19, 32:16, 37:5, 38:23, 43:1, 44:3, 44:13
**looked** [2] - 20:16, 24:22
**looking** [9] - 4:3, 10:3, 11:4, 14:4, 22:4, 22:5, 26:2, 28:12, 35:17
**Los** [1] - 2:12
**lost** [1] - 22:3
**loved** [1] - 32:1
**luck** [1] - 44:5
**lunch** [1] - 30:14

## M

**Magistrate** [1] - 36:16
**magnuses** [1] - 37:16
**mail** [3] - 3:16, 14:5
**main** [2] - 37:10
**March** [1] - 40:6
**material** [3] - 6:19, 12:16, 12:19
**matter** [2] - 16:6, 26:5
**MATTER** [1] - 44:21
**matters** [1] - 21:5
**MDL** [23] - 9:9, 9:11, 10:11, 10:13, 10:14, 10:15, 11:1, 11:2, 11:11, 11:15, 11:16, 15:10, 15:24, 16:13, 21:7, 21:11, 21:20, 28:6, 32:24, 33:18, 34:19, 43:20
**mean** [8] - 11:4, 18:3, 29:10, 29:15, 31:13, 33:9, 34:8, 38:6
**means** [2] - 6:22, 32:21
**meantime** [2] - 32:23, 43:19
**meet** [1] - 16:15
**meeting** [1] - 5:24
**memorandum** [1] - 6:20
**Memorial** [1] - 28:14
**memories** [1] - 22:2
**merely** [1] - 3:16
**merits** [1] - 9:18
**Merryday** [1] - 14:20

**Messrs** [2] - 4:17, 6:3
**met** [1] - 26:14
**MIAMI** [2] - 1:2, 1:4
**Miami** [5] - 1:19, 1:24, 1:24, 2:5, 2:9
**microphone** [1] - 9:1
**Middle** [4] - 10:20, 14:11, 14:18, 42:18
**might** [4] - 33:12, 39:9, 40:8, 43:3
**mighty** [1] - 25:11
**mind** [3] - 37:7, 40:14, 43:17
**mine** [1] - 14:24
**minimum** [1] - 6:24
**misimpression** [1] - 23:23
**misrepresentations** [2] - 12:16, 12:20
**Miss** [15] - 4:14, 4:15, 4:20, 6:9, 9:22, 22:4, 22:9, 29:9, 35:2, 40:15, 41:5, 41:15
**moment** [1] - 10:23
**Monday** [2] - 10:13, 11:18
**monies** [1] - 18:6
**monitored** [1] - 14:8
**month** [5] - 11:21, 37:9, 40:6, 40:16
**months** [4] - 15:14, 16:3, 39:25, 40:2
**moot** [1] - 36:14
**moreover** [1] - 29:6
**most** [2] - 27:4, 32:9
**motion** [80] - 6:8, 6:12, 6:14, 6:24, 8:2, 8:4, 8:14, 8:18, 9:9, 9:11, 10:13, 10:25, 12:5, 15:9, 15:10, 15:12, 15:13, 15:16, 15:19, 16:3, 16:4, 16:6, 16:8, 17:11, 17:13, 18:12, 18:15, 19:10, 19:13, 21:7, 21:11, 21:12, 21:15, 21:21, 21:22, 23:12, 23:16, 23:17, 23:18, 23:19, 23:25, 24:1, 24:3, 24:19, 25:2, 25:18, 28:17, 28:23, 29:3, 29:5, 29:7, 29:20, 30:5, 30:8, 30:9, 32:18, 32:19, 32:22, 33:22, 35:24, 36:8, 37:8, 38:3, 38:10, 38:18, 38:23, 39:1, 39:4, 39:8, 39:11, 40:10, 40:11,

42:5, 42:6, 42:11, 42:20, 43:24

**motions** [20] - 6:6, 6:10, 8:13, 15:11, 15:15, 15:22, 16:12, 17:2, 19:8, 21:25, 23:18, 23:24, 33:2, 33:25, 35:25, 37:11, 38:4, 39:19, 40:6

**move** [2] - 32:25, 39:24

**moved** [2] - 21:18, 21:19

**moving** [3] - 12:4, 21:19, 32:24

**MR** [60] - 3:5, 3:10, 3:17, 3:22, 4:5, 4:18, 4:23, 4:25, 5:3, 5:5, 6:8, 8:9, 8:24, 9:3, 9:14, 12:1, 14:7, 15:2, 15:7, 17:5, 17:16, 18:4, 20:21, 21:4, 21:19, 22:8, 22:11, 24:10, 24:13, 25:5, 25:12, 25:19, 27:1, 27:3, 27:21, 28:2, 28:25, 29:18, 30:1, 33:23, 34:10, 34:14, 38:12, 39:3, 39:13, 40:8, 40:20, 40:24, 41:4, 41:10, 41:14, 42:16, 43:6, 43:16, 43:18, 44:1, 44:6

**MS** [51] - 3:2, 4:8, 4:10, 5:11, 5:18, 5:22, 7:6, 8:4, 8:11, 9:24, 10:18, 11:16, 12:2, 12:13, 12:18, 13:1, 13:15, 13:17, 14:19, 14:20, 19:6, 19:8, 19:21, 20:14, 23:6, 23:10, 23:17, 24:1, 24:3, 24:6, 24:19, 25:1, 25:4, 25:16, 26:8, 26:24, 27:10, 28:7, 28:18, 29:12, 32:3, 33:4, 35:3, 36:6, 38:21, 41:6, 41:22, 42:2, 42:13, 44:2, 44:4

**multiple** [2] - 26:3, 43:8

**musketeers** [2] - 25:11, 26:22

**must** [3] - 11:16, 14:24, 16:15

# N

**name** [1] - 40:4
**named** [2] - 7:20, 9:8
**national** [2] - 14:7, 40:3
**nature** [2] - 11:7, 13:7
**NE** [1] - 2:4
**near** [1] - 9:1
**nearest** [1] - 9:4
**necessary** [2] - 6:16, 7:11, 8:13
**need** [20] - 5:25, 7:22, 8:7, 9:11, 22:2, 22:16, 22:19, 27:7, 27:13, 28:21, 29:16, 30:22, 36:4, 37:4, 37:19, 37:21, 37:25, 38:15, 42:6, 42:24
**needs** [4] - 29:13, 36:25, 44:9
**NEF** [1] - 40:23
**neutral** [1] - 8:21
**Nevada** [10] - 10:2, 10:3, 10:5, 10:9, 20:1, 20:2, 20:5, 20:12, 20:16, 20:18
**never** [3] - 27:21, 30:25, 31:14
**new** [6] - 10:4, 29:4, 29:6, 38:13, 39:4, 39:12
**newspaper** [2] - 16:18, 29:14
**next** [6] - 3:13, 5:16, 11:19, 11:20, 11:21, 28:8
**nice** [1] - 39:22
**none** [1] - 33:11
**nonetheless** [1] - 20:9
**Northeast** [1] - 1:19
**northern** [1] - 27:18
**Notes** [1] - 22:20
**nothing** [2] - 19:11, 34:21
**notice** [4] - 3:6, 4:16, 4:25, 18:23
**notify** [1] - 32:17
**number** [5] - 3:2, 5:24, 17:1, 18:9, 38:17
**numbers** [1] - 32:11
**nut** [1] - 12:13

# O

**oath** [1] - 32:4
**objection** [2] - 4:1, 6:11
**observe** [1] - 5:8
**obvious** [1] - 15:14
**obviously** [8] - 7:8, 8:11, 11:3, 19:9, 27:11, 29:6, 39:7, 42:9
**OF** [2] - 1:1, 44:21
**off-the-record** [1] - 44:12
**Office** [3] - 2:4, 14:15, 42:17
**officer** [2] - 30:24, 31:2
**officers** [1] - 30:22
**Offices** [1] - 14:5
**Official** [2] - 1:22, 44:22
**often** [3] - 30:15, 38:1, 38:4
**OIG** [1] - 16:20
**ON** [1] - 1:8
**Once** [1] - 13:17
**once** [4] - 4:1, 11:11, 14:15, 32:1
**One** [1] - 2:9
**one** [42] - 7:7, 7:17, 8:2, 8:4, 9:8, 9:12, 10:24, 11:8, 12:23, 14:1, 15:13, 15:23, 17:1, 17:16, 18:14, 18:22, 20:9, 20:17, 24:3, 24:9, 25:14, 26:17, 26:19, 26:21, 28:18, 32:1, 33:4, 33:20, 34:12, 34:24, 34:25, 35:8, 36:15, 36:17, 36:20, 36:25, 37:13, 40:14, 41:10, 41:22, 43:8, 44:9
**ones** [1] - 14:1
**open** [1] - 34:17
**opportunity** [2] - 3:25, 4:1
**opposed** [3] - 21:8, 29:24, 31:22
**opposing** [1] - 30:17
**opposition** [2] - 15:24, 24:10
**opus** [1] - 37:16
**oral** [4] - 11:19, 11:20, 37:18, 38:4
**order** [11] - 14:22, 16:15, 18:25, 33:5, 36:12, 36:14, 36:15,

37:22, 37:24, 38:6
**orders** [1] - 39:22
**ordinarily** [2] - 36:11, 38:9
**oriented** [1] - 32:7
**original** [16] - 11:7, 13:10, 13:13, 13:15, 13:18, 13:21, 13:23, 16:11, 16:24, 19:14, 19:18, 20:25, 23:17, 23:18, 29:21, 42:4
**otherwise** [1] - 11:8
**ourselves** [1] - 26:11
**outside** [1] - 27:23
**overcome** [1] - 9:20
**overlap** [1] - 35:6
**overly** [1] - 12:12
**own** [1] - 12:24

# P

**P.A** [1] - 1:18
**PAGE** [1] - 1:6
**page** [1] - 6:21
**pages** [10] - 6:10, 6:15, 6:18, 6:24, 7:10, 7:12, 7:24, 8:2, 8:8, 8:10
**paired** [1] - 36:16
**panel** [7] - 9:9, 9:11, 10:14, 10:15, 11:2, 11:11, 34:20
**paper** [5] - 36:17, 39:2, 39:18, 39:20, 39:21
**papers** [8] - 15:24, 18:6, 32:17, 32:18, 33:8, 38:3, 38:7, 39:7
**Park** [1] - 1:15
**part** [2] - 22:14, 26:22
**participation** [1] - 18:7
**particular** [2] - 14:10, 29:13
**particularities** [2] - 22:12, 29:16
**particularity** [1] - 15:20
**particularly** [1] - 30:21
**parties** [9] - 7:1, 11:24, 22:21, 26:2, 26:3, 36:24, 37:6, 37:13, 37:21
**partner** [1] - 6:9
**party** [1] - 18:19
**party's** [1] - 43:8
**PATRICIA** [1] - 1:9

**pause** [1] - 35:22
**payment** [5] - 17:20, 18:1, 18:3, 18:4, 18:8
**Peace** [1] - 22:20
**pending** [13] - 9:8, 14:6, 18:22, 19:3, 21:22, 21:25, 29:20, 33:25, 38:10, 38:11, 39:11, 40:1, 40:6
**Pennsylvania** [9] - 10:1, 10:6, 13:2, 15:23, 20:4, 20:5, 20:11, 20:14, 20:19
**people** [7] - 8:22, 23:18, 19:20, 30:23, 31:21, 32:9, 33:15
**people's** [1] - 22:2
**percolating** [1] - 32:23
**perhaps** [1] - 38:16
**permission** [1] - 25:25
**permit** [1] - 15:3
**person's** [1] - 31:19
**personally** [1] - 9:18
**perspective** [4] - 15:9, 22:16, 30:4, 31:19
**phase** [1] - 17:12
**philosophy** [1] - 43:10
**piece** [2] - 36:17, 39:2
**pieces** [2] - 39:18, 39:21
**pin** [1] - 7:4
**pinpointing** [1] - 7:2
**Pittsburgh** [5] - 21:7, 34:15, 34:16, 34:22, 34:23
**place** [2] - 33:6, 33:20
**plaintiff** [1] - 12:10
**plaintiff's** [1] - 43:3
**plaintiffs** [8] - 4:8, 4:9, 18:1, 25:10, 32:19, 35:20, 42:5, 42:6
**plaintiffs'** [1] - 42:23
**plan** [2] - 28:20, 32:22
**planning** [1] - 38:2
**play** [1] - 22:15
**pleading** [1] - 28:20
**plus** [3] - 3:24, 40:21, 41:10
**podium** [1] - 9:1
**point** [12] - 7:8, 11:10, 13:25, 15:11, 16:9, 19:25, 20:7,

21:3, 22:24, 23:8, 23:11, 33:4

**polarized** [1] - 31:16
**position** [17] - 9:15, 10:9, 10:14, 10:21, 12:9, 13:23, 17:11, 19:24, 20:2, 20:6, 27:3, 31:16, 32:25, 33:11, 33:13, 36:9, 42:20
**positions** [1] - 10:24
**positive** [1] - 20:16
**possibility** [1] - 28:24
**possible** [1] - 9:3
**possibly** [3] - 8:19, 11:9, 19:10
**posture** [1] - 33:3
**potential** [1] - 27:20
**potentially** [2] - 28:19, 34:22
**practice** [2] - 32:1, 42:16
**practicing** [1] - 30:3
**precedence** [1] - 9:12
**predicted** [1] - 34:1
**predominate** [1] - 34:12
**prefer** [4] - 23:21, 25:22, 25:23, 42:22
**preference** [1] - 43:7
**prejudge** [1] - 35:25
**prejudging** [1] - 36:1
**prerequisites** [1] - 16:15
**present** [5] - 8:6, 23:1, 32:17, 32:18, 42:23
**presented** [1] - 14:13
**President** [1] - 7:21
**pressed** [1] - 6:18
**presume** [2] - 6:5, 11:25
**pretrial** [3] - 37:3, 37:9, 37:11
**pretty** [3] - 7:9, 15:1, 27:16
**prevail** [1] - 34:13
**prevails** [1] - 35:7
**prevent** [1] - 17:24
**preventing** [1] - 19:11
**previously** [1] - 3:24
**primarily** [2] - 17:13, 20:17
**printing** [1] - 39:20
**prior-filed** [1] - 16:6
**pro** [1] - 5:14
**problem** [4] - 25:19,

26:16, 34:5, 41:19
**problems** [2] - 11:8, 42:11
**procedural** [1] - 21:4
**proceed** [5] - 11:12, 13:11, 23:22, 27:4, 35:16
**proceeding** [1] - 35:21
**proceedings** [4] - 15:11, 21:13, 21:14
**PROCEEDINGS** [1] - 44:21
**proceeds** [1] - 35:8
**process** [6] - 10:21, 22:21, 27:12, 31:20, 36:23, 39:21
**program** [1] - 18:8
**properly** [2] - 15:17, 18:1
**prosecute** [1] - 34:17
**prosecuted** [1] - 18:18
**prosecuting** [1] - 35:10
**protect** [2] - 19:1, 35:19
**protected** [1] - 18:25
**proven** [1] - 37:1
**provide** [3] - 18:6, 32:6, 33:19
**provision** [1] - 17:20
**prudent** [1] - 27:4
**public** [9] - 11:6, 16:10, 16:16, 16:22, 16:23, 17:5, 18:16, 19:22, 21:2
**publicly** [1] - 16:25
**punch** [1] - 17:7
**purely** [1] - 10:3
**purpose** [4] - 17:22, 18:23, 27:17, 36:15
**purposes** [1] - 10:12
**pursue** [2] - 17:7, 17:9
**put** [7] - 6:19, 18:23, 24:24, 29:15, 34:4, 37:24, 39:21
**puts** [1] - 33:13

**Q**

**questions** [1] - 27:20
**Qui** [17] - 3:7, 4:10, 4:12, 4:22, 5:13, 5:15, 6:1, 8:16, 8:20, 9:6, 9:19, 9:20, 11:24, 12:6, 14:1, 14:13, 26:5

**quick** [1] - 27:16
**quickly** [1] - 36:21
**quiet** [1] - 6:3
**quit** [1] - 22:25
**quite** [1] - 21:15
**quote** [1] - 26:6

**R**

**race** [2] - 7:16, 7:20
**raise** [3] - 17:11, 42:5, 43:14
**raised** [10] - 10:7, 15:19, 16:11, 17:1, 17:6, 18:12, 18:13, 19:5, 21:6
**raises** [4] - 18:22, 19:3, 19:24, 21:23
**raising** [3] - 16:8, 38:14, 39:8
**rapidly** [1] - 32:25
**Rash** [1] - 1:18
**rather** [4] - 30:4, 30:9, 32:25, 38:24
**rational** [2] - 31:21, 31:23
**Raurell** [3] - 5:5, 5:9, 8:20
**RAURELL** [14] - 2:3, 5:5, 8:24, 9:3, 9:14, 14:7, 15:2, 27:1, 27:3, 42:14, 42:16, 43:6, 43:16, 43:18
**reaction** [1] - 6:21
**read** [5] - 16:18, 27:19, 27:20, 37:16, 38:7
**readopt** [1] - 25:25
**ready** [4] - 6:5, 6:6, 6:12, 19:10
**real** [3] - 18:19, 37:2, 41:15
**realized** [1] - 41:17
**really** [14] - 6:15, 7:4, 12:10, 13:7, 13:12, 22:21, 27:2, 30:5, 30:19, 31:1, 31:13, 36:25, 37:19, 44:3
**realtors** [3] - 12:24, 35:8, 35:21
**realtors'** [1] - 12:25
**reason** [6] - 5:25, 7:11, 7:13, 10:24, 11:2, 16:4
**reasons** [3] - 10:19, 15:14, 15:23
**rebuttal** [1] - 42:4
**receiving** [1] - 43:8
**recently** [2] - 9:17,

10:2
**recess** [1] - 44:15
**recessed** [1] - 44:16
**recognize** [1] - 37:3
**recollection** [2] - 17:15, 36:20
**record** [5] - 7:1, 7:3, 37:16, 44:11, 44:12
**RECORD** [1] - 44:20
**redraft** [1] - 6:22
**reduce** [1] - 22:20
**reference** [1] - 33:4
**references** [1] - 7:1
**referred** [2] - 38:15, 44:8
**refile** [1] - 25:24
**refresh** [2] - 17:15, 36:20
**regard** [6] - 7:23, 15:9, 15:10, 17:10, 29:7, 40:9
**regarding** [1] - 15:16
**regulation** [1] - 29:22
**regulatory** [2] - 17:22, 17:23
**related** [3] - 9:6, 14:2, 18:22
**relating** [1] - 34:3
**relationship** [4] - 11:23, 26:13, 26:15, 31:18
**relator** [6] - 4:22, 16:23, 16:24, 20:14, 20:19, 20:24
**relator's** [1] - 42:23
**RELATORS** [1] - 1:13
**relators** [23] - 4:10, 4:12, 9:8, 13:2, 13:3, 16:15, 20:7, 20:11, 20:21, 21:6, 21:11, 21:17, 22:4, 23:10, 24:10, 26:6, 32:20, 33:12, 34:15, 34:16, 34:19, 34:23, 35:11
**relevant** [2] - 21:6, 35:14
**rely** [1] - 38:25
**relying** [1] - 4:4
**remain** [1] - 39:5
**remaining** [1] - 35:10
**remedy** [1] - 17:23
**remember** [3] - 30:19, 42:3, 43:9
**renew** [1] - 38:15
**repeat** [1] - 42:4
**repeating** [1] - 16:21
**repetitive** [1] - 8:12
**reply** [5] - 24:12,

24:17, 37:15, 41:8, 42:3
**report** [9] - 16:20, 36:16, 36:23, 37:23, 38:9, 38:17, 39:24, 40:3, 40:4
**REPORTED** [1] - 1:22
**Reporter** [3] - 1:22, 9:2, 44:22
**represent** [3] - 4:13, 4:19, 19:20
**representations** [1] - 12:14
**represented** [2] - 23:11, 23:14
**representing** [1] - 4:24
**represents** [1] - 4:21
**request** [3] - 11:15, 11:16, 34:2
**require** [2] - 17:21, 17:25
**required** [2] - 15:20, 29:1
**requirement** [2] - 29:22, 29:23
**requirements** [1] - 29:10
**requires** [1] - 25:24
**requiring** [2] - 21:22, 26:16
**research** [1] - 26:8
**resolution** [2] - 12:4, 12:5
**resolve** [2] - 20:10, 30:11
**resolved** [1] - 30:16
**respect** [2] - 14:12, 25:5
**respond** [9] - 6:12, 19:6, 21:22, 23:24, 36:10, 40:19, 42:5, 42:6
**responded** [2] - 21:7, 21:8
**responding** [1] - 22:6
**response** [17] - 10:13, 10:25, 11:18, 19:13, 19:15, 19:18, 23:16, 23:20, 25:21, 25:22, 32:20, 33:8, 37:14, 39:3, 41:8, 41:18
**responsibilities** [1] - 40:15
**responsibility** [2] - 31:9, 31:11
**responsible** [1] -

3:20
 rest [3] - 32:17,
32:18, 33:8
 resubmit [1] - 4:1
 retain [1] - 23:13
 Rights [1] - 7:17
 ripe [1] - 6:24
 ripening [1] - 32:23
 rocks [2] - 22:25,
23:1
 Room [1] - 1:24
 room [1] - 39:23
 Rosen [1] - 7:21
 routine [1] - 17:23
 RPR [1] - 1:22
 rule [5] - 32:21, 33:1,
40:16, 40:20, 40:24
 Rule [2] - 15:20, 37:2
 ruled [3] - 18:10,
37:8, 40:2
 rules [5] - 3:19, 6:16,
27:5, 27:19, 44:10
 ruling [5] - 9:10,
33:18, 38:5, 43:21
 run [1] - 43:3

S

 S/DAVID [1] - 44:22
 safe [1] - 38:10
 saga [1] - 22:20
 sake [1] - 28:2
 satisfactory [1] -
26:19
 satisfy [1] - 29:9
 save [1] - 43:10
 saving [2] - 8:2, 8:8
 saw [1] - 36:12
 schedule [11] -
11:20, 21:21, 28:16,
33:7, 37:2, 37:3, 38:1,
38:16, 40:9, 41:20,
42:9
 scheduling [11] -
36:12, 36:14, 36:15,
36:23, 37:22, 37:23,
38:8, 38:9, 38:17
 school [4] - 12:15,
31:14, 32:9
 scope [3] - 12:16,
13:5, 36:22
 SE [1] - 2:9
 seat [2] - 5:23, 9:4
 second [9] - 7:23,
15:13, 15:19, 16:3,
16:22, 17:3, 17:16,
18:15, 21:10
 Section [1] - 7:19
 sections [1] - 26:17

 see [20] - 3:8, 3:15,
4:15, 6:15, 11:23,
12:21, 14:25, 15:1,
17:9, 18:7, 19:9, 24:8,
31:8, 31:18, 31:20,
35:24, 36:3, 37:9,
38:1, 43:5
 seek [1] - 3:25
 sees [1] - 40:3
 SEITZ [1] - 1:9
 send [4] - 10:16,
14:24, 36:11, 36:14
 sending [2] - 10:17,
10:18
 sent [2] - 36:13
 Senterfit [1] - 2:8
 Senterfitt [1] - 5:12
 separate [7] - 6:16,
7:14, 8:13, 16:13,
18:16, 25:13, 27:9
 separately [2] - 16:5,
26:18
 September [3] - 6:6,
6:13, 40:7
 series [1] - 12:20
 serve [1] - 40:23
 service [2] - 9:7,
32:6
 session [2] - 28:8,
28:9
 set [4] - 28:9, 37:18,
37:20, 40:9
 sets [2] - 25:10,
43:11
 share [1] - 39:16
 sharing [1] - 22:6
 shed [1] - 6:20
 shorter [2] - 32:15,
32:16
 shortly [1] - 38:5
 show [1] - 30:13
 side [8] - 30:6, 30:9,
30:14, 31:8, 31:10,
31:21, 31:22
 sides [3] - 30:18,
30:19, 37:12
 sight [1] - 32:10
 signal [1] - 38:11
 similar [5] - 9:5,
15:22, 18:22, 19:3
 similarities [2] -
35:3, 35:5
 simple [2] - 19:16,
19:18
 simplistic [1] - 12:12
 simply [5] - 21:25,
29:10, 29:21, 33:10,
33:19
 simultaneous [2] -
21:11, 21:19

 single [2] - 16:2,
39:8
 sit [3] - 8:25, 30:15,
36:24
 six [4] - 15:14, 16:3,
39:25, 40:2
 smart [1] - 32:10
 smoking [1] - 30:13
 solid [1] - 30:9
 someone [1] - 13:11
 sometime [5] -
11:21, 27:13, 38:1,
43:21, 43:23
 sometimes [3] -
6:22, 30:6, 30:23
 son [1] - 3:11
 soon [1] - 15:1
 sorry [2] - 4:10,
22:11
 sort [9] - 5:2, 5:24,
9:12, 10:22, 11:19,
12:7, 14:4, 35:20,
36:13
 source [1] - 11:7,
13:10, 13:13, 13:15,
13:19, 13:21, 16:11,
16:24, 19:14, 19:19,
20:25
 sources [1] - 13:23
 SOUTHERN [1] - 1:1
 southern [1] - 27:18
 speaking [2] - 13:1,
22:9
 specific [1] - 22:17
 specifically [1] -
3:23
 specifics [1] - 28:8
 spend [2] - 22:22
 split [1] - 25:11
 spoken [1] - 13:3
 sponte [1] - 14:21
 spot [1] - 27:23
 Sr [1] - 3:18
 stage [1] - 30:10
 stand [2] - 8:25, 39:7
 standard [1] - 36:14
 standing [2] - 5:16,
9:4
 stars [1] - 39:15
 start [2] - 23:3, 36:4
 started [2] - 26:11,
36:8
 state [1] - 3:4
 statement [2] - 6:17,
6:19
 statements [1] -
22:17
 states [2] - 15:17,
17:17
 States [9] - 2:4, 5:6,

8:23, 8:24, 14:4, 26:7,
26:25, 43:13
 STATES [2] - 1:1, 1:9
 status [1] - 5:25,
33:16
 statute [1] - 29:22,
30:13
 stay [7] - 9:4, 15:10,
21:12, 21:18, 21:19,
21:21, 33:10
 stayed [1] - 33:5
 still [8] - 10:16,
10:21, 16:23, 26:22,
27:12, 29:8, 37:15,
41:11
 stip [2] - 37:9, 37:11
 story [1] - 29:14
 Street [1] - 2:4
 stricken [1] - 25:20
 strictly [1] - 14:12
 strong [1] - 43:7
 structurally [1] -
12:23
 struggling [1] - 7:24
 student [1] - 12:17
 sua [1] - 14:21
 subject [1] - 16:19,
34:22
 subjected [2] -
34:18, 35:22
 subpoenaed [1] -
35:13
 subsequent [1] -
9:20
 subsequently [5] -
19:4, 23:11, 34:19,
34:20, 34:22
 succinct [1] - 6:23
 suddenly [1] - 40:5
 sufficiency [2] -
17:14, 24:20
 sufficient [1] - 29:8
 suggest [1] - 30:16
 Suite [2] - 1:19, 2:11
 summary [3] - 7:7,
30:8, 37:8
 Sunday [1] - 28:11
 SunTrust [1] - 2:8
 supersede [1] - 9:19
 supplement [1] -
29:6
 supplemental [15] -
8:18, 10:25, 16:7,
18:14, 19:13, 23:19,
24:1, 25:18, 25:19,
27:8, 28:17, 28:23,
32:18, 32:19, 39:11
 support [1] - 43:8
 supposed [2] -
22:24, 42:4

 SUSAN [1] - 2:7
 Susan [2] - 5:11, 7:6
 suspect [1] - 30:20
 suspenders [1] -
38:11
 sustain [1] - 16:15
 system [3] - 31:2,
31:3, 31:5
 systems [1] - 38:10

T

 T's [1] - 22:23
 tackle [1] - 13:12
 tagged [1] - 40:22
 tam [17] - 3:7, 4:10,
4:12, 4:22, 5:13, 5:15,
6:1, 8:16, 8:20, 9:6,
9:19, 9:20, 11:24,
12:6, 14:1, 14:13,
26:5
 Tampa [2] - 14:15,
22:1
 Taylor [1] - 6:9
 Taylor-Williams [1] -
6:9
 teaches [1] - 31:14
 team [1] - 35:10
 technical [1] - 13:20
 technically [1] -
25:21
 tee [3] - 22:21, 32:22,
36:4
 ten [5] - 6:10, 27:24,
32:15, 32:20
 ten-day [1] - 32:20
 term [1] - 9:20
 test [1] - 27:19
 text [1] - 6:24
 THAT [2] - 11:2,
44:20
 THE [110] - 1:9, 2:2,
3:8, 3:14, 3:18, 4:3,
4:6, 4:9, 4:14, 4:20,
4:24, 5:2, 5:4, 5:9,
5:16, 5:21, 5:23, 6:14,
8:1, 8:6, 8:14, 8:25,
9:11, 9:22, 10:17,
11:13, 11:22, 12:3,
12:14, 12:21, 13:13,
13:16, 13:25, 14:15,
14:23, 15:5, 17:4,
17:13, 18:3, 19:7,
19:20, 20:11, 21:3,
21:17, 21:24, 22:9,
23:9, 23:15, 23:23,
24:2, 24:5, 24:8,
24:12, 24:14, 24:18,
24:25, 25:2, 25:8,

25:17, 26:1, 26:20, 26:25, 27:2, 27:6, 27:15, 27:25, 28:4, 28:12, 28:15, 28:22, 29:9, 29:13, 29:24, 30:3, 32:4, 33:10, 34:7, 34:11, 34:24, 35:7, 35:19, 36:11, 38:20, 38:22, 39:10, 39:14, 40:13, 40:23, 41:3, 41:5, 41:7, 41:13, 41:15, 41:20, 41:24, 42:1, 42:3, 42:10, 42:15, 43:1, 43:9, 43:17, 43:19, 44:3, 44:5, 44:7, 44:13, 44:20, 44:21

**thereafter** [1] - 32:20
**thinking** [1] - 10:22
**third** [2] - 4:22, 18:14
**three** [12] - 4:12, 8:19, 9:6, 11:17, 20:8, 23:10, 25:9, 26:19, 26:21, 34:15, 39:25, 40:21
**threshold** [1] - 34:2
**throw** [1] - 36:1
**Thursday** [1] - 41:3
**tie** [3] - 5:17, 33:12, 33:15
**Tim** [1] - 5:14
**TIMOTHY** [1] - 2:10
**tipping** [1] - 30:9
**Title** [2] - 7:17, 12:10
**TO** [1] - 1:6
**together** [3] - 25:13, 26:23, 43:13
**took** [4] - 20:2, 27:22, 32:4, 42:19
**Torres** [1] - 9:9
**total** [1] - 9:24
**tough** [1] - 31:17
**towards** [1] - 12:4
**track** [2] - 10:11, 12:4
**train** [1] - 24:9
**TRANSCRIPT** [1] - 44:20
**transfer** [8] - 9:9, 14:22, 15:10, 15:24, 21:8, 21:11, 21:20
**transferred** [6] - 9:15, 9:17, 10:19, 14:21, 33:1, 33:2
**trees** [1] - 43:10
**trenches** [1] - 30:5
**trial** [3] - 6:6, 12:5, 22:2
**Troy** [2] - 3:11
**true** [1] - 12:10

**trump** [1] - 31:3
**try** [5] - 6:12, 29:1, 38:11, 39:24, 40:9
**trying** [3] - 12:7, 13:1, 19:16
**turning** [1] - 22:25
**tweaks** [1] - 39:5
**two** [19] - 7:14, 7:16, 8:3, 8:4, 8:12, 8:19, 11:17, 11:21, 14:1, 15:11, 16:14, 21:4, 22:23, 23:18, 25:10, 25:13, 35:22, 43:2, 43:11
**twofold** [1] - 36:15
**TYLER** [1] - 1:18

# U

**U.S** [2] - 14:5, 42:17
**ultimately** [7] - 8:22, 13:23, 22:15, 22:19, 31:4, 31:20, 43:4
**un-stay** [1] - 33:10
**under** [9] - 6:16, 7:17, 7:19, 15:17, 16:14, 17:18, 23:16, 23:23, 27:5
**undoubtedly** [2] - 17:9, 29:3
**unfortunately** [2] - 15:5, 31:13
**unique** [1] - 15:25
**United** [9] - 2:4, 5:6, 8:22, 8:24, 14:3, 26:7, 26:25, 43:13
**UNITED** [2] - 1:1, 1:9
**University** [2] - 3:3, 7:22
**UNIVERSITY** [1] - 1:6
**unless** [3] - 37:18, 38:12, 43:4
**unlikely** [1] - 39:6
**unsealed** [7] - 10:2, 10:5, 10:10, 14:16, 15:4, 15:6
**up** [13] - 6:1, 13:8, 14:24, 14:25, 19:14, 22:21, 25:11, 28:1, 28:9, 28:16, 32:22, 36:4, 37:16
**uphold** [1] - 32:5
**URQUILLA** [1] - 1:4
**Urquilla** [1] - 3:7
**URQUILLA-DIAZ** [1] - 1:4
**Urquilla-Diaz** [1] - 3:7

# V

**Versus** [1] - 1:5
**versus** [1] - 3:3
**vice** [1] - 5:14
**view** [2] - 17:18, 17:19
**VII** [1] - 7:17
**vindicated** [1] - 31:6
**violate** [1] - 29:22
**violated** [1] - 18:1
**violation** [3] - 12:10, 17:19, 17:22
**violations** [1] - 17:24
**VOGELSANG** [1] - 1:18
**Vogelsang** [5] - 4:11, 4:15, 4:20, 9:23
**VOLUME** [1] - 1:5

# W

**wait** [3] - 12:21, 15:6, 30:7
**War** [1] - 22:20
**ware** [1] - 6:3
**Ware** [2] - 3:5, 26:14
**WARE** [1] - 1:14
**Washington** [1] - 14:9
**waste** [1] - 39:20
**water** [1] - 30:12
**weaknesses** [1] - 30:10
**WEBB** [1] - 3:2
**week** [4] - 7:9, 27:22, 27:23, 41:2
**weekends** [2] - 32:21, 40:21
**weeks** [5] - 3:13, 11:17, 16:7, 22:23, 37:11
**welcome** [1] - 42:22
**Weston** [1] - 1:15
**whistle** [1] - 16:20
**whole** [3] - 25:17, 27:17, 36:23
**WILCOX** [1] - 1:13
**Wilcox** [7] - 3:7, 4:23, 4:24, 5:1, 25:6, 25:10, 25:14
**Wilcox's** [1] - 25:21
**Wilkie** [1] - 1:23
**Williams** [1] - 6:9
**win** [1] - 31:10
**Wind** [1] - 22:20
**wish** [1] - 9:3
**withdrawn** [1] -

39:11
**witnesses** [2] - 35:13, 35:17
**wonder** [1] - 40:5
**word** [1] - 26:2
**words** [1] - 19:21
**workable** [1] - 37:2
**works** [3] - 31:2, 37:3, 37:6
**worksheet** [1] - 36:24

# Y

**year** [4] - 15:13, 22:1, 22:22, 28:12
**years** [1] - 39:25
**yesterday** [3] - 3:6, 5:1, 6:9

# Z

**zealous** [3] - 30:21, 30:22, 30:24
**zeros** [1] - 40:4